1  JASSY VICK CAROLAN LLP
   JEAN-PAUL JASSY, Cal. Bar No. 205513
2    jpjassy@jassyvick.com
   KEVIN L. VICK, Cal. Bar No. 220738
3    kvick@jassyvick.com
   800 Wilshire Boulevard, Suite 800
4  Los Angeles, California 90017
   Telephone:  310-870-7048
5  Facsimile:  310-870-7010

6  *Attorneys for Defendant*
   VIMEO, INC.

7

8

9              **UNITED STATES DISTRICT COURT**

10         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11

12  JAMES DOMEN, an individual, and       | Case No. 8:19-cv-01278 SVW (AFMx)
    CHURCH UNITED, a California not-       |
13  for-profit corporation,               | Hon. Stephen V. Wilson

14              Plaintiffs,               | **NOTICE OF MOTION AND
                                          | MOTION TO DISMISS FOR
15         v.                             | IMPROPER VENUE OR,
                                          | ALTERNATIVELY, TO TRANSFER
16  VIMEO, INC., a Delaware corporation,  | VENUE; MEMORANDUM OF
    and DOES 1-25,                        | POINTS AND AUTHORITIES;
17                                        | DECLARATION OF MICHAEL A.
                Defendants.               | CHEAH WITH EXHIBITS A-F**
18
                                          | (Fed. R. Civ. P. 12(b)(3) and
19                                        | 28 U.S.C. §§ 1404(a), 1406(a))

20                                        | Proposed Order lodged concurrently

21                                        | Hearing Date:   August 19, 2019
                                          | Hearing Time:   1:30 p.m.
22                                        | Courtroom:      10A

23                                        | Action filed:   June 25, 2019

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE

1

2      TO THE HONORABLE COURT AND ALL PARTIES AND THEIR

3  COUNSEL OF RECORD:

4      PLEASE TAKE NOTICE that on August 19, 2019 at 1:30 p.m. at the First

5  Street Courthouse, 350 West 1st Street, Courtroom 10A, 10th Floor, Los Angeles,

6  California 90012, Defendant Vimeo, Inc. will and does move this Court for an

7  order dismissing this action for improper venue or, alternatively, transferring this

8  action to the United States District Court for the Southern District of New York.

9      This motion is brought under Federal Rule of Civil Procedure 12(b)(3) and

10  28 U.S.C. §§ 1404(a) and 1406(a).  This Motion is based on this Notice of Motion

11  and Motion, the attached Memorandum of Points and Authorities, the attached

12  Declaration of Michael A. Cheah with Exhibits A-F, all papers on file with the

13  Court, and all evidence and argument presented at or before the hearing on this

14  motion.

15      This motion is made following the conference of counsel under Local Rule

16  7-3 that took place on July 8, 2019.

17

18   Dated:  July 19, 2019          JASSY VICK CAROLAN LLP
                                     JEAN-PAUL JASSY
19                                   KEVIN L. VICK

20

21

22                                 By:  /s/ Jean-Paul Jassy
                                       Jean-Paul Jassy
23                                     *Attorneys for Defendant*
                                       VIMEO, INC.

24

25

26

27

28

1

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................. 1

STATEMENT OF FACTS ..................................................................... 2

    A.    Vimeo's Video Sharing Service and Terms of Service ......................... 2

    B.    Plaintiffs' Use of the Vimeo Service ...................................................... 4

    C.    Vimeo's Moderation Action ..................................................................... 5

PROCEDURAL HISTORY .................................................................. 5

ARGUMENT ......................................................................................... 6

I.     THIS ACTION SHOULD BE DISMISSED UNDER RULE 12(b)(3) AND SECTION 1406(a) ............................................................................ 6

    A.    Forum Selection Clauses Should Be Enforced ..................................... 6

    B.    Vimeo's Forum Selection Clause Is Valid and Applicable ................. 7

    C.    Plaintiffs Cannot Avoid Enforcement of the Forum Selection Clause .. 9

        1.    Plaintiffs Cannot Show that the Forum Selection Clause Is the Product of Fraud or Overreaching ........................................ 10

        2.    Plaintiffs Cannot Show that They Would Be Deprived of Their Day in Court ................................................................................ 10

        3.    Plaintiffs Cannot Show that Enforcement of the Forum Selection Clause Would Contravene a Strong Public Policy of California ................................................................................. 11

    D.    The Court Should Dismiss the Complaint .......................................... 13

II.    ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF NEW YORK ON CONVENIENCE GROUNDS UNDER SECTION 1404(a) ................. 14

    A.    Venue is Proper in the Southern District of New York ..................... 14

    B.    This Action Could Have Been Commenced in the Southern District of New York ...................................................................................... 15

    C.    Transfer Will Serve the Convenience of the Parties and Witnesses, and Will Promote the Interests of Justice .......................................... 15

CONCLUSION ..................................................................................... 17

i

1

# TABLE OF AUTHORITIES

2

Page(s)

3

CASES

4

*A.J. Industries, Inc. v. United States District Court*,
 503 F.2d 384 (9th Cir. 1974)..................................................................14

5

*Applied Medical Distribution Corp. v. Surgical Co. BV*,
 587 F.3d 909 (9th Cir. 2009)..................................................................12

6

*Argueta v. Banco Mexicano, S.A.*,
 87 F.3d 320 (9th Cir. 1996)..........................................................6, 10, 13

7

*Atlantic Marine Construction Co. v. United States District Court
 for the Western District of Texas*,

8

 571 U.S. 49 (2013)..............................................................................1, 6, 7

9

*Capitol Records, LLC v. Vimeo, LLC*,
 826 F.3d 78 (2d Cir. 2016).......................................................................2

10

*Carijano v. Occidental Petroleum Corp.*,
 643 F.3d 1216 (9th Cir. 2011)................................................................15

11

*Carnival Cruise Lines, Inc. v. Shute*,

12

 499 U.S. 585 (1991)..........................................................................6, 10

13

*Columbus Univ. v. Tummala*,
 No. Civ. 13-5745 SVW, 2014 WL 12675010 (C.D. Cal. July 15, 2014)......12

14

*Commodity Futures Trading Commission v. Savage*,
 611 F.2d 270 (9th Cir. 1979)..................................................................14

15

*Continental Grain Co. v. Barge FBL-585*,

16

 364 U.S. 19 (1960)..................................................................................14

17

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) ................................................................................15

18

*Decker Coal Co. v. Commonwealth Edison Co.*,
 805 F.2d 834 (9th Cir. 1986)..................................................................15

19

*Docksider, Ltd. v. Sea Technology, Ltd.*,

20

 875 F.2d 762 (9th Cir. 1989)..............................................................8, 13

21

*Dolin v. Facebook, Inc.*,
 289 F. Supp. 3d 1153 (D. Haw. 2018) ..............................................7, 8, 9

22

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
 521 F.3d 1157 (9th Cir. 2008)................................................................13

23

*Gamayo v. Match.com LLC*,
 No. Civ. 11-00762 SBA, 2011 WL 3739542 (N.D. Cal. Aug. 24, 2011)..7, 12

24

*Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*,
 820 F. Supp. 503 (C.D. Cal. 1992)..........................................................14

25

*Janus v. American Federation of State, County,
 and Municipal Employees, Council 31*,

26

 138 S. Ct. 2448 (2018) ............................................................................16

27

*Jones v. GNC Franchising, Inc.*,
 211 F.3d 495 (9th Cir. 2000)..................................................................15

28

*Kijimoto v. YouTube*,
No. Civ. 17-08184 JAK, 2018 WL 5116415 (C.D. Cal. Jan. 30, 2018)...7, 8-9

*Knudsen v. Elite Trading Group, Inc.*,
No. Civ. 99-1497 HU, 2000 WL 488481 (D. Or. Mar. 17, 2000) ................ 15

*Korman v. Princess Cruise Lines, Ltd.*,
32 Cal. App. 5th 206 (2019) ......................................................................... 12

*Kumar v. RBS Financial Products*,
No. CV 14-07474 SVW, 2014 WL 12589637
(C.D. Cal. Dec. 4, 2014) ........................................................... 1, 7, 9, 10

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) ........................................................................................... 9

*Manetti-Farrow, Inc. v. Gucci America*,
858 F.2d 509 (9th Cir. 1988) ....................................................................... 10

*Manhattan Community Access Corp. v. Halleck*,
139 S. Ct. 1921 (2019) ................................................................................. 13

*Mazzola v. Roomster Corp.*,
No. Civ. 10-5954 AHM, 2010 WL 4916610 (C.D. Cal. Nov. 30, 2010) ...... 12

*Meier v. Midwest Recreational Clearinghouse, LLC*,
No. Civ. 2:10-01026 MCE, 2010 WL 2738921 (E.D. Cal. July 12, 2010) ..... 7

*Murphy v. Schneider National, Inc.*,
362 F.3d 1133 (9th Cir. 2003) ..................................................................... 10

*Northern California District Council of Laborers v.
Pittsburgh-Des Moines Steel Co.*,
69 F.3d 1034 (9th Cir. 1995) ......................................................................... 8

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*,
741 F.2d 273 (9th Cir. 1984) ................................................................. 10, 11

*Phillips v. Audio Active Ltd.*,
494 F.3d 378 (2d Cir. 2007) ....................................................................... 7, 8

*Powerex Corp. v. Reliant Energy Services, Inc.*,
551 U.S. 224 (2007) ..................................................................................... 10

*Radian International, LLC v. Alpina Ins. Co.*,
No. Civ. 04-4537 SC, 2005 WL 1656884 (N.D. Cal. July 14, 2005)........ 8, 11

*Richards v. Lloyd's of London*,
135 F.3d 1289 (9th Cir. 1998) ................................................................... 9, 10

*Rubio v. Monsanto Co.*,
181 F. Supp. 3d 746 (C.D. Cal. 2016) ......................................................... 16

*Schumacher v. Amazon.com LLC*,
No. Civ. 11-01906 CJC, 2012 WL 13036856 (C.D. Cal. May 29, 2012) . 7, 12

*Stewart Organization, Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) ......................................................................................... 6

*Swenson v. T-Mobile USA, Inc.*,
415 F. Supp. 2d 1101 (S.D. Cal. 2006) ...................................................11-12

*United States v. Drew*,
259 F.R.D. 449 (C.D. Cal. 2009) ................................................................... 7

*United States Telecom Association v. FCC*,
    855 F.3d 381 (D.C. Cir. 2017) ................................................................ 16

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ............................................................................ 14

*Walker v. Carnival Cruise Lines*,
    63 F. Supp. 2d 1083 (N.D. Cal. 1999) ................................................ 13, 14

*Zhang v. Baidu.com Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014) .................................................... 16

UNITED STATES CONSTITUTION

First Amendment ........................................................................................ 16

FEDERAL STATUTES

28 U.S.C. § 1332(a)(1) ............................................................................... 5

28 U.S.C. § 1332(d) .................................................................................... 15

28 U.S.C. § 1391(a)(1) ............................................................................... 14

28 U.S.C. § 1391(c) .................................................................................14-15

28 U.S.C. § 1404(a) .................................................................2, 14, 15, 17

28 U.S.C. § 1406(a) .................................................................6, 13, 17

47 U.S.C. § 230 .......................................................................................12, 13

FEDERAL RULES

F.R.C.P. 12(b)(3) .................................................................................6, 13, 17

NOTICE OF MOTION AND MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE

# MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiffs James Domen and Church United ("Plaintiffs") filed this First Amendment lawsuit against defendant video-sharing provider Vimeo, Inc. ("Vimeo") over Vimeo's alleged "censorship" of their videos. The immediate problem for Plaintiffs (among many substantive problems) is that they sued Vimeo in the wrong district. Specifically, Plaintiffs were contract-bound to sue Vimeo in the federal or state courts located in New York County, New York.

In creating a Vimeo account to upload videos and purchasing a paid Vimeo subscription plan, Plaintiffs accepted Vimeo's Terms of Service. Declaration of Michael A. Cheah ¶¶ 7-9. In doing so, they agreed that "[a]ny action arising out of or relating to this Agreement or your use of the Vimeo Service must be commenced in the state or federal courts located in New York County, New York" and "consent[ed] to the jurisdiction of those courts." *Id*. Ex. C.

A mandatory forum selection clause like this should be "'given controlling weight in all but the most exceptional cases.'" *Kumar v. RBS Fin. Prods.*, No. CV 14-07474 SVW, 2014 WL 12589637, at *5 (C.D. Cal. Dec. 4, 2014) (Wilson, J.) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013)). Plaintiffs cannot demonstrate that their case is an exceptional one warranting deviation from this presumption.

*First*, the forum selection clause unquestionably covers Plaintiffs' claims. The clause broadly mandates that "[a]ny action arising out of or relating to this Agreement or [Plaintiffs'] use of the Vimeo Service *must be commenced*" in the New York state or federal courts. Cheah Decl. Ex. C, Section 16 (emphasis added). Plaintiffs' claims are all premised upon Vimeo's removal of their videos from its website. And Plaintiffs even assert that Vimeo did so on the basis of its Terms of Service prohibition against videos that "harass, incite hatred, or include discriminatory or defamatory speech." Compl. ¶ 38. Accordingly, all Plaintiffs'

1

claims arise under the Terms of Service *and* Plaintiffs' use of Vimeo's services.

*Second*, Plaintiffs cannot avoid enforcement of the forum selection clause because they cannot meet the heavy burden of demonstrating that it was the product of fraud, duress, or overreaching.  Plaintiffs do not allege any such misconduct, and the mere fact that the clause is contained in an online agreement is no answer: Courts have repeatedly enforced forum selection clauses against consumers suing online providers like Vimeo.

For these reasons, this Court should dismiss the Complaint or, in the alternative, transfer it to the Southern District of New York.[1]  In the further alternative, this action should be transferred to the Southern District of New York under 28 U.S.C. § 1404(a) because it is the most convenient forum as Vimeo's headquarters, witnesses, and documents are based in New York, New York.

## STATEMENT OF FACTS

### A.    Vimeo's Video Sharing Service and Terms of Service

Vimeo is a New York, New York-based company that operates a popular online video-sharing service, available at Vimeo.com.  Compl. ¶¶ 23, 25, 49.  In order to upload and share videos, a customer must create a Vimeo account.  *See* Cheah Decl. ¶ 6; *see also* Compl. ¶ 28.  Vimeo offers free accounts as well as paid subscription plans, which provide additional features and higher video storage limits.  *See* Cheah Decl. ¶¶ 3, 9; Compl. ¶ 30.

"All Vimeo users must accept its Terms of Service."  *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 84 (2d Cir. 2016).  To create an account, a user must provide a screen name and email address on an account creation screen.  Cheah Decl. ¶ 6.  That screen discloses, immediately below the "Join" button: "By joining Vimeo, you agree to our Terms of Service and Privacy Policy."  *Id*. Ex. A.  When a user purchases a Vimeo subscription plan, they again accept Vimeo's Terms of

---

[1] And specifically to the Foley Square courthouse in New York County (*i.e.*, Manhattan).

Service in a similar fashion.  *See id*. Ex. B.  In each case, clicking on a document name brings the user to the full text of the document.  *Id*. ¶¶ 8-9.  Vimeo also reproduces a link to the Terms of Service on the bottom of every page of the Vimeo website.

Section 16 of the Terms of Service, as it existed on or about September 26, 2016, contains a forum selection clause that states:

> Any action arising out of or relating to this Agreement or your use of the Vimeo Service must be commenced in the state or federal courts located in New York County, New York State, United States of America (and you consent to the jurisdiction of those courts).

Cheah Decl. Ex. C.[2]

Further, the Terms of Service enumerate restrictions on the content that users may upload.  For example, the Terms of Service do not allow content that "[c]ontains hateful, defamatory, or discriminatory content or incites hatred against any individual or group."  Cheah Decl. Ex. C, Section 7; *see also* Compl. ¶ 38.  The Terms of Service further incorporate by reference the Vimeo Community Guidelines, which provide examples and further guidance on how Vimeo enforces its content restrictions.  *See* Cheah Decl. Ex. D; Compl. ¶ 38; *see also Vimeo*, 826 F.3d at 84 ("Vimeo's 'Community Guidelines' also provide content restrictions").

The Community Guidelines reinforce Vimeo's prohibition on discriminatory content.  *See* Cheah Decl. Ex. D ("No videos that are hateful, harass others, violate someone's privacy, or include defamatory or discriminatory speech").  In a section titled, "How does Vimeo define hateful, harassing, defamatory, and discriminatory content?," the Guidelines elaborate:

---

[2] The term "Vimeo Service" is defined at the start of the Agreement as consisting of Vimeo's "online video sharing platform and community through its website located at Vimeo.com and other Vimeo-operated sites . . . mobile applications, connected TV applications, and other online services."  Cheah Decl. Ex. C.

3

> This means Vimeo moderators will generally remove videos that:
>
> - Make derogatory or inflammatory statements about individuals or groups of people
> - Are intended to harm someone's reputation
> - Are malicious
> - Include someone's image or voice without their consent (Exception! Public figures and/or political officials are generally fair game.)
>
> We also forbid content that displays a demeaning attitude toward specific groups, including:
>
> - Videos that offer seduction training or teach Pickup Artist (PUA) techniques
> - ***Videos that promote Sexual Orientation Change Efforts (SOCE)***
> - Videos that use coded or veiled language to attack a particular group like an ethnic or religious minority

*Id*. Ex. E (emphasis added).  Vimeo published the above guidance in 2014, two years before Plaintiffs created a Vimeo account.  *Id*. ¶ 12; Compl. ¶ 28.

**B.     Plaintiffs' Use of the Vimeo Service.**

Plaintiff James Domen is a pastor and the President and Founder of plaintiff Church United (Compl. ¶ 14), a California non-profit religious organization (*id*. ¶ 7).  In October 2016, Plaintiffs jointly created a Vimeo account "for the purpose of hosting various videos, including videos addressing sexual orientation as it relates to religion." *Id*. ¶ 28.  Plaintiffs named the account "Church United" (*see id*. Ex. A), and Pastor Domen operated the account and corresponded with Vimeo on behalf of himself and Church United.  *See id.* ¶¶ 31-33.  Plaintiffs purchased a paid Vimeo Plus subscription on September 26, 2016 and upgraded to a Vimeo PRO subscription on May 12, 2018.  Cheah Decl. ¶ 7; *see also* Compl. ¶ 30.  As a result of these actions, Plaintiffs accepted Vimeo's Terms of Service twice: once upon

4

1  account creation and once upon upgrading to a Vimeo PRO subscription.  *See*
2  Cheah Decl. ¶¶ 7-9.

3  **C.    Vimeo's Moderation Action.**

4          According to the Complaint, Plaintiffs uploaded approximately 89 videos to
5  the Vimeo service after creating their Vimeo account.  Compl. *Id*. ¶ 29.  On
6  November 23, 2018, a Vimeo moderator wrote to Plaintiffs informing them that the
7  account had been flagged because it contained at least five videos that "promote
8  Sexual Orientation Change Efforts" in violation of Vimeo's stated policy.  Compl. ¶
9  32 & Ex. A.  In their Complaint, Plaintiffs describe each of the videos, but do not
10 dispute Vimeo's characterization of them as containing content promoting sexual
11 orientation change efforts.  *See id*. ¶¶ 33-40.  As such, Vimeo's moderation action
12 was a straightforward application of a pre-existing, well-communicated policy.

13         Vimeo gave Plaintiffs an opportunity to remove the videos promoting sexual
14 orientation change efforts.  *See* Compl. Ex. A.  Plaintiffs declined to remove any
15 videos.  As a result, on December 6, 2018, Vimeo removed Plaintiffs' entire
16 account, along with all of its videos.  *See id*. ¶ 38 & Ex. B.  The email notification
17 sent to Plaintiffs cited Vimeo's prohibition on "videos that harass, incite hatred, or
18 include discriminatory or defamatory speech."  *Id.*

19                              **PROCEDURAL HISTORY**

20         On June 25, 2019, Plaintiffs filed this lawsuit.  Dkt. No. 1.  Plaintiffs assert
21 that Vimeo's moderation decision violated Plaintiffs' rights under the free speech
22 clause of the First Amendment of the U.S. Constitution (Compl. 2nd Cause of
23 Action), the free speech clause of Article 1, Section 2 of the California Constitution
24 (*id*. 1st Cause of Action), and the California Unruh Act (*id*. 3rd Cause of Action).[3]
25 Vimeo denies that it discriminated against Plaintiffs or otherwise committed any
26 violation of law.

27 ───────────────
28 [3] Plaintiffs plead diversity jurisdiction under 28 U.S.C. § 1332(a)(1).  *See* Compl.
   ¶¶ 1-2, 7, 22, 23.  Vimeo does not contest this Court's subject matter jurisdiction.

1

**ARGUMENT**

2

**I.**

3

**THIS ACTION SHOULD BE DISMISSED UNDER RULE 12(b)(3) AND
SECTION 1406(a).**

4

**A.     Forum Selection Clauses Should Be Enforced.**

5

Federal law governs the validity and enforcement of forum selection clauses

6

in diversity suits like this one.  *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320,

7

324 (9th Cir. 1996).  In deciding a transfer motion, a court need not accept the

8

complaint's factual allegations as true.  *See id*.

9

In a standard *forum non conveniens* analysis, a district court must evaluate

10

both the convenience of the parties and various public interest considerations.  *See*

11

*Atl. Marine Constr. Co.*, 571 U.S. at 62-63.  "The calculus changes, however, when

12

the parties' contract contains a valid forum-selection clause, which 'represents the

13

parties' agreement as to the most proper forum.'"  *Id*. at 63 (quoting *Stewart Org.,*

14

*Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).  "The 'enforcement of valid forum-

15

selection clauses, bargained for by the parties, protects their legitimate expectations

16

and furthers vital interests of the justice system.'"  *Id*. (quoting *Stewart*, 487 U.S. at

17

33 (Kennedy, J., concurring)).  "In all but the most unusual cases, therefore, 'the

18

interest of justice' is served by holding parties to their bargain."  *Id*. at 65.

19

Accordingly, when a transfer motion is premised upon a forum selection

20

clause, "the plaintiff's choice of forum merits no weight" and, "as the party defying

21

the forum-selection clause, the plaintiff bears the burden of establishing that

22

transfer to the forum for which the parties bargained is unwarranted."  *Atl. Marine*

23

*Constr. Co.*, 571 U.S. at 63.  In addition, the court must disregard arguments about

24

the parties' convenience and "deem the private-interest factors to weigh entirely in

25

favor of the preselected forum."  *Id*. at 64.

26

A forum selection clause binds the parties even where it appears in a form

27

consumer contract that was not subject to negotiation.  *See Carnival Cruise Lines,*

28

*Inc. v. Shute*, 499 U.S. 585, 589-95 (1991), *superseded by statute on other grounds*.

6

1   This holds true for so-called "click-wrap" agreements found online, whereby "a
2   user accepts a website's terms and conditions," as Plaintiffs did here.  *Meier v.*
3   *Midwest Recreational Clearinghouse, LLC*, No. Civ. 2:10-CV-01026 MCE, 2010
4   WL 2738921, at *3 (E.D. Cal. July 12, 2010).  "Such agreements 'have routinely
5   been upheld by circuit and district courts.'"  *Id.* (quoting *United States v. Drew*, 259
6   F.R.D. 449, 462 n.22 (C.D. Cal. 2009)).

7          That the parties may have had unequal bargaining power supplies no defense.
8   Courts have repeatedly enforced forum selection clauses found in online
9   agreements between consumers and major Internet companies such as Amazon,
10  Facebook, Match.com, and YouTube.  *See, e.g.*, *Schumacher v. Amazon.com LLC*,
11  No. Civ. 11-01906 CJC, 2012 WL 13036856, at *1 (C.D. Cal. May 29, 2012)
12  (dismissing case based upon clause requiring litigation in King County,
13  Washington); *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1160 (D. Haw. 2018)
14  (transferring case to N.D. Cal. and collecting cases); *Gamayo v. Match.com LLC*,
15  No. Civ. 11-00762 SBA, 2011 WL 3739542, at *7 (N.D. Cal. Aug. 24, 2011)
16  (transferring case to N.D. Tex.); *Kijimoto v. YouTube*, No. Civ. 17-08184 JAK,
17  2018 WL 5116415, at *3 (C.D. Cal. Jan. 30, 2018) (transferring case to N.D. Cal.).

18  **B.      Vimeo's Forum Selection Clause Is Valid and Applicable.**

19         Where the defendant asserts a mandatory forum selection clause, "the Court
20  must first resolve the parties' dispute over whether the forum-selection clauses are
21  contractually valid and applicable."  *Kumar*, 2014 WL 12589637 at *3 (citing *Atl.*
22  *Marine Constr. Co.*, 571 U.S. at 62 n.5).  Courts typically resolve this issue by
23  asking whether the clause (1) is mandatory (as opposed to merely permissive); (2)
24  was reasonably communicated to the plaintiff; and (3) covers the plaintiff's claims.
25  *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).[4]  If these

26  _____

27  [4] The Ninth Circuit—unlike the Second Circuit—has not explicitly articulated such
    a three-part test.  Nonetheless, the case law from the Ninth Circuit variously
    addresses these three factors when determining whether a forum selection clause is
28  presumptively valid.

7

threshold requirements are met, then the clause is presumptively enforceable.  *Id.*
In this case, the forum selection clause in Vimeo's Terms of Service satisfies all
three requirements.

*First*, the clause is mandatory.  It states that actions "must be commenced" in
New York County, New York.  *See N. Cal. Dist. Council of Laborers v. Pittsburgh-
Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995) ("To be mandatory, a
clause must contain language that clearly designates a forum as the exclusive
one."); *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) (clause
stating that "'[v]enue of any action brought hereunder shall be deemed to be in . . .
Virginia' . . . requires enforcement") (quoting forum selection clause) (alterations in
original); *Radian Int'l, LLC v. Alpina Ins. Co.*, No. Civ. 04-4537 SC, 2005 WL
1656884, at *2 (N.D. Cal. July 14, 2005) (forum selection clause providing that
"any resolution to a dispute . . . shall be held in Beirut, Lebanon" was mandatory).

*Second*, the forum selection clause was reasonably communicated to
Plaintiffs.  "Courts regularly uphold forum-selection clauses in online user
agreements when the user is given notice of the agreement by clicking a box stating
'I agree to the terms of the User Agreement,' followed by a hyperlink."  *Dolin*, 289
F. Supp. 3d at 1159 (quotation marks and citation omitted).  In this case, Vimeo
presented links to its Terms of Service at multiple junctures, including at the time
of account creation and upon upgrade to a higher-tier subscription plan.  On each
page, Vimeo published text making clear that clicking on the relevant button (either
to create an account or make a purchase) constituted acceptance of Vimeo's Terms
of Service.  This type of click-through agreement is more than sufficient to place
consumers like Plaintiffs on notice.  *See e.g.*, *id.* at 1159-60 (enforcing clause where
sign-up disclosure statement read, "[b]y clicking Get Started, you agree to the
Facebook Pages Terms"); *Kijimoto*, 2018 WL 5116415 at *3 (enforcing clause
stating "[a]ny claim or dispute between you and YouTube that arises in whole or in

1   part from the Service shall be decided exclusively by a court of competent

2   jurisdiction located in Santa Clara County, California").

3       *Third*, the forum selection clause embraces Plaintiffs' claims.  The clause

4   broadly covers actions arising out of the Terms of Service *and* actions relating to

5   Plaintiffs' use of Vimeo's services.  Plaintiffs directly challenge an express policy

6   in the Terms of Service itself as well as a moderator's application of that policy.

7   *See, e.g.*, Compl. ¶¶ 70 (Vimeo "failed to apply its policy in a content neutral

8   manner"); 62 ("Vimeo's policy is not reasonably tailored to any . . . articulable

9   interest.").  Thus, it implicates *both* the Terms of Service and Plaintiffs' use of

10  Vimeo's service.  *See, e.g.*, *Dolin*, 289 F. Supp. at 1161 (clause covering all

11  disputes "arising out of or relating to [the Facebook agreement]" or Facebook

12  covered tort claims against Facebook) (emphasis removed).

13      In sum, Vimeo's forum selection clause is valid, applicable, and therefore

14  presumptively enforceable.

15  **C.    Plaintiffs Cannot Avoid Enforcement of the Forum Selection Clause.**

16      Once shown to be applicable, "[f]orum-selection clauses are presumed valid,

17  and courts enforce them unless the resisting party carries its 'heavy burden' of

18  showing that enforcement is 'unreasonable under the circumstances.'"  *Kumar*,

19  2014 WL 12589637 at *5 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S.

20  1, 10 (1972), and citing *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th

21  Cir. 1998) (en banc)).

22      A plaintiff cannot avoid a presumptively valid forum selection clause unless

23  the clause is so unreasonable as to be unenforceable.  To make such a showing, the

24  plaintiff bears the "heavy" burden of proving that (1) the inclusion of the clause in

25  the agreement was the product of fraud, duress, or overreaching; (2) the plaintiff

26  would effectively be deprived of their day in court if the clause were enforced; or

27  (3) enforcement of the clause would contravene a strong public policy of the

28  plaintiff's chosen forum.  *Bremen*, 407 U.S. at 15-18; *Richards*, 135 F.3d at 1294.

9

Plaintiffs cannot meet this heavy burden.

### 1. Plaintiffs Cannot Show that the Forum Selection Clause Is the Product of Fraud or Overreaching.

"Unreasonableness under the first prong requires Plaintiffs to show that the forum-selection clauses themselves—not the contracts as wholes—were the products of fraud or overreaching." *Kumar*, 2014 WL 12589637 at *5 (citing *Richards*, 135 F.3d at 1297). Here, Plaintiffs make no allegations that the clause itself—much less the Vimeo Terms of Service as a whole—is the product of fraud or duress. *See Richards*, 135 F.3d at 1297 (enforcing clause where there was no allegation that one party "misled [the other] as to the legal effect of the choice clauses" or "fraudulently inserted the clauses").

That Plaintiffs may not have had the opportunity to negotiate the clause does not matter: Mere unequal bargaining power does not equate to overreaching. *See Kumar*, 2014 WL 12589637 at *5 n.5 ("to the extent Plaintiffs suggest that the forum-selection clauses are unreasonable because of the parties' unequal bargaining power or because they were buried within adhesive contracts, their arguments fail") (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991)); *accord Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140, 1141 (9th Cir. 2003) ("a differential in power or education on a non-negotiated contract will not vitiate a forum selection clause").

### 2. Plaintiffs Cannot Show that They Would Be Deprived of Their Day in Court.

Plaintiffs bear a "heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court." *Argueta*, 87 F.3d at 325 (quoting *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 281 (9th Cir. 1984), *overruled on other grounds, Powerex Corp. v. Reliant Energy Svcs., Inc.*, 551 U.S. 224, 235-236 (2007)); *Manetti-Farrow, Inc. v. Gucci America*, 858 F.2d 509, 515 (9th Cir. 1988). Plaintiffs make no such allegations. They may claim that travel to New

10

York City would take time and cost money.  But courts in the Ninth Circuit routinely enforce forum selection clauses even when they require plaintiffs to incur travel expenses.  *See, e.g., Pelleport Investors*, 741 F.2d at 281 (travel from East Coast to West Coast not unreasonably inconvenient); *Radian Int'l*, 2005 WL 1656884 at *2 (enforcing clause requiring travel to Lebanon).

What is more, even though Plaintiffs reside in California, they are no strangers to out-of-state travel.  According to the Complaint, they "desire to positively impact the State of California and the nation with hope and to preserve their individual rights as pastors to exercise their faith without unlawful infringement."  Compl. ¶ 13.  Church United says it has "over 750 affiliated pastors" and that its "primary strategy" is to equip them as "culture-changers by sending them to Washington, D.C. and Sacramento, California for 'Awakening Tours,' and to pray with government leaders."  Compl. ¶¶ 9-10.

Nor would travel costs make it economically irrational for Plaintiffs to pursue their claims.  Plaintiffs are not seeking a trivial sum; their Prayer for Relief asks for an unspecified amount of damages of *at least* $75,000.  *See* Compl. Prayer for Relief.  In any event, declaratory relief appears to be as important (if not more so) to any damages Plaintiffs might obtain since their suit implicates one of their core purposes.  *See* Cheah Decl. Ex. F ("Domen's attorneys are prepared to fight for his civil rights in court."); *see also* Compl. ¶ 56 ("Church United seeks to engage in religious expression relating to important public policy issues that affect Christians, especially pastors.").  In sum, a change of venue is unlikely to deter Plaintiffs from pursuing their day in court.

### 3.     Plaintiffs Cannot Show that Enforcement of the Forum Selection Clause Would Contravene a Strong Public Policy of California.

Plaintiffs must show that their chosen forum has a public policy specifically regarding venue that would be threatened by enforcement of the clause.  *See Swenson v. T-Mobile USA, Inc.*, 415 F. Supp. 2d 1101, 1105 (S.D. Cal. 2006) ("The

11

1     question is not whether the application of the forum's law would violate the policy

2     of the other party's state, but rather, whether enforcement of the forum selection

3     agreement would violate the policy of the other party's state as to the forum for

4     litigation of the dispute.").

5        Transfer of this case to New York will not contravene any California policy.

6     On the contrary, California has a "strong policy in favor of enforcing forum

7     selection clauses." *Applied Med. Distribution Corp. v. Surgical Co. BV*, 587 F.3d

8     909, 914 (9th Cir. 2009); *see also Korman v. Princess Cruise Lines, Ltd.*, 32 Cal.

9     App. 5th 206 (2019) (forum selection clauses are "ordinarily" given effect except

10    where unreasonable).  Thus, enforcement of the forum selection clause here would

11    *promote* California public policy.

12       To the extent that there is some other California policy at stake, such a

13    singular interest is "plainly insufficient to overcome the other factors." *Columbus*

14    *Univ. v. Tummala*, No. Civ. 13-5745 SVW, 2014 WL 12675010, at *8 (C.D. Cal.

15    July 15, 2014) (Wilson, J.) (transferring case to Panama despite California's interest

16    in preventing fraud).  And any concern about losing a cause of action due to choice

17    of law rules affords no reason to deny transfer because Plaintiffs are free to argue

18    that California law applies in the transferee district.  *See*, *e.g.*, *Schumacher*, 2012

19    WL 13036856 at *4 (because clause permitted suit in federal court, plaintiffs could

20    make choice of law arguments at later date); *Gamayo*, 2011 WL 3739542, at *6

21    (N.D. Cal. Aug. 24, 2011) (same); *Mazzola v. Roomster Corp.*, No. Civ. 10-5954

22    AHM, 2010 WL 4916610, *3 (C.D. Cal. Nov. 30, 2010) (same).

23       Moreover, federal, not state, issues predominate.  The premise of this

24    action—that a "for-profit corporation" like Vimeo (Compl. ¶ 22) must adopt

25    "viewpoint neutral" (*id*. ¶ 69) speech regulations and may be forced to carry speech

26    of which it disagrees—flies in the face of the First Amendment and important

27    federal policies as embodied in Section 230 of the federal Communications

28    Decency Act, 47 U.S.C. § 230.  Plaintiffs' First Amendment claim is doomed to

1   dismissal under the Supreme Court's recent decision in *Manhattan Community*
2   *Access Corp. v. Halleck*, 138 S. Ct. 1921 (2019).[5]  Plaintiffs' two state-law claims
3   are destined for a similar fate under Section 230, under which "any activity that can
4   be boiled down to deciding whether to exclude material that third parties seek to
5   post online is perforce immune."  *Fair Hous. Council of San Fernando Valley v.*
6   *Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc).  The
7   Southern District of New York is as equipped as this Court to resolve these
8   uniquely federal issues.

9   **D.     The Court Should Dismiss the Complaint.**

10  Because the forum selection clause provides for exclusive venue in New
11  York County, New York, is presumptively valid and enforceable, and because
12  Plaintiffs cannot meet their heavy burden of overcoming the presumption of
13  enforcement, this case should be dismissed under Rule 12(b)(3) and Section
14  1406(a).

15  Where, as here, an action defies the forum selection clause, the proper
16  recourse is to dismiss the action for improper venue under Rule 12(b)(3).  *See*
17  *Argueta*, 87 F.3d at 324; *Docksider, Ltd.*, 875 F.2d at 763 (affirming dismissal of
18  action under forum selection clause); *see also Walker v. Carnival Cruise Lines*, 63
19  F. Supp. 2d 1083, 1086-95 (N.D. Cal. 1999) (dismissing case pursuant to forum
20  selection clause specifying Florida); *accord* 28 U.S.C. § 1406(a) (district court
21  "shall dismiss").  Alternatively, the Court may transfer this action to the Southern
22  District of New York under 1406(a) "if it be in the interest of justice."  28 U.S.C. §
23  1406(a).

24

25  _____

26  [5]  In *Halleck*, the Court held that a private operator of a community access channel
    was not a state actor because it did not exercise "powers traditionally and
27  exclusively reserved to the State."  139 S. Ct. at 1924 (quotation marks and citation
    omitted).  Suffice it to say, if operating a community access channel is not a
28  traditionally and exclusively governmental activity, than neither is operating an
    online video sharing service.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.
## ALTERNATIVELY, THE COURT SHOULD TRANSFER
## THIS ACTION TO THE SOUTHERN DISTRICT OF NEW YORK
## ON CONVENIENCE GROUNDS UNDER SECTION 1404(a)

Assuming, *arguendo*, that the Court does not enforce the forum selection clause, the Court should nonetheless transfer this action to the Southern District of New York because it is the most convenient venue.  Under Section 1404(a), a district court, "[f]or the convenience of the parties and witnesses, [and] in the interest of justice . . . may transfer a case to another district court in which the case might have been brought."  The purpose of Section 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19 (1960)), *superseded by statute on other grounds*.  The moving party bears the burden of showing that transfer is appropriate.  *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

To support a motion to transfer, the moving party must establish that (1) venue would be proper in the transferee district; (2) the action could have been brought in the transferee district; and (3) transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice.  *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992); *accord A.J. Indus., Inc. v. United States Dist. Ct.*, 503 F.2d 384, 386-87 (9th Cir. 1974).  These requirements are easily satisfied here.

## A.     Venue is Proper in the Southern District of New York.

As discussed above, the forum selection clause clearly reflects the parties' intent that venue lie exclusively in the state or federal courts in New York County, New York, where Vimeo is headquartered.  *See* 28 U.S.C. §§ 1391(a)(1) (venue is appropriate in the judicial district where the defendant resides), 1391(c) (a corporate defendant "shall be deemed to reside in any judicial district in which it is

14

subject to personal jurisdiction"). Thus, venue is proper in the U.S. District Court for the Southern District of New York.

**B.      This Action Could Have Been Commenced in the Southern District of New York.**

Federal courts in New York have diversity and federal question jurisdiction over this action—just as this Court does. *See* 28 U.S.C. § 1332(d). Personal jurisdiction also exists because Vimeo's headquarters are located in New York, New York. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014); *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1230 (9th Cir. 2011). Therefore, this action could have been brought—indeed, should have been brought—in the Southern District of New York.

**C.      Transfer Will Serve the Convenience of the Parties and Witnesses, and Will Promote the Interests of Justice.**

To determine whether transfer would serve the convenience of the parties and witnesses and promote the interests of justice, courts consider multiple factors, including the plaintiff's choice of forum; the convenience of the parties; the convenience of the witnesses; the ease of access to evidence; the familiarity of each forum with the applicable law; the feasibility of consolidation of other claims; any local interest in the controversy; and the relative trial court congestion and time to trial in each forum. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Here, the balance of factors strongly favors transfer—especially given the existence of the forum selection clause. To start, while the plaintiff's choice of forum is generally accorded deference in considering a Section 1404(a) motion to transfer, no such deference is accorded when the parties contractually selected a venue pre-litigation. *See Knudsen v. Elite Trading Grp., Inc.*, No. Civ. 99-1497 HU, 2000 WL 488481, *5 (D. Or. Mar. 17, 2000) ("In applying *Stewart* to motions to transfer venue, lower courts have generally held that a forum selection clause

15

negates the presumption given to the plaintiff's choice of forum rendering deference to that choice inappropriate.")

The remaining factors heavily favor transfer.  The Terms of Service is governed by New York law.  Cheah Decl., Ex. C, Section 16.  The vast majority of the relevant documents are located in New York.  *Id*. ¶ 4.  All of Vimeo's potential witnesses reside or work in New York.  *Id*. ¶¶ 4-5.  One of these witnesses—the moderator who removed Plaintiffs' Vimeo account—recently left Vimeo for another employer.  *Id*. ¶ 5. This crucial witness would likely have to be subpoenaed to testify at trial.  As between the two potential venues, only the Southern District of New York would be able to issue a trial subpoena.  *See Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 763-64 (C.D. Cal. 2016) (location of key fact witnesses in the transferee district "weighs heavily in favor of transfer").

Last, New York courts have at least as great an interest in deciding matters involving a New York-based business as California does in deciding matters involving a California consumer.  New York has a strong interest in enforcing the online contracts of its Internet businesses.  And Vimeo has free speech rights as well:  It has the right to decide what content it will host and stream, and, correspondingly, has the right *not* to carry speech it deems harmful and discriminatory.  *See*, *e.g.*, *Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 437 (S.D.N.Y. 2014) (online publishers have a First Amendment right to exercise editorial control on their platforms); *accord Janus v. Am. Fed. of State, Cnty., and Mun. Employees, Council 31*, 138 S. Ct. 2448, 2464 (2018) ("[f]orcing free and independent individuals to endorse ideas they find objectionable is always demeaning"); *cf. U.S. Telecom Ass'n v. FCC*, 855 F.3d 381, 430 (D.C. Cir. 2017) (Kavanagh, J., dissenting) ("First Amendment protection does not go away simply because you have a large communications platform.").

1

**CONCLUSION**

2          For the reasons discussed above, Vimeo respectfully requests that this Court

3    dismiss this action for improper venue under Rule 12(b)(3) and Section 1406(a).

4    Alternatively, Vimeo respectfully requests that this Court transfer this action to the

5    U.S. District Court for the Southern District of New York "in the interests of

6    justice" under Section 1406(a) or on convenience grounds under Section 1404(a).

7

8     Dated:  July 19, 2019          JASSY VICK CAROLAN LLP
                                      JEAN-PAUL JASSY
9                                     KEVIN L. VICK

10

11

12                                    By: /s/ Jean-Paul Jassy
                                          Jean-Paul Jassy
13                                        Attorneys for Defendant
                                          VIMEO, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF MICHAEL A. CHEAH

I, Michael A. Cheah, declare as follows:

1.      I am over 18 years old.  Except as otherwise expressly noted, I have personal knowledge of the facts set forth in this declaration, except for matters stated on information and belief, which matters I believe to be true.  If called as a witness, I can and will testify competently to all of these facts.

2.      I am General Counsel of defendant Vimeo, Inc. ("Vimeo"), a Delaware corporation.  I make this declaration in support of Vimeo's motion to dismiss or transfer the action filed by plaintiffs James Domen and Church United ("Plaintiffs").

3.      Vimeo provides an online video platform, available at https://vimeo.com, through which registered users may upload and share videos.

4.      Vimeo's headquarters is located in New York, New York.  The majority of Vimeo employees work out of Vimeo's headquarters in New York, New York.  Documents relating to Plaintiffs' former Vimeo account are either located on servers in New York, New York or are accessible from computers based in New York, New York with the assistance of Vimeo personnel who are based in New York, New York.

5.      Vimeo maintains a Trust & Safety department, which is responsible for, among other things, removing content that is not permitted by Vimeo's Terms of Service.  The Trust & Safety function is managed from Vimeo's New York, New York headquarters.  The Vimeo Trust & Safety employee who removed Plaintiffs' account with Vimeo is no longer employed at Vimeo, but is, upon information and belief, working for another company in New York, New York.

6.      In order to upload and share videos through Vimeo's online service, a user must create a Vimeo account.  Users wishing to create an account must provide a screen name and an email address.

7.      According to Vimeo's records, Plaintiffs created a Vimeo account on

18

September 26, 2016, purchased a Vimeo Plus subscription on September 26, 2016, and upgraded to a Vimeo PRO subscription on May 12, 2018.

8.    Attached as **Exhibit A** is a true and correct copy of Vimeo's account creation page as it existed on or about September 26, 2016.  The account creation page states, "By joining Vimeo, you agree to our <u>Terms of Service</u>."  The words "Terms of Service" are hyperlinked to Vimeo's Terms of Service, available at <u>https://vimeo.com/terms</u>.

9.    Registered users may purchase subscription plans, which offer additional features and storage.  Attached as **Exhibit B** is a true and correct copy of an example of the "Checkout" page displayed to users who wish to purchase a subscription plan (dated as of July 2019).  The Checkout page states, "By making this purchase, you . . . agree to our <u>Terms of Service</u>."  The words "Terms of Service" are hyperlinked to the Terms of Service.  Though the example is dated as of July 2019, the foregoing disclosure statement has been displayed on the Checkout page since, at a minimum, May 12, 2018.

10.    Vimeo's Terms of Service provide, among other things, a list of restrictions on what content may be uploaded to the Vimeo video sharing service. A true and correct copy of the Terms of Service as they appeared on the Vimeo site on or about September 26, 2016 is attached as **Exhibit C**.

11.    The Terms of Service incorporate by reference Vimeo's Community Guidelines.  A true and correct copy of the Community Guidelines as they appeared on the Vimeo site on or about September 26, 2016 is attached as **Exhibit D**.

12.    The Community Guidelines state, in part, "You cannot upload certain types of content: . . . No videos that are hateful, harass others, violate someone's privacy, or include defamatory or discriminatory speech. <u>Read more</u>."  Clicking on the "Read More" hyperlink displayed a page titled, "Reporting Abuse and Violations" and highlighted a question titled, "How does Vimeo define hateful, harassing, defamatory, and discriminatory content?"  A true and correct of that page

19

1  as it appeared on the Vimeo site on or about September 26, 2016 is attached as
2  **Exhibit E**.

3      13.    The day after they filed their complaint, Plaintiffs and/or their counsel
4  issued a press release.  Attached as **Exhibit F** is a true and correct copy that press
5  release, dated June 26, 2019.

6      I declare under penalty of perjury under the laws of the United States of
7  America that the contents of this declaration are true and correct.  Executed this
8  19th day of July, 2019.

10  _____
        Michael A. Cheah