**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JAMES DOMEN, an individual, and                  :
CHURCH UNITED, a California not-for-             :
profit corporation,                                        :
                                                                  :
          Plaintiffs,                        :
                                                                  :          No. 19 Civ. 8418 (SDA)
      v.                                       :          ECF Case
                                                                  :
VIMEO, INC., a Delaware corporation, and     :
DOES 1-25,                                                :
                                                                  :
          Defendants.                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT VIMEO, INC.'s MOTION TO DISMISS

Michael A. Cheah
General Counsel
VIMEO, INC.
555 West 18th Street
New York, New York 10011
(212) 314-7457
(212) 632-9547 (Facsimile)
michael@vimeo.com

*Counsel for Vimeo, Inc.*

*Of counsel:*

Jean-Paul Jassy (*pro hac vice*)
Kevin L. Vick (*pro hac vice*)
Elizabeth Baldridge (*pro hac vice*)
JASSY VICK CAROLAN LLP
800 Wilshire Boulevard, Suite 800
Los Angeles, California 90017

October 11, 2019

**TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION .......................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

A.     The Vimeo Service ............................................................................................ 2

B.     Plaintiffs' Allegations ....................................................................................... 4

PROCEDURAL HISTORY ............................................................................................ 5

STANDARD OF REVIEW ............................................................................................. 5

ARGUMENT ................................................................................................................. 6

I.     Plaintiffs' State-Law Claims Are Barred by the First Amendment.................... 6

II.    Plaintiffs' State-Law Claims Are Barred by Section 230
       of the Communications Decency Act. .............................................................. 10

A.     Section 230 Broadly Immunizes Website Operatorss from Editorial Decisions
       Made with Respect to User Generated Content................................................ 10

B.     Plaintiffs' State-Law Claims Are Barred by Section 230(c)(1)......................... 11

1.     Vimeo is an Operator of an Interactive Computer Service................................ 12

2.     Vimeo is Not the Information Content Provider with Respect to the Content at Issue.... 12

3.     Plaintiffs' Lawsuit Treats Vimeo as a Publisher of Their Content................... 12

C.     Plaintiffs' State-Law Claims Are Barred by Section 230(c)(2)......................... 14

1.     Plaintiffs' Videos Fall into a Class of Content Covered by Section 230(c)(2)............ 14

2.     Plaintiffs Cannot Establish an Absence of Good Faith..................................... 15

III.   Plaintiffs Have Not Properly Pleaded Their State-Law Claims......................... 18

A.     Plaintiffs' California Constitution Claim Fails Because Vimeo Is Not a State Actor...... 19

B.     Plaintiffs' Discrimination Claims Fail. ............................................................ 21

CONCLUSION ............................................................................................................ 22

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................... 5, 16, 17

*Barnes v. Yahoo!, Inc.,*
    570 F.3d 1096 (9th Cir. 2009) .................................................................. 12, 13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................................................ 5

*Capitol Records, LLC v. Vimeo, LLC,*
    826 F.3d 78 (2d Cir. 2016)................................................................................. 2

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147, 153 (2d Cir. 2002)...................................................................... 6

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991)................................................................................. 6

*Cox v. Twitter,*
    No. 2:18-2573-DCN, 2019 WL 2513963 (D.S.C. Feb 8, 2019) ………….…………13

*Cubby, Inc. v. CompuServe, Inc.,*
    776 F. Supp. 135 (S.D.N.Y. 1991)................................................................... 10

*Eastern Greyhound Lines Div. of Greyhound Lines, Inc. v. N.Y. State Div. of Human Rights,*
    27 N.Y.2d 279, 265 N.E.2d 745 (N.Y. 1970) ................................................. 21

*Ebeid v. Facebook, Inc.,*
    No. 18-CV-07030-PJH, 2019 WL 2059662 (N.D. Cal. May 9, 2019) ………… 13, 18, 21

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) ................................................................... 11, 14

*Fed. Agency of News LLC v. Facebook, Inc.,*
    No. 18-cv-07041-LHK, 2019 WL 3254208 (N.D. Cal. July 20, 2019) …………………13

*Golden Gateway Center v. Golden Gateway Tenants Ass'n,*
    23 Cal. 4th 1013, 29 P.3d 797 (Cal. 2001) ....................................................... 19

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.,*
    742 F.3d 414 (9th Cir. 2014) ........................................................................... 21

*HiQ Labs, Inc. v. LinkedIn Corp.,*
    273 F. Supp. 3d 1099, 1116 (N.D. Cal. 2018) ........................................... 19, 20

*Holomaxx Tech. Corp. v. Microsoft Corp.*,
    783 F. Supp. 2d 1097 (C.D. Cal. 2011) ............................................................ 14, 15, 18

*Holomaxx Tech. Corp. v. Yahoo!, Inc.*,
    No. 10-cv-04926 JF, 2011 WL 3740827 (N.D. Cal. Aug. 23, 2011) .............................. 16

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
    515 U.S. 557 (1995).................................................................................... 7, 8, 9

*Janus v. Am. Fed. of State, Cnty., & Mun. Employees, Council 31*,
    138 S. Ct. 2448 (2018)...................................................................................... 6, 8

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) .......................................................................... 11, 12

*Kairam v. West Side GI, LLC*,
    No. 18 Civ. 1005, 2018 WL 6717280 (S.D.N.Y. Nov. 9, 2018) ..................................... 17

*Karim v. New York City Health & Hosp. Corp.*,
    No. 17 Civ. 6788, 2019 WL 1495098 (S.D.N.Y. Mar. 6, 2019) ..................................... 17

*Kinderstart LLC v. Google, Inc.*,
    No. 06-2057, 2006 WL 3246596 (N.D. Cal. July 13, 2006) ........................................... 19

*King v. Facebook, Inc.*,
    No. 19-cv-01987-WHO, 2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) ..................…..13

*Langdon v. Google, Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007) ………………………………………………..14

*Markel Am. Ins. Co. v. Linhart*,
    No. 11 Civ. 5094, 2012 WL 2930207 (E.D.N.Y. July 11, 2012) ..................................... 16

*Mezey v. Twitter*,
    No. 1:18-cv-21069 KMM, 2018 WL 5306769 (S.D. Fla. July 7, 2018) ......................... 13

*Miami Herald Pub'g Co. v. Tornillo*,
    418 U.S. 241 (1974).............................................................................................. 7

*Muller by Muller v. Jefferson Lighthouse Sch.*,
    98 F.3d 1530 (7th Cir. 1996) ................................................................................ 15

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018)................................................................................. 8, 15

*Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*,
    475 U.S. 1 (1986)................................................................................................ 8

*Pickup v. Brown,*
    740 F.3d 1208 (9th Cir. 2014) ...................................................................... 15

*Pruneyard Shopping Center v. Robins,*
    447 U.S. 74 (1980) ................................................................................. 8, 19

*Reed v. Town of Gilbert,*
    135 S. Ct. 2218 (2015) .............................................................................. 8

*Riggs v. MySpace, Inc.,*
    444 F. App'x 986 (9th Cir. 2011) ............................................................. 13

*Robins v. Pruneyard Shopping Center,*
    23 Cal. 3d 899, 592 P.2d 341 (1979) .................................................. 19, 20

*Row, Inc. v. Highgate Hotels, L.P.,*
    No. 15 Civ. 4419, 2018 WL 3756456 (S.D.N.Y. July 19, 2018) .................... 16

*Schnall v. Marine Midland Bank,*
    225 F.3d 263 (2d Cir. 2000) ...................................................................... 6

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.,*
    697 F. App'x 526 (9th Cir. 2017) ............................................................. 13

*Sorensen v. Wolfson,*
    170 F. Supp. 3d 622 (S.D.N.Y. 2016) ...................................................... 16

*Stratton Oakmont, Inc. v. Prodigy Servs. Co.,*
    No. 31063/94, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) .................... 10

*Telescope Media Grp. v. Lucero,*
    936 F.3d 740 (8th Cir. 2019) ..................................................................... 9

*United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.,
    AFL-CIO,*
    948 F.2d 1338 (2d Cir. 1991) ................................................................... 16

*Van v. Target Corp.,*
    155 Cal. App. 4th 1375 (2007) ................................................................. 19

*W. Va. Bd. of Educ. v. Barnette,*
    319 U.S. 624 (1943) .............................................................................. 6, 8

*Zango, Inc. v. Kaspersky Lab, Inc.,*
    No. 07-0807, 2007 WL 5189857 (W.D. Wash. Aug. 27, 2007) .................... 15

*Zeran v. Am. Online, Inc.,*
    129 F.3d 327 (4th Cir. 1997) ....................................................... 10, 11, 12

*Zhang v. Baidu.com Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014)..........................................................................9

Constitutions, Statutes and Rules

28 U.S.C. § 1927 ...................................................................................................................18

47 U.S.C. § 230 ........................................................................................................ 1, 11, 13

47 U.S.C. § 230(b)(2) ...........................................................................................................11

47 U.S.C. § 230(b)(3) ...........................................................................................................11

47 U.S.C. § 230(b)(4) .................................................................................................... 12, 22

47 U.S.C. § 230(c) ........................................................................................................ 12, 13

47 U.S.C. § 230(c)(1) .................................................................................................. 11, 13, 15

47 U.S.C. § 230(c)(2) .......................................................................................... 11, 13, 16, 17

47 U.S.C. § 230(c)(2)(A) ............................................................................................ 16, 17, 18

47 U.S.C. § 230(c)(2)(B) .......................................................................................................16

47 U.S.C. § 230(e)(3) ...........................................................................................................13

47 U.S.C. § 230(f)(2) ............................................................................................................14

Cal. Bus. & Prof. Code § 865.1 ..............................................................................................3

Cal. Civ. Code § 51 ........................................................................................................ 5, 24

Cal. Const., Art. I, § 2 .................................................................................................... 5, 22

Fed. R. Civ. P. 11 ..................................................................................................................18

N.Y. Educ. Law § 6509-E .......................................................................................................4

N.Y. Educ. Law § 6531-a .......................................................................................................4

N.Y. Exec. 296(2)(a) ...................................................................................................... 5, 24

U.S. Const. 1st Am. ................................................................................................................5

Other Authorities

141 Cong. Rec. H8469-70 ........................................................................................... 10

2009 report of American Psychological Association's Task Force on Appropriate Therapeutic Responses to Sexual Orientation ............................................................................ 3

2019 N.Y. Senate Bill 1046, Committee Rpt. Jan. 11, 2019 ........................................... 4

SB 1172, 2012 Cal. Legis. Serv. ch. 835, § 1(a) ............................................................ 3

## INTRODUCTION

Plaintiffs Pastor James Domen and Church United ("Plaintiffs") have it backwards:  It is not defendant Vimeo, Inc. ("Vimeo") that has abridged their free speech rights and discriminated against them by disallowing their videos promoting sexual orientation change efforts.  Rather, it is *Plaintiffs* who wish to trammel Vimeo's free speech rights by commandeering Vimeo's platform to spread discriminatory, stereotypical messages about lesbian, gay, bisexual, transsexual, queer and questioning (LGBTQ) individuals that Vimeo has banned.  Fortunately, the law does not permit this subversion of the First Amendment and state anti-discrimination laws and in fact protects Vimeo's efforts to rid its platform of discriminatory speech.

*First*, Vimeo is shielded by the First Amendment from Plaintiffs' state-law claims seeking to require Vimeo to carry their speech against its wishes.  Based upon widespread consensus in the medical community that sexual orientation change efforts are ineffective and potentially harmful to LGBTQ persons, Vimeo has determined that there is no room for content promoting such treatment on its platform.  Under established precedent, a private speaker like Vimeo cannot be compelled to carry another's speech, particularly when the speech conveys a message on a topic of public concern with which Vimeo disagrees.

*Second*, Plaintiffs' state-law claims are preempted by Section 230 of the Communications Decency Act.  Section 230(c)(1) broadly immunizes Vimeo from claims that seek to hold it liable for its exercise of a publisher's traditional editorial functions.  Because deciding what to remove is a traditional editorial function and because Plaintiffs' claims assail Vimeo's removal of their content, Plaintiffs' claims fall squarely within the ambit of this federal immunity.  In addition, Section 230(c)(2) separately immunizes Vimeo's good-faith decision to remove Plaintiffs' content as objectionable.

1

*Finally*, Plaintiffs have failed to properly plead their state-law claims.  Plaintiffs have failed to properly allege state action under their California Constitution claim, and they have failed to properly allege discrimination under either California or New York state law.

For each of these independent reasons, the Court should dismiss Plaintiffs' claims against Vimeo with prejudice.

## FACTUAL BACKGROUND

### A.    The Vimeo Service

Vimeo is a New York, New York-based for-profit company that operates a popular online video-sharing service, available at Vimeo.com.  First Amended Complaint ("FAC") ¶ 24; https://vimeo.com.  To upload a video, a user must create an account with Vimeo.  In doing so, users must accept Vimeo's Terms of Service agreement.  *See Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 84 (2d Cir. 2016) ("All Vimeo users must accept its Terms of Service.").

As Plaintiffs admit, Vimeo engages in "selective restrictions of allowed content," FAC ¶ 78, meaning Vimeo has made editorial decisions about the content that users may upload.  These decisions are reflected in Vimeo's Terms of Service, which prohibit, *inter alia*, content that "[c]ontains hateful, defamatory, or discriminary content or incites hatred against any individual or group."  Declaration of Michael A. Cheah ("Cheah Decl."), Ex. A, § 7; *see also* FAC ¶ 39. The Terms of Service incorporate by reference Vimeo's Community Guidelines, which elaborate on the content restrictions.  *See* Cheah Decl. Ex. B; FAC ¶ 39.[1]  In a section titled, "How does Vimeo define hateful, harassing, defamatory, and discriminatory content?," the Guidelines state:

. . . Vimeo moderators will generally remove videos that:

- Make derogatory or inflammatory statements about individuals or groups of people

---

[1]    The Terms of Service and Guidelines that Plaintiffs would have accepted in 2016 are attached as Exhibits A and B to the Cheah Declaration. *See* Cheah Decl. ¶ 4.

- Are intended to harm someone's reputation
- Are malicious
- Include someone's image or voice without their consent (Exception! Public figures and/or political officials are generally fair game.)

We also forbid content that displays a demeaning attitude toward specific groups, including:

- Videos that offer seduction training or teach Pickup Artist (PUA) techniques
- *Videos that promote Sexual Orientation Change Efforts (SOCE)*
- Videos that use coded or veiled language to attack a particular group like an ethnic or religious minority

*Id.* Ex. B (emphasis added).

Vimeo published the prohibition on content promoting sexual orientation change efforts ("SOCE") in 2014, two years before Plaintiffs created a Vimeo account.  Cheah Decl. ¶ 4; FAC ¶ 29.  Vimeo's editorial decision followed a law passed by California banning "mental health provider[s] [from] engag[ing] in sexual orientation change efforts with a patient under 18 years of age."  Cal. Bus. & Prof. Code § 865.1.  In passing this law, California's legislature found that "[b]eing lesbian, gay, or bisexual is not a disease, disorder, illness, deficiency, or shortcoming," SB 1172, 2012 Cal. Legis. Serv. ch. 835, § 1(a), and "[t]he major professional associations of mental health practitioners and researchers in the United States have recognized this fact for nearly 40 years," *id.*  California further found that efforts to change sexual orientation are not just ineffective, they may also be harmful:

> [S]exual orientation change efforts can pose critical health risks to lesbian, gay, and bisexual people, including confusion, depression, guilt, helplessness, hopelessness, shame, social withdrawal, suicidality, substance abuse, stress, disappointment, self-blame, decreased self-esteem and authenticity to others, increased self-hatred, hostility and blame toward parents, feelings of anger and betrayal, loss of friends and potential romantic partners, problems in sexual and emotional intimacy, sexual dysfunction, high-risk sexual behaviors, a feeling of being dehumanized and untrue to self, a loss of faith, and a sense of having wasted time and resources.

3

*Id*. § 1(b) (citing 2009 report of American Psychological Association's Task Force on Appropriate Therapeutic Responses to Sexual Orientation).

Earlier this year, New York became the fourteenth state to pass laws restricting sexual orientation change therapy to minors.  *See* N.Y. Educ. Law §§ 6509-E, 6531-a.  The legislative findings track those of California's.  *See* 2019 N.Y. Senate Bill 1046, Committee Rpt. Jan. 11, 2019 ("New York has a compelling interest in protecting the physical and psychological well-being of minors, including lesbian, gay, bisexual, and transgender youth, and in protecting its minors against exposure to serious harms caused by sexual orientation change efforts.").

## B.     Plaintiffs' Allegations

Plaintiff James Domen is a pastor and the President and Founder of plaintiff Church United, a California non-profit religious organization.  FAC ¶¶ 6,  13.  In October 2016, Plaintiffs created a Vimeo account "for the purpose of hosting various videos, including videos addressing sexual orientation as it relates to religion."  *Id*. ¶ 29.

Plaintiffs uploaded approximately 89 videos to their Vimeo account.  FAC ¶ 30.  On November 23, 2018, a Vimeo moderator wrote to Plaintiffs informing them that the account had been flagged because it contained at least five videos that "promote Sexual Orientation Change Efforts" in violation of Vimeo's stated policy.  FAC ¶ 32 & Ex. A.  Plaintiffs do not dispute Vimeo's characterization of these videos as containing content relating to sexual orientation change efforts.  *See id*. ¶ 41 ("the videos involved an effort by Church United to challenge [the proposed expansion of] California's existing prohibition on SOCE to apply to talk therapy and pastoral counseling").

Plaintiffs declined to remove any videos.  As a result, on December 6, 2018, Vimeo removed Plaintiffs' entire account, along with all of its videos.  *See* FAC ¶ 39 & Ex. B.  The email notification sent to Plaintiffs cited Vimeo's prohibition on "videos that harass, incite

4

hatred, or include discriminatory or defamatory speech." *Id.*  Plaintiffs challenge this decision, asserting that "Vimeo restricted and censored Plaintiffs' videos because those videos were based on a viewpoint regarding sexual orientation and religion with which Vimeo disagrees."  FAC ¶ 47.

## PROCEDURAL HISTORY

On June 25, 2019, Plaintiffs filed this lawsuit in the Central District of California.  Dkt. No. 1.  Vimeo moved to dismiss and/or transfer based upon the forum-selection clause in its Terms of Service requiring litigation in this district.  On September 4, 2019, Judge Steven W. Wilson granted Vimeo's motion and ordered the case transferred.

Plaintiffs' original complaint asserted that Vimeo's moderation decision violated Plaintiffs' rights under the free speech clause of the First Amendment of the U.S. Constitution, the free speech clause of Article I, Section 2 of the California Constitution, and the California Unruh Act.  On October 4, 2019, Plaintiffs filed their First Amended Complaint (Dkt. No. 35) in which they dropped their First Amendment Claim and added a claim under the New York Human Rights Law.  Plaintiffs seek declaratory relief, a permanent injunction requiring Vimeo to reinstate their account and host their videos, damages, and attorneys' fees.  *See* FAC, Prayer for Relief.

## STANDARD OF REVIEW

A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A reviewing court must disregard legal conclusions or the "formulaic recitation of the elements of a cause of action," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and examine whether "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

A court may consider documents extrinsic to the pleadings that are integral to the plaintiff's claims or incorporated by reference into the pleadings. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991). Here, although the Court may decide Vimeo's motion solely on the basis of the pleadings, it may properly consider Vimeo's Terms of Service and Community Guidelines because the First Amended Complaint "relies heavily upon [their] terms and effects." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000) (allowing consideration of plaintiff's cardholder agreement, account history, and monthly statements). In particular, the crux of Plaintiffs' claims is that Vimeo's adoption and application of "selective restrictions of allowed content" somehow violate California or New York State laws. *See* FAC ¶ 78.

## ARGUMENT

### I.   Plaintiffs' State-Law Claims Are Barred by the First Amendment.

Plaintiffs' state-law claims infringe Vimeo's free speech rights guaranteed by the First Amendment[2] because they seek to force Vimeo to publish, host, and stream videos containing ideological messages "with which Vimeo disagrees." FAC ¶ 47.

The First Amendment guarantees "both the right to speak freely and the right to refrain from speaking at all." *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 645 (1943) (Murphy, J., concurring). Censorship is bad enough, but "[w]hen speech is compelled, . . . additional damage is done." *Janus v. Am. Fed. of State, Cnty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2464 (2018). "In that situation, individuals are coerced into betraying their convictions." *Id.*

---

[2]   "Congress shall make no law . . . abridging the freedom of speech". U.S. Const. Am. I.

The right against compelled speech precludes the state from, among other things, interfering with publishers' editorial decisions. *See Miami Herald Pub'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).  In *Tornillo*, the Supreme Court struck down a Florida law requiring newspapers to provide political candidates with space to publish an op-ed in response to a critical editorial. *Id.* at 244.  The Court concluded that the law unduly interfered with the editorial process and penalized publishers for their own speech. *Id*. at 258.  Accordingly, far from promoting speech, a "[g]overnment-enforced right of access inescapably 'dampens the vigor and limits the variety of public debate.'" *Id*. at 257.

The Supreme Court subsequently reinforced *Tornillo*'s holding and extended it beyond the newspaper context. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557 (1995).  The question in *Hurley* was whether Massachusetts' public accommodations law—like the California and New York laws invoked here—could require St. Patrick's Day parade organizers to include a float by an LGBTQ group against the organizer's wishes.  515 U.S. at 573.  The Supreme Court answered the question in the negative, holding that "this use of the State's power violates the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." *Id*.  In doing so, the Court confirmed that the right articulated in *Tornillo* is not "restricted to the press," but is to be "enjoyed by business corporations generally and by ordinary people engaged in unsophisticated expression as well as by professional publishers." *Id*. at 574.

*Tornillo* and *Hurley* clinch the case here.  Vimeo is a private actor that exercises editorial discretion in determining what to allow and not allow on its website. *See* Cheah Decl. Exs. A & B.  As Plaintiffs put it, Vimeo engages in "selective restrictions of allowed content."  FAC ¶ 78. Vimeo's editorial decision with respect to SOCE content speaks to a matter of public policy and,

therefore, deserves no less protection from state intrusion than the newspaper editorial boards in *Tornillo*. Further, Vimeo's case for protection is even stronger than the parade organizers in *Hurley*. Whereas, the organizers did not convey a "wholly articulate" message in rejecting an LGBTQ group's floats, Vimeo has specifically and expressly banned SOCE content. *See* Cheah Decl. Ex. B; FAC ¶ 47.

For the same reason, the Supreme Court articulated the narrow exception carved out in *Pruneyard Shopping Center v. Robins*, 447 U.S. 74 (1980). There, the Supreme Court rejected a First Amendment challenge to a ruling that the California constitution guaranteed the rights of pamphleteers to partake in orderly petitioning in a common area in large shopping mall. Yet, as the Court made clear, "no specific message [was] dictated by the State to be displayed on appellants' property," *id*. at 87, and the mall owner "did not even allege that he objected to the content of the pamphlets." *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1, 12 (1986) (plurality opinion). As a result, the "principle of speaker's autonomy was simply not threatened in that case." *Hurley*, 515 U.S. at 580. In contrast, Plaintiffs seek to force Vimeo to carry, in perpetuity, a message on its property that it finds anathema.

Because "[f]orcing free and independent individuals to endorse ideas they find objectionable is always demeaning," *Janus*, 138 S. Ct. at 2464, laws that compel speech may "require 'even more immediate and urgent grounds' than a law demanding silence," *id*. (quoting *Barnette*, 319 U.S. at 663); *see also Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (laws compelling speakers to say a particular message are "presumptively unconstitutional") (quoting *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015)). Such exigent grounds are lacking here. The California constitution provides no good reason why one speaker's free speech interests should be displaced entirely by another's. And while state anti-

discrimination laws are praiseworthy, they are "not free to interfere with speech for no better reason than promoting an approved message or discouraging a disfavored one, however enlightened either purpose may strike the government."  *Hurley*, 515 U.S. at 579; *see also*, *e.g.*, *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 758 (8th Cir. 2019) ("when, as here, Minnesota seeks to regulate speech itself as a public accommodation, it has gone too far under *Hurley* and its interest must give way to the demands of the First Amendment") (holding that, under *Hurley*, wedding videographers could not be forced to provide services at same-sex weddings over their objections).[3]

This district's opinion in *Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 437 (S.D.N.Y. 2014), is instructive.  There, plaintiffs accused the operator of Chinese-language search engine Baidu.com of violating their rights under federal law, the New York Constitution, and New York Human Rights Law based upon Baidu's blocking of search results concerning the pro-democracy movement in China.  *Id*. at 435-36.  After reviewing *Tornillo* and *Hurley* at length, Judge Furman held that "Plaintiffs' efforts to hold Baidu accountable in a court of law for its editorial judgments about what political ideas to promote cannot be squared with the First Amendment." *Zhang*, 10 F. Supp. 3d at 437.  The instant case provides an even stronger case for First Amendment protection as there is no indication that Baidu took an overt position on the pro-democracy movement in China.

In sum, as in *Tornillo*, *Hurley*, and *Baidu*, Plaintiffs' efforts to force Vimeo to carry speech "with which Vimeo disagrees" (FAC ¶ 47) and thereby change its editorial policies to suit Plaintiffs' beliefs cannot be squared with the First Amendment.

---

[3]        Vimeo does not seek to invalidate the provisions of any public accommodations law generally. Rather, it simply objects to their application here.  *See Hurley*, 515 U.S. at 572 (observing that public accommodations laws do not, on their face, target speech).

## II.   Plaintiffs' State-Law Claims Are Barred by Section 230 of the Communications Decency Act.

Alternatively, Plaintiffs' state-law claims are preempted by the immunities granted to website operators under Section 230 of the Communications Decency Act.  Two separate immunities apply here:  (a) an immunity for performing publishing activity under Section 230(c)(1); and (b) an immunity for the good faith restriction of access or availability to offensive content under Section 230(c)(2).  Because Plaintiffs' state-law claims challenge Vimeo's removal of their videos, they implicate both Vimeo's role as publisher and its good faith moderation efforts.

### A.   Section 230 Broadly Immunizes Website Operators from Editorial Decisions Made with Respect to User Generated Content.

Congress enacted Section 230 "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation," *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2016) (quoting 47 U.S.C. § 230(b)(2)), and to "encourage service providers to self-regulate the dissemination of offensive material over their services," *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).  *See also* 47 U.S.C. §§ 230(b)(3) & (4).  Section 230 effects these goals by immunizing website providers from decisions made with respect to user-generated content.

Section 230, also known as the Cox-Wyden Amendment, "assuaged Congressional concern regarding the outcome of two inconsistent judicial decisions applying traditional defamation law to internet providers."  *LeadClick*, 838 F.3d at 173 (citing 141 Cong. Rec. H8469-70 (daily ed. Aug. 4, 1995 (statement of Rep. Cox))).  The first, *Cubby, Inc. v. CompuServe, Inc.*, 776 F. Supp. 135, 141 (S.D.N.Y. 1991), imposed no liability on CompuServe, a service that made no efforts block or screen content, while the second, *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, No. 31063/94, 1995 WL 323710, at *4 (N.Y. Sup. Ct. May 24, 1995),

exposed another service, Prodigy, to liability for having blocked and screened content unsuitable for children.  Congress astutely recognized that this regime would, perversely, penalize good Samaritans like the family-friendly Prodigy.  *See Zeran*, 129 F.3d at 331.  "The amendment was intended to overrule *Stratton* and provide immunity for 'interactive computer service[s]' that make 'good faith' efforts to block and screen offensive content."  *LeadClick*, 838 F.3d at 173 (quoting 47 U.S.C. § 230(c)).

To achieve these goals, Section 230 immunizes website operators with respect to certain decisions they make concerning user-generated content and preempts any inconsistent state or local law.  *See id*. § 230(e)(3).  Under the heading, "Protection for 'Good Samaritan' blocking and screening of offensive materials," 47 U.S.C. § 230(c), the statute immunizes service providers from (a) actions undertaken as a publisher, *id*. § 230(c)(1); and (b) good faith efforts to remove or restrict offensive content, *id*. § 230(c)(2)(A) (emphasis added).  Reviewing "courts have construed the immunity provisions in § 230 broadly."  *Jones v. Dirty World Entm't. Recordings LLC*, 755 F.3d 398, 408 (6th Cir. 2014); *LeadClick*, 838 F.3d at 173 (same and collecting cases).

### B.      Plaintiffs' State-Law Claims Are Barred by Section 230(c)(1).

Under Section 230(c)(1), "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune[.]"  *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc).  This immunity applies when the defendant is (1) an operator of an "interactive computer service"; (2) not the person who created the "information" at issue; and (3) is being treated, by the plaintiff's lawsuit, as the "as the publisher or speaker of [such] information."  47 U.S.C. § 230(c)(1); *LeadClick*, 838 F.3d at 173 (describing three elements).  All three elements are present here.

       *1.*     *Vimeo is an Operator of an Interactive Computer Service.*

An "interactive computer service" refers to "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet . . . ." 47 U.S.C. § 230(f)(2). "Courts typically have held that internet service providers, website exchange systems, online message boards, and search engines fall within this definition." *LeadClick*, 838 F.3d at 173. Vimeo easily qualifies as it provides a website that "allows users to upload, view, and comment on videos." FAC ¶ 24; *see also* https://vimeo.com.

       *2.*     *Vimeo is Not the Information Content Provider with Respect to the Content at Issue.*

The second element requires that Vimeo not be the creator or developer of the "content which gives rise to the underlying claim." *Leadclick*, 838 F.3d at 174. This is plainly the case: Plaintiffs allege that their videos are their own. *See* FAC ¶ 30 ("During the past two years, Plaintiffs used Vimeo's video hosting service to publish approximately eighty-nine (89) videos.").

       *3.*     *Plaintiffs' Lawsuit Treats Vimeo as a Publisher of Their Content*

The third Section 230(c)(1) element is met when the plaintiff's lawsuit "seek[s] to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content . . . ." *LeadClick*, 838 F.3d at 174 (quoting *Jones*, 755 F.3d at 407 (quoting *Zeran*, 129 F.3d at 330)). "[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) (cited with approval in *LeadClick*, 838 F.3d at 175); *accord Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir.

2003) ("decisions relating to the monitoring, screening, and deletion of content" are "quintessentially related to a publisher's role").

Here, regardless of how phrased, the crux of Plaintiffs' state-law claims is that Vimeo wrongfully "deleted" their account, FAC ¶¶ 44, 51, 59, 75, 77, upon "Vimeo's selective restrictions of allowed content."  FAC ¶ 78.  Because "removing content is something publishers do," *Barnes*, 570 F.3d at 1103, Plaintiffs' claims necessarily treat Vimeo as the publisher of their content and are therefore barred by Section 230(c)(1).  *See, e.g., Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (dismissing under Section 230(c)(1) claims "arising from MySpace's decisions to delete [plaintiff's] user profiles on its social networking website"); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 697 F. App'x 526, 526 (9th Cir. 2017) (dismissing claim that "seeks to hold Facebook liable as a publisher for hosting, and later blocking, SFJ's online content").  Based upon the clear language of Section 230(c)(1), district courts nationwide have not hesitated in dismissing claims under based upon the websites' *removal* of content, *e.g.*:

- *King v. Facebook, Inc.*, No. 19-cv-01987-WHO, 2019 WL 4221768, at *1 (N.D. Cal. Sept. 5, 2019) ("Each of King's claims against Facebook seeks to hold it liable as a publisher for either removing his posts, blocking his content, or suspending his accounts");

- *Fed. Agency of News LLC v. Facebook, Inc.*, No. 18-cv-07041-LHK, 2019 WL 3254208, at *7 (N.D. Cal. July 20, 2019) (dismissing "claims . . . based on Facebook's decision *not to publish* FAN's content") (emphasis in original);

- *Ebeid v. Facebook, Inc.*, No. 18-CV-07030-PJH, 2019 WL 2059662, at *4-5 (N.D. Cal. May 9, 2019) (dismissing claim holding that Facebook's "decision to remove plaintiff's posts undoubtedly falls under 'publisher' conduct");

- *Cox v. Twitter*, No. 2:18-2573-DCN, 2019 WL 2513963, at *3 (D.S.C. Feb 8, 2019) ("to the extent Plaintiff seeks to hold [Twitter] liable for exercising its editorial judgment to delete or suspend his account as a publisher, his claims are barred by § 230(c) of the CDA");

- *Mezey v. Twitter*, No. 1:18-cv-21069 KMM, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (holding that Twitter's suspension of Plaintiff's Twitter account

13

"seeks to hold Twitter 'liable for its exercise of a publisher's traditional editorial functions'") (quoting *Roommates.com*, 521 F.3d at 1170-71);

- *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 630 (D. Del. 2007) ("Section 230 provides Google, Yahoo, and Microsoft immunity for their editorial decisions regarding screening and deletion from their network").

This Court should follow their lead and dismiss Plaintiffs' claims.

## C.     Plaintiffs' State-Law Claims Are Barred by Section 230(c)(2).

The Court may also dismiss Plaintiffs' claims under the separate and independent immunity provided in Section 230(c)(2). This statute immunizes providers of interactive computer services from "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." 47 U.S.C. § 230(c)(2)(A).[4]

In this case, Vimeo removed Plaintiffs' videos in good faith because it considered them to be "otherwise objectionable"; specifically, Vimeo determined that Plaintiffs' videos contained discriminatory SOCE content.

### 1.     *Plaintiffs' Videos Fall into a Class of Content Covered by Section 230(c)(2).*

Under Section 230(c)(2), Vimeo has, at a minimum, the right to restrict any content as "objectionable" so long as the class of banned content bears "some relationship" to the statute's enumerated categories. *See Holomaxx Tech. Corp. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1104 (C.D. Cal. 2011) (spam emails bore some relationship to harassing content). The

---

[4]     Section 230(c)(2) speaks not just to a website's removal of content, but to the "restrict[ion]" on "access" or "availability" to content by both service providers and users, as well as the deployment of tools to give users the ability to restrict access or availability to content, *see* 47 U.S.C. § 230(c)(2)(B). Imposing "access restrictions" contemplates a range of activities that may or not fall within the traditional definition of "publishing," such as blocking, age-gating, de-prioritizing, and de-monetizing content. In this case, because the removal of content is both a publishing activity and a restriction on availability, Vimeo may invoke both Sections 230(c)(1) and 230(c)(2) simultaneously.

enumerated categories speak to content unsuitable for families and children.  *See* 47 U.S.C. §

230(c)(2)(A) ("obscene, lewd, lascivious, filthy, excessively violent, harassing").  Content that is

hateful or discriminatory can be considered unsuitable for this audience.  *See Muller by Muller v.*

*Jefferson Lighthouse Sch.*, 98 F.3d 1530, 1540 (7th Cir. 1996) ("an elementary school under its

custodial responsibilities may restrict [racist] speech that could crush a child's sense of self-

worth").  And content promoting SOCE can be considered discriminatory because its practice—

and underlying message—conveys negative stereotypes about LGBTQ persons.  *See supra* at pp.

3-4 ; *cf. Pickup v. Brown*, 740 F.3d 1208, 1232 (9th Cir. 2014) (California legislature rationally

restricted SOCE treatment on children because the "overwhelming consensus was that SOCE

was harmful and ineffective"), *abrogated on other grounds by Becerra*, 138 S. Ct. 2361.

Next, Vimeo had at least some basis for considering Plaintiffs' videos to fall within its

SOCE prohibition.  Importantly, Plaintiffs do not dispute that their videos concern and promote

SOCE.  What is more, Section 230(c)(2)(A) "does not require that the material actually be

objectionable; rather, it affords protection for blocking material 'that the provider or user

*considers to be*' objectionable."  *Zango, Inc. v. Kaspersky Lab, Inc.*, No. 07-0807, 2007 WL

5189857, at *4 (W.D. Wash. Aug. 28, 2007) (emphasis added).  Accordingly, the issue is not one

of correctness or even reasonableness; even if Vimeo ultimately made the wrong judgment call

on one or two videos, its good-faith mistakes are beyond review.

### 2. *Plaintiffs Cannot Establish an Absence of Good Faith.*

Vimeo need not demonstrate good faith in the first instance; rather, "the appropriate

question is whether [plaintiff] has 'pled an absence of good faith.'"  *Holomaxx*, 783 F. Supp. 2d

at 1105 (giving service provider benefit of the doubt with respect to its moderation of spam

emails).  Plaintiffs have failed to meet that burden.  Because the statute couples "good faith" with

an inherently subjective element—"considers to be"—the appropriate standard of review should

15

be subjective good faith.  This is a demanding standard to plead; as the Second Circuit has

explained in distinguishing bad faith under Rule 11 from that under 28 U.S.C. § 1927:  "Rule 11

requires only a showing of objective unreasonableness on the part of the attorney or client

signing the papers, but § 1927 requires *more*: subjective bad faith by counsel."  *United States v.*

*Int'l Broth. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am., AFL-CIO*, 948 F.2d

1338, 1346 (2d Cir. 1991) (emphasis added); *see also Sorensen v. Wolfson*, 170 F. Supp. 3d 622,

633 (S.D.N.Y. 2016) (observing that under a subjective bad faith standard, merely taking

"unjustified positions" is not enough) (collecting cases).

Plaintiffs' threadbare allegations of bad faith deserve no credit and should therefore be

ignored.  *See*, *e.g.*, *Row, Inc. v. Highgate Hotels, L.P.*, No. 15 Civ. 4419, 2018 WL 3756456, at

*5 (S.D.N.Y. July 19, 2018) (naked allegation that defendant registered domain name in "bad

faith" without "further factual enhancement" that "will not survive a motion to dismiss")

(quoting *Iqbal*, 556 U.S. at 678); *Markel Am. Ins. Co. v. Linhart*, No. 11 Civ. 5094, 2012 WL

2930207, at *2 (E.D.N.Y. July 11, 2012) (disregarding conclusory allegation of bad faith denial

of insurance).  This is particularly true in the context of Section 230(c)(2) where, "[t]o permit [a

plaintiff] to proceed solely on the basis of a conclusory allegation that [the defendant] acted in

bad faith essentially would rewrite the CDA."  *Holomaxx Tech. Corp. v. Yahoo!, Inc.*, No. 10-cv-

04926 JF, 2011 WL 3740827, at *2 (N.D. Cal. Aug. 23, 2011) (disregarding bad faith allegation

and holding that Yahoo!'s blocking of spam was a covered action).

Nor do Plaintiffs supply any non-conclusory facts to support a claim of subjective bad

faith (or even objective bad faith).  Plaintiffs allege that Vimeo removed their content out of

hostility towards their religion or sexual orientation.  FAC ¶¶ 50, 58.  But these allegations of

discrimination merely substitute one conclusory label for another.  *See*, *e.g.*, *Iqbal*, 556 U.S. at

681 (disregarding conclusory allegations that plaintiff received harsh treatment in custody because of race, religion and national origin); *see also*, *e.g.*, *Karim v. New York City Health & Hosp. Corp.*, No. 17 Civ. 6788, 2019 WL 1495098, at *6 (S.D.N.Y. Mar. 6, 2019) (Torres, J.) ("Plaintiff's 'naked assertions' concerning similarly-situated white, non-Muslim applicants receiving privileges 'upon information and belief' are insufficient to raise an inference of discrimination and do not provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'") (quotations and citation omitted); *Kairam v. West Side GI, LLC*, No. 18 Civ. 1005, 2018 WL 6717280, at *8 (S.D.N.Y. Nov. 9, 2018) (Aaron, M.J.) (recommending dismissal of pay discrimination claim where "there are no allegations to support Plaintiff's conclusory statement that the alleged failure to compensate Dr. Kairam for her administrative work was because of her sex").

Moreover, Plaintiffs' sole evidence of discrimination is that, out of videos uploaded by over "90,000,000 creators worldwide" (FAC ¶ 27), Vimeo has allegedly not removed a handful of videos concerning topics relating to sexual orientation generally (FAC ¶ 45). Plaintiffs list a number of video titles available on Vimeo that suggest a variety of viewpoints on homosexuality (e.g., "Gay to Straight" or "Happy Pride! LGBTQ Pride Month 2016"), but fail allege that any of these videos actually violate Vimeo's Terms of Service or that Vimeo is even aware of them. Consequently, the existence of such videos is entirely irrelevant to Vimeo's moderation decision here.

And because Plaintiffs do not dispute that their content espouses SOCE, the most plausible reading of the First Amended Complaint is that Vimeo simply applied its pre-existing policy against SOCE content to their videos. Accordingly, Vimeo's decision speaks to Plaintiffs' speech, not their identities. *See Ebeid*, 2019 WL 2059662 at *5 (dismissing

discrimination claim because "the complaint's allegations suggest that, if anything, Facebook denied plaintiff access to its services based on plaintiff's views about the then-British Ambassador to Egypt," instead of plaintiff's race, color, religion or national origin).[5]  Indeed, Plaintiffs concede the point when they allege that Vimeo removed their videos "based on a viewpoint regarding sexual orientation and religion with which Vimeo disagrees."  FAC ¶ 47.

Finally, the circumstances surrounding the removal of Plaintiffs' account do not corroborate bad faith.  Vimeo provided Plaintiffs with notice that its content was violating its guidelines, identified the guideline at issue, provided examples of videos containing SOCE content, and gave Plaintiffs an opportunity to remedy the violation.  The fact that Vimeo refused to "engage in a progressive conversation relating to James Domen's sexuality" (FAC ¶¶ 53, 61) after removing their account does not evince bad faith in retrospect as Vimeo is under no obligation to reconsider or modify its editorial policy.  *See Holomaxx*, 783 F. Supp. 2d 1097 at 1106 (imposing "duty [on Microsoft] to discuss in detail its reasons for blocking Holomaxx's communications or to provide a remedy for such blocking . . . would be inconsistent with the intent of Congress to 'remove disincentives for the development and utilization of blocking and filtering technologies'") (quoting 47 U.S.C. § 230(b)(4)).

## III.   Plaintiffs Have Not Properly Pleaded Their State-Law Claims.

In the further alternative, the Court should dismiss Plaintiffs' state-law claims because they fail to properly allege the elements of those claims.  Plaintiffs' California Constitution claim fails because Vimeo is not a state actor under California Supreme Court precedent.  And Plaintiffs' state-law anti-discrimination claims fail because they have not pled alleged intentional discrimination.

---

[5]   In addition, Vimeo bans content that discriminates based upon religion.  *See* Cheah Decl. Exs. A & B.

### A.    Plaintiffs' California Constitution Claim Fails Because Vimeo Is Not a State Actor.

In *Robins v. Pruneyard Shopping Center*, 23 Cal. 3d 899, 592 P.2d 341 (Cal. 1979), the California Supreme Court held that the California Constitution "protect[s] speech and petitioning, reasonably exercised, in shopping centers even when the centers are privately owned," due to the similarity of such centers to traditional town squares or business districts. *Pruneyard*, 592 P.2d at 910.[6]   To demonstrate requisite state action in this context, "the actions of a private property owner constitute state action for purposes of California's free speech clause only if the property is freely and openly accessible to the public." *Golden Gateway Center v. Golden Gateway Tenants Ass'n* 23 Cal. 4th 1013, 1033, 29 P.3d 797, 810 (Cal. 2001). Plaintiffs have failed to make such a showing here because *Pruneyard* does not apply to a private video-sharing service operator like Vimeo.

Importantly, "[n]o court has expressly extended *Pruneyard* to the Internet generally." *HiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1116 (N.D. Cal. 2017). Instead, courts have rejected California Constitution claims as applied to LinkedIn, *see id.* at 1117 (plaintiff did not raise "serious questions" about applying *Pruneyard* to LinkedIn on motion for preliminary injunction), and Google, *see Kinderstart LLC v. Google, Inc.*, No. 06-2057, 2006 WL 3246596, at *6-7 (N.D. Cal. July 13, 2006). In addition, California state courts have generally limited *Pruneyard* to large suburban malls with a central courtyard where people can gather. *See Van v. Target Corp.*, 155 Cal. App. 4th 1375, 1384 (Cal. App. 2007) (declining to extend *Pruneyard* to large retail stores). This Court should decline Plaintiffs' invitation to extend *Pruneyard* beyond its historical confines.

---

[6]    Cal. Const. Art. I, § 2(a) ("Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.").

To start, Vimeo does not provide a restriction-free forum for the public to speak.  As Plaintiffs admit, Vimeo engages in "selective restrictions of allowed content."  FAC ¶ 78.  In other words, Vimeo maintains editorial restrictions on what content may be allowed on its site. Uploading users must agree to these restrictions, as set forth in the Terms of Service and Community Guidelines.  In contrast, a citizen speaking on a public sidewalk or even in a shopping center common area agrees to no such terms.  For these reasons alone, Vimeo—and privately-operated websites that allow users to post content generally—are not freely accessible to all members of the public to use as a platform for unlimited speech dissemination within the meaning of *Pruneyard*.

Moreover, the same reasons why the First Amendment bars Plaintiffs' state-law claims militate against extending *Pruneyard* to the Internet.  Among other things:  (1) Plaintiffs would force Vimeo to host and stream their videos continuously and potentially in perpetuity, whereas *Pruneyard* contemplated a temporary intrusion on mall property by peaceable students distributing pamphlets; (2) Vimeo engages in expressive activity, whereas a shopping mall owner generally does not; and (3) Vimeo has banned the specific speech at issue here, whereas the *Pruneyard* mall owner was agnostic to the students' message.  Without addressing each critical difference and balancing the competing interests in a narrowly tailored way, transposing *Pruneyard* to websites based upon an imperfect analogy risks "potentially sweeping implications," *LinkedIn*, 273 F. Supp. 3d at 1116, that would upend Internet speech.  *See id*. ("The analogy between a shopping mall and the Internet is imperfect, and there are a host of potential 'slippery slope' problems that are likely to surface were *Pruneyard* to apply to the Internet.").

**B.      Plaintiffs' Discrimination Claims Fail Because Plaintiffs Have Not Properly Pled Discrimination.**

Plaintiffs assert that Vimeo discriminated against them based upon sexual orientation (or rather, "former sexual orientation") and religion in a place of public accommodation in violation of the New York Human Rights Law and the California Unruh Act.  *See* N.Y. Exec. 296(2)(a); Cal. Civ. Code § 51(b).  Both statutes require allegations of intentional discrimination based upon a protected ground.  *See Eastern Greyhound Lines Div. of Greyhound Lines, Inc. v. N.Y. State Div. of Human Rights*, 27 N.Y.2d 279, 283-84, 265 N.E.2d 745 (N.Y. 1970) (bus line's restrictions on bus drivers' facial hair did not violate Human Rights Law where there was no evidence the policy was "actuated by discrimination against creed"); *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (California Unruh Act requires allegation of intentional discrimination; allegations of disparate impact are insufficient).  Plaintiffs have not discharged that burden.

Plaintiffs' threadbare assertions of "intentional discrimination" (FAC ¶¶ 50, 58) deserve no credit, and Plaintiffs' non-conclusory facts fail to carry the day.  *See* Part II.B, *supra*.  Instead, as explained above, the most plausible reading of the pleadings is that Vimeo removed Plaintiffs' account because of the content of their speech—and not based upon their identities.  *See Ebeid*, 2019 WL 2059662 at *5; FAC ¶ 47.

## **CONCLUSION**

For the reasons set forth above, all of Plaintiffs' claims fail as a matter of law.  Vimeo

respectfully requests that the Court grant its motion and dismiss the First Amended Complaint

with prejudice.

Dated: New York, New York        Respectfully submitted,
       October 11, 2019

                /s/ *Michael A. Cheah*
                Michael A. Cheah
                General Counsel
                VIMEO, INC.
                555 West 18th Street
                New York, New York 10011
                (212) 314-7457
                (212) 632-9547 (Facsimile)
                michael@vimeo.com

                Counsel for Vimeo, Inc.

                *Of counsel:*

                Jean-Paul Jassy (*pro hac vice*)
                Kevin L. Vick (*pro hac vice*)
                Elizabeth Baldridge (*pro hac vice*)
                JASSY VICK CAROLAN LLP
                800 Wilshire Boulevard, Suite 800
                Los Angeles, California 90017
                (310) 870-7048
                (310) 870-7010 (Facsimile)
                jpjassy@jassyvick.com
                kvick@jassyvick.com
                ebaldridge@jassyvick.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 11, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court via ECF, which will send notification of such filing to all registered participants, including counsel of record for Plaintiffs:

Robert H. Tyler, Esq.
Nada N. Higuera, Esq.
TYLER & BURSCH, LLP
25026 Las Brisas Road
Murrieta, California 92562
nhiguera@tylerbursch.com

*Attorneys for Plaintiffs*

/s/ *Michael A. Cheah*
MICHAEL A. CHEAH