1 | Tyler & Bursch, LLP
2 | Robert H. Tyler, State Bar No. 179572
rtyler@tylerbursch.com
3 | Nada N. Higuera, State Bar No. 299819
4 | nhiguera@tylerbursch.com
25026 Las Brisas Road
5 | Murrieta, California  92562
6 | Telephone:   (951) 600-2733
Facsimile:      (951) 600-4996
7
8 | Attorneys for James Domen and Church United

9 | **UNITED STATES DISTRICT COURT**

10 | **FOR THE SOUTHERN DISTRICT OF NEW YORK**

11

12 | JAMES DOMEN, an individual; and
CHURCH UNITED, a California not-
13 | for-profit corporation

14 |                     Plaintiffs,

15 | v.

16

17 | VIMEO, INC., a Delaware for-profit
corporation; and DOES 1-25, inclusive,
18

19 |                     Defendants.

Case No.:  1:19-CV-08418-AT

**PLAINTIFFS JAMES DOMEN AND
CHURCH UNITED'S OPPOSITION
TO DEFENDANT VIMEO INC.'S
MOTION TO DISMISS**

20

21 |         Plaintiffs James Domen and Church United (collectively, "Plaintiffs")

22 | respectfully submit this Opposition to Defendant Vimeo Inc.'s ("Vimeo") Motion to

23 | Dismiss.

24 | ///

25 | ///

26 | ///

27 | ///

28

# TABLE OF AUTHORITIES

**Federal Cases**

*Allred v. Shawley, supra* ......................................................................... 9

*Ashcroft v. Iqbal*,
    556 U.S. 678 (2009) ........................................................................ 4

*Barnes v. Yahoo!*,
    570 F.3d 1096 (9th Cir. 2009) ...................................................... 2

*Batzel v. Smith*,
333 F.3d 1018, 1033 (9th Cir. 2003) ....................................................... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................ 4

*Butler v. Adoption Media, LLC*,
    486 F. Supp. 2d 1022 (N.D. Cal. 2007) ...................................... 5,15,16

*Chicago Lawyers' Committee for Civil Rights Under Law. Inc. v Craiglist*,
    519 F.3d 666 (7th Cir. 2008)...................................................... 10

*Cuviello v. City and County of San Francisco*,
    940 F. Supp. 2d 1071 (N.D. Cal. 2013) .................................... 6

*Doe v. GTE Corp.*,
    347 F.3d 655, 659-60 (7th Cir. 2003)...................................... 10

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ...................................................... 6

*e-Ventures Worldwide, LLC v. Google, Inc.*,
    188 F. Supp.3d 1265 (M.D. Fla. 2016) .................................... 11

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc) ................................ 10,11,12

*Galbraith v. County of Santa Clara*,
    307 F.3d 1119 (9th Cir. 2002) .................................................. 6

*Goddard*,
    2008 WL 5245490 ........................................................................ 4

*Hightower v. City and County of San Francisco*,
    77 F. Supp. 3d 867 (N.D. Cal. 2014) ...................................................... 6

*HiQ Labs Inc. v. LinkedIn Corp.*,
    2017 WL 3473663 (N.D. Cal. Aug. 14, 2017) ...................................... 8

*Sikhs for Justice "SFJ" Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ................................................ 2

*Song FiInc. v. Google, Inc.*,
    108 F. Supp.3d 876–84 (N.D. Cal. 2015) .......................................... 14

*Kirbyson v. Tesoro Refining and Marketing Co.*,
    2010 WL 2382395 (N.D. Cal. June 10, 2010) ...................................... 7

*Lancaster v. Alphabet Inc.*,
    2016 U.S. Dist. LEXIS 88908 (N.D. Cal. July 8, 2016) ..................... 13

*Marsh v. Alabama*,
    326 U.S. 501,503 (1946)............................................................................7

*Menotti v. City of Seattle*,
    409 F.3d 1113 (9th Cir. 2005) ................................................................ 7

*Pickup v. Brown*,
    740 F.3d 1208 (9th Cir. 2014) .............................................................. 14

*Pruneyard Shopping Center v. Robins*,
    477 U.S. 74 (1980) ................................................................ 8, 9, 17,18

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*
    547 U.S. 47 (2006) ........................................................................ 17,18

*SEC v. Apuzzo*,
    689 F.3d 204 (2d Cir. 2012) ................................................................... 4

*SEC v. Wyly*,
    788 F. Supp. 2d 92 (S.D.N.Y. 2011) ...................................................... 4

*Seidman v. Paradise Valley Unified School Dist. No. 69*,
    327 F. Supp. 2d 1098 (D. Ariz. 2004) ................................................... 6

*Sherman*,
    997 F.Supp.2d .......................................................................................... 4

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ............................................................... 6

*Zango, Inc. v. Kaspersky Lab, Inc.*,
    568 F.3d 1169 (9th Cir. 2009) ............................................................. 13

**California State Cases**

*Albertson's, Inc. v. Young*,
    107 Cal.App.4th 106,119 (2003) ...................................................... 8, 9

*Fashion Valley Mall, LLC v. N.L.R.B.*,
    42 Cal.4th 850 (2007) ............................................................................7

*Gerawan Farming, Inc. v. Lyons*
    24 Cal.4th 468 (2000) ...........................................................................7

*Golden Gateway Ctr. V. Golden Gateway Tenants Assn*,
    26 Cal.4th 1013, 1022 (2001) ...............................................................8

*Planned Parenthood v. Wilson, supra*
    234 Cal. App.3d p.1671 ........................................................................9

*Pruneyard. Weinberg v. Feisel*,
    110 Cal. App. 4th 1122, n.4 (Cal. Ct. App. 2003) ............................. 11

*Ralphs Grocery Co. v. Victory Consultants, Inc.*,
    17 Cal.App.5th 245 (Cal. Ct. App. 2017) ........................................ 8, 9

*Robins v. Pruneyard Shopping Center*,
    23 Cal.3d at 907–910 (1979) .................................................................8

*SchwartZ—Torrance Investment Corp. v. Bakery & Confectionery Workers' Union*,
    61 Cal.2d 766 (1964) .............................................................................9

*Trader Joe's Co. v. Progressive Campaigns, Inc.*,
    73 Cal.App.4th 425 (1997) ...................................................................9

*Weinburg v. Feisel*,
    110 Cal. App. 4th 1122, 1131, (Cal Ct. App. 2003) ...............................8

**Federal Statutes & Rules**

§230(c)(1) ............................................................................................ 13, 14

47 U.S.C. §230 ................................................................................ 5, 10,11

Federal Rule of Civil Procedure 12 (b)(c ) ................................................................. 4

**California Statutes**

Cal. Gov. Code § 12926 ................................................................. 8

Civil Code Section 51 ................................................................. 8

Federal Rule of Civil Procedure 12 ................................................................. 7

First Amendment to the United States Constitution ................................................................. 10

Section 51, et seq ................................................................. 4

Section 230 ................................................................. 16, 17

Article I, § 2 of the California Constitution ................................................................. 2


**New York Statutes**

N.Y. Exec. Law §292 ................................................................. 5

I.      INTRODUCTION .................................................................................... 1

II.     STATEMENT OF FACTS...................................................................... 2

III.    STANDARD OF REVIEW ……………………………………………...4

IV.     ARGUMENT ……………………………………………………..…..5

        A.      Plaintiffs Have Properly Plead Their State Law Claims………5

                1.      Plaintiffs' Complaint States a Claim under the Unruh Act ……6

                2.      Plaintiffs' Complaint States a Claim under the California Liberty
                        of Speech Clause …………………………………………8

        B.      The CDA Does Not Immunize Vimeo from Liability for
                Unlawful Conduct. ................................................................... 10

                1.      Vimeo is Not Entitled to Immunity Under 230(c)(1) …………12

                2.      Vimeo is Not Entitled to Immunity Under 230 ( c ) (2) ………14

        C.      The First Amendment Does Not Shield Vimeo from Liability for
                Unlawful Conduct ..................................................................... 15

V.      CONCLUSION ...................................................................................20

TABLE OF CONTENTS

# I.

## INTRODUCTION

This action is based on Vimeo's discriminatory animus in violation of the Unruh Civil Rights Act, Section 51, et seq. of the California Civil Code (the "Unruh Act"), and Vimeo's violation of Plaintiffs' rights to freedom of speech under the California Constitution.

This case will determine whether a social media platform doing business for compensation in California and New York has the right to deny access to individuals based on the individual's sexual orientation.

The content of the videos with which Vimeo took issue was primarily about Plaintiff James Domen's sexual orientation, the discrimination he has faced, and his religious views on sexual orientation. In Vimeo's Motion to Dismiss, it disingenuously accuses Plaintiffs of discrimination against the LGBTQ community. Vimeo was unable to support that assertion with any facts because it is baseless. Rather, Vimeo views Plaintiff James Domen's sexual orientation as a former homosexual as harmful, which is a violation of California's Unruh Act.

Both California's Unruh Act and New York's Sexual Orientation Non-Discrimination Act prohibit private business establishments from discriminating based on sexual orientation and religion. As a business establishment, Vimeo is required to abide by the law and refrain from treating individuals unequally based on their sexual orientation. Vimeo is attempting to get around full equally by erroneously alleging immunity in order that it may freely discriminate against whomever it pleases, including based on sexual orientation. Thankfully, California's Unruh Act and New York's Sexual Orientation Non-Discrimination Act both provide a remedy for the discrimination perpetrated by Vimeo. As explained below, Plaintiffs have sufficiently pled a cause of action under the Unruh Act, and neither the Communications Decency Act nor the First Amendment will allow Vimeo to operate its business in a hateful, discriminatory manner.

In addition, under California's Liberty of Speech clause, Vimeo is subject to judicial scrutiny even as a private company because it opened itself up as a quasi-public forum. Plaintiffs properly alleged sufficient facts in their operative First Amended Complaint ("FAC") to survive a motion to dismiss and have a trier of fact determine whether Vimeo's censorship of speech concerning sexual orientation and religion violates California's Constitution.

## II.

## STATEMENT OF FACTS

Church United is a California not-for-profit religious corporation. (FAC ¶ 6.) James Domen is the founder and president of Church United. (FAC ¶ 13.) Church United's mission is to equip faith leaders to positively impact the political and moral culture in their communities. (FAC ¶ 8.) For three years, Domen was a homosexual. (FAC ¶ 15.)  However, because of his desire to pursue his faith in Christianity, he began to identify as what he calls a "former homosexual."[1] (FAC ¶ 15.) In July 2009, Domen married his wife. (FAC ¶ 16.) Together, they have three biological children. (FAC ¶ 16.)

On or about October 2016, Plaintiffs obtained an account with Vimeo for the purpose of hosting various videos, including videos addressing sexual orientation as it relates to religion. (FAC ¶¶ 29-30.) During the past two years, Plaintiffs used Vimeo's video hosting service to publish approximately eighty-nine (89) videos. (FAC ¶ 30.)

On December 6, 2018, Vimeo terminated Plaintiffs' account because of five videos that, according to Vimeo, "harass, incite hatred, or include discriminatory or

---

[1] The U.S. District Court, Middle District of Florida, recently assessed numerous studies and expert testimony relating to fluidity of sexual orientation as it relates to Sexual Orientation Change Efforts.  (*Vazzo v. City of Tampa*, 2019 U.S. Dist. LEXIS 172734)  *Vazzo* noted that the area of fluidity as it relates to sexual orientation is dynamic and studies related to estimates of efficacy of therapy are inconclusive. The order in *Vazzo* acknowledges the difficulty in addressing the fluidity of sexual orientation as studies are inconclusive.

OPPOSITION TO DEFENDANT'S MOTION TO

defamatory speech."  (FAC ¶ 39.) The only other explanation Vimeo offered was that "Vimeo does not allow videos that promote Sexual Orientation Change Efforts." (FAC ¶ 39.)

Vimeo was unable to point to any specific content that violated its guidelines. The following is a list and brief description of the five videos flagged by Vimeo:

1. An NBC produced, unbiased documentary segment titled, Left Field, which contained an interview of Plaintiff James Domen and an interview of California Assemblyman Evan Low, who is a homosexual.

2. A two minute and thirty-six second long video wherein James Domen briefly explained his life story, his current sexual orientation, the discrimination he has faced, and his religion.

3. A promotional video for Freedom March Los Angeles.  Freedom March is a nationwide event where individuals like Plaintiff James Domen, who identify as former homosexuals, former lesbians, former transgender, and former bisexuals, assemble to support one another.

4.  A press conference with Andrew Comiskey, the founder of Desert Stream, wherein he discusses his personal sexual orientation and his religious views on sexual orientation.

5. An interview with Luis Ruiz, a survivor of the horrific attack at the Pulse Nightclub in Florida in March 2018.  In the video, Luis Ruiz shares his experience as a survivor of the attack and his healing from being shot in the incident. (FAC ¶¶ 34-38.)

Plaintiffs have lodged these five videos with the Court concurrently with Plaintiffs' Request for Judicial Notice.

None of the videos harass, incite hatred, or include discriminatory or defamatory speech. Plaintiffs contend that the account was deleted because James Domen is a Christian who identifies his sexual orientation as "former homosexual."

Plaintiffs were unsuccessful in their attempts to reach an informal resolution and were forced to bring this lawsuit to vindicate their rights.

### III.

### STANDARD OF REVIEW

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *SEC v. Apuzzo*, 689 F.3d 204, 207 (2d Cir. 2012); *SEC v. Wyly*, 788 F. Supp. 2d 92, 101 (S.D.N.Y. 2011). A complaint "does not need detailed factual allegations," but only factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If the FAC contains sufficient "factual content" to allow "the court to draw the reasonable inference that the Vimeo is liable for the misconduct alleged," the plaintiff has met its burden of stating a claim with "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 678 (2009); *see also Wyly*, 788 F. Supp. 2d at 101. A motion to dismiss should be granted only if the complaint is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### IV.

### ARGUMENT

Vimeo fails to show why the allegations in the Plaintiffs' FAC, if taken as true, are insufficient to state claims for relief as matter of law. Vimeo's motion to dismiss is based on the fallacy that Vimeo, a passive business receptacle and paid conduit for videos, is free to discriminate against persons based on sexual orientation and content creators' religious speech. The FAC sets forth sufficient allegations from which a trier of fact would find that Plaintiffs are entitled to relief for each of the claims asserted against Vimeo. Consequently, Vimeo cannot prove that the facts, as pleaded, entitle Vimeo to immunity under the Communications Decency Act, 47 U.S.C. § 230 ("CDA"), nor can Vimeo carry its affirmative legal

burden of showing that the First Amendment immunizes its wrongdoing, including blatant sexual orientation and religious discrimination. In the event this Court agrees with Vimeo, Plaintiffs request the right to amend the FAC to allege addition facts as necessary.

**A.      Plaintiffs Have Properly Plead Their State Law Claims.**

Plaintiffs' FAC alleges sufficient facts to state cognizable claims for legal relief under California's Unruh Act and the California Liberty of Speech Clause.

**1.  Plaintiffs' Complaint States a Claim under the Unruh Act.**

California's Unruh Act, Civil Code Section 51(b), *et seq.*, states that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." "Sexual orientation" for purposes of the Unruh Act "means heterosexuality, homosexuality, and bisexuality." Cal. Gov. Code § 12926.  New York's antidiscrimination statute likewise defines "sexual orientation" to mean "heterosexuality, homosexuality, bisexuality or asexuality, whether actual or perceived." N.Y. Exec. Law § 292.

Courts have held that the term "business establishment" under the Unruh Act includes exclusively internet-based companies that do business in California. *Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1054 (N.D. Cal. 2007). The "Unruh Act affects what defendants must do to engage in business activities in California -- refrain from engaging in discrimination." *Id.* at 1058. The Unruh Act does not require a business establishment "to espouse or denounce any particular viewpoint, but rather to refrain from discriminatory conduct." *Id.*

Here, Plaintiffs allege that Vimeo restricted and censored Plaintiffs' videos because James Domen identifies as a former homosexual, and Vimeo disagrees with the religiously-based viewpoint of this. (FAC ¶ 47.) Vimeo denied Plaintiffs full and

equal accommodations, advantages, privileges, and services, by deleting Plaintiffs'
account based on Vimeo's subjective views about Plaintiffs' sexual orientation and
religion. (FAC ¶ 59.) None of Plaintiffs' 89 videos, harass, incite hatred, or include
discriminatory or defamatory speech.  (FAC ¶ 43.)  There is no specific content in
Plaintiffs videos which Vimeo can point to that violates any of Vimeo's terms of
service. The five videos flagged by Vimeo as problematic centered on James
Domen's sexual orientation as a former homosexual and Church United's Christian
principles.  (FAC ¶ 40.)

Vimeo attempts to characterize Plaintiffs' allegations as "threadbare
conclusions of intentional discrimination." As a threshold matter, there is no
heightened pleading standard for improper motive in constitutional tort cases.
*Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002). And
under *Iqbal*, Plaintiffs need only offer facts "tending to exclude" Vimeo's
alternative explanation, thereby rendering the FAC's allegations plausible. *Eclectic
Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014);
*Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (holding that *Iqbal* does not
require claim to be "true or even probable," only that it "plausibly suggest an
entitlement to relief" and dismissal is proper only when the Vimeo's "plausible
alternative explanation is so convincing that plaintiff's explanation is *im*plausible")
(emphasis in original).

The FAC alleges that Plaintiffs' compliant videos were restricted and deleted
whereas videos on similar subjects, were not. (FAC ¶¶ 44-46). Where speakers are
engaged in similar or identical conduct but treated differently, that raises a plausible
inference that they are victims of discrimination. *See*, *e.g*., *Hightower v. City and
County of San Francisco*, 77 F. Supp. 3d 867 (N.D. Cal. 2014); *Cuviello v. City and
County of San Francisco*, 940 F. Supp. 2d 1071 (N.D. Cal. 2013); *Seidman v.
Paradise Valley Unified School Dist. No. 69*, 327 F. Supp. 2d 1098, 1112 (D. Ariz.
2004). Plaintiffs' allegations of differential treatment, alone, make dismissal on the

pleadings inappropriate. *See Kirbyson v. Tesoro Refining and Marketing Co.*, 2010 WL 2382395, *3 (N.D. Cal. June 10, 2010) (allegations of different treatment raised a plausible inference that plaintiff was victim of discrimination, making dismissal on pleadings "inappropriate" and "premature"); *see also Menotti v. City of Seattle*, 409 F.3d 1113, 1147-48 (9th Cir. 2005).

Similar to *Kirbyson,* Plaintiffs allege differential treatment based on the discriminatory deletion, censorship, and *de facto* ban of Plaintiffs' content from a public forum.  The inference as set forth in both *Kirby* and *Menotti* applies here as Plaintiffs, through their FAC, have set forth sufficient facts to establish a plausible inference that Plaintiffs are the victims of unlawful discrimination pursuant to California's Unruh Act and New York's Sexual Orientation Non-Discrimination Act.

### 2. Plaintiffs' Complaint States a Claim under the California Liberty of Speech Clause.

The Liberty of Speech provision, Article I, § 2 of the California Constitution, grants broader rights to free expression than the First Amendment to the United States Constitution. *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468 ("Article I's free speech clause is at least as broad as the First Amendment's, and its right to freedom of speech is at least as great.").  It affirms the "idea that private property can constitute a public forum for free speech if it is open to the public in a manner similar to that of public streets and sidewalks." *Fashion Valley Mall, LLC v. N.L.R.B.*, 42 Cal.4th 850, 869 (2007) (citing *Robins v. Pruneyard Shopping Ctr.*, 23 Cal.3d 899, 907–08 (1979), aff'd, 447 U.S. 74 (1980); *See also Marsh v. Alabama*, 326 U.S. 501, 503 (1946), (privately owned town and shopping district which were open to and freely used by the public constituted public forum).

In essence, California's protection of free speech is unique in that "actions of a private property owner constitute state action for purposes of California's free speech clause" when the property "is freely and openly accessible to the public" and is

1  operated as "the functional equivalent of a traditional public forum," a place where

2  "historically the public's free speech activity is exercised." *Robins*, 23 Cal.3d at 907–

3  910 & fn. 5. This "more definitive" concept of "state action" has become "embedded"

4  in California's "free speech jurisprudence with no apparent ill effects." *Golden*

5  *Gateway*, 26 Cal.4th at 1022. The Liberty of Speech Clause effectively balances the

6  rights of property owners to use their property as they see fit, with the public's right

7  to free speech. *Albertson's,* 107 Cal.App.4th at 119-122.

8       Under established California constitutional law, a private property owner who

9  operates its property as a public forum for speech is subject to judicial scrutiny

10 under the First Amendment and California's Liberty of Speech clause. *Robins v.*

11 *Pruneyard Shopping Ctr.*, 23 Cal.3d 899, 907–08 (1979), aff'd, 447 U.S. 74 (1980);

12 *Ralphs Grocery Co. v. Victory Consultants, Inc*., 17 Cal.App.5th 245, 258 (Cal. Ct.

13 App. 2017), as modified (Nov. 6, 2017); *Golden Gateway Ctr. v. Golden Gateway*

14 *Tenants Assn*., 26 Cal.4th 1013, 1022 (2001); and *Fashion Valley Mall, LLC v.*

15 *N.L.R.B*., 42 Cal.4th 850, 869 (2007).

16      Vimeo mistakenly relies on several lower court cases in asserting that the

17 "quasi-state action" doctrine is limited only to shopping centers and expressly

18 excludes online service providers. Contrary to Vimeo's contention, *HiQ Labs Inc. v.*

19 *LinkedIn Corp*., 2017 WL 3473663 (N.D. Cal. Aug. 14, 2017) does not limit

20 *Pruneyard* to shopping centers. (MTD 17:4-25). The judge in that case found that

21 the cases holding internet were public fora were in the context of California's anti-

22 SLAPP statute that "protects conduct beyond constitutionally protected speech

23 itself." *Id*. at *11. But California appellate decisions have held that a "public forum"

24 under California's anti-SLAPP statute is expressly defined under California law by

25 "sole reference to[] First Amendment cases" and a "public forum" under the statute

26 is by definition a "public forum" under *Pruneyard. Weinberg v. Feisel*, 110 Cal.

27 App. 4th 1122, 1131, n.4 (Cal. Ct. App. 2003) (meaning "of a Public Forum was

28 developed in, and has sole reference to, First Amendment cases."); *see also Ralphs*

*Grocery Co*., 17 Cal.App.5th at 258, (holding that "any analysis under *Pruneyard* []
must occur under the first prong of the anti-SLAPP analysis because the critical
inquiry is whether protected activity is challenged in the complaint") (internal
citations omitted).

Moreover, contrary to Vimeo's argument, given the allegations in Plaintiffs'
FAC, the application of the *Pruneyard* rule cannot be resolved as a matter of law
upon a motion to dismiss. "Appellate decisions applying *Pruneyard* focus on
whether the property owner has so opened up his or her property for public use as to
make it the functional equivalent of a traditional public forum." *Trader Joe 'S C0. v.
Progressive Campaigns, Inc.* , 73 Cal.App.4th 425, 433-434 (1997). "The less that
an owner has opened up the property for use by the general public, the less that the
owner's rights are circumscribed by the statutory and constitutional rights of those
who use it." *SchwartZ—Torrance Investment Corp. v. Bakery & Confectionery
Workers' Union*, 61 Cal.2d 766, 771 (1964); accord, *Allred v. Shawley, supra*, at
1502. "Whether private property is to be considered quasi-public property subject to
the exercise of constitutional rights of free speech and assembly depends" on the
factual circumstances, including in part, "the nature, purpose, and primary use of the
property; the extent and nature of the public invitation to use the property; and the
relationship between the ideas sought to be presented and the purpose of the
property's occupants." *Albertson's, Inc. v. Young*, 107 Cal. App. 4th 106, 119
(2003) (citing and quoting *Planned Parenthood v. Wilson*, *supra*, 234 Ca1.App.3d at
p. 1671).

Applying the *Pruneyard f*actors to the FAC allegations, Plaintiffs have
alleged sufficient facts to survive a motion to dismiss and have a trier of fact to
determine whether Vimeo has violated California's Liberty of Speech Clause.
Notably, Vimeo provides a public forum which, similar to *Pruneyard*, is unrestricted
as the content available on the website is accessible twenty four (24) hours a day.
(FAC ¶ 24.) The website, like a shopping center, operates as an open access venue

1    which is freely open to the public for purposes of expression and conversation

2    relating to a particular content creator's message. (FAC ¶ 25.) Vimeo does not

3    provide a website which restricts access to particular parts of the day or a limited

4    group of individuals. (FAC ¶ 25.) But, it provides a worldwide platform where

5    individuals, at any time or place, can engage in conversation relating to a particular

6    message. (FAC ¶ 26.)

7         Therefore, Plaintiffs have alleged sufficient facts to state claims for relief

8    under California's Unruh Act and the California Liberty of Speech Clause.

9    **B.    The CDA Does Not Immunize Vimeo from Liability for Unlawful**

10          **Conduct.**

11         The CDA does not grant websites the right to right to engage in

12   discriminatory conduct, nor does it immunize discriminatory regulation and deletion

13   of accounts. *Fair Housing Council of San Fernando Valley v. Roommates.com,*

14   *LLC*, 521 F.3d 1157, 1163-64 (9th Cir. 2008) (en banc) (discussing the history and

15   origins of the CDA and viewpoint neutral requirement) (citing and quoting *Chicago*

16   *Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d

17   666 (7th Cir. 2008), and *Doe v. GTE Corp.*, 347 F.3d 655, 659-60 (7th Cir. 2003)).

18   Importantly, Vimeo fails to cite any authority holding that the CDA is an exception

19   to the protection against discrimination provided by the Unruh Act and New York's

20   Sexual Orientation Non-Discrimination Act.

21         The CDA was created to foster the development of the internet as a source of

22   information, communication and education; and to support the creation of

23   filtering/blocking tools which would enable those using the internet to "maximize

24   user control over what information is received" over the internet, particularly with

25   respect to what parents want their children to access. *See* 47 U.S.C. §230(b)(3)-(4).

26   As an incentive for the development of filtering/blocking tools, the CDA (a) shields

27   internet providers when relaying content or speech of others; and (b) immunizes

28   voluntary good faith efforts to filter offensive material. 47 U.S.C. §230(c).

In an effort to side-step the "good faith" requirement, Vimeo asserts immunity provision under §230(c)(1). However, as set forth in more detail below, (c)(1) does not apply where, as here, Vimeo, a receptacle and conduit for third party speakers, is the sole perpetrator of the illegal and unlawful discrimination. *Fair Housing*, 521 F.3d at 1165, 1177. Vimeo is also ineligible for immunity under (c)(2)(B) because Plaintiffs' content is not obscene, pornographic, or objectively harmful content as defined by the statute.

**1. Vimeo is Not Entitled to Immunity Under 230(c)(1).**

Vimeo's argument on section 230(c)(1) boils down to a claim that Vimeo is immune for any action taken in connection with its efforts to restrict, filter and censor videos, even if those efforts are nothing more than a bad faith attempt to discriminate against a user's sexual orientation status and/or religiously-based speech in violation of dtate law. Vimeo's position finds no support in the law.

In *e-Ventures Worldwide, LLC v. Google, Inc*., 188 F. Supp.3 d 1265 (M.D. Fla. 2016) and 2017 WL 2210029 (M.D. Fla. Feb. 8, 2017), the court rejected Google's motion to dismiss as well as a motion for summary judgment, based on allegations (and, later, circumstantial evidence) that the website provider, Google, had removed plaintiff's websites from its search results for anticompetitive reasons. 188 F.Supp.3d 1265, 1277. In so doing, the court also expressly rejected the defendant's insistence that its intent, no matter how maliciously or unlawfully motivated, was irrelevant under 230(c)(1):

> Interpreting the CDA this way results in the general immunity in (c)(1) swallowing the more specific immunity in (c)(2). Subsection (c)(2) immunizes only an interactive computer service's 'actions taken in good faith.' If the publisher's motives are irrelevant and always immunized by (c)(1), then (c)(2) is unnecessary. The court is unwilling to read the statute in a way that renders the good-faith requirement superfluous.

2017 WL 2210029 at *3; *see also Fair Housing*, 521 F.3d at 1165 ("The CDA does not grant immunity for inducing third parties to express illegal preferences.

Roommate's own acts—posting the questionnaire and requiring answers to it—are entirely its doing and thus section 230 of the CDA does not apply to them.").

Vimeo's quotation from *Fair Housing* that "any activity that can be boiled down to whether to exclude material that third parties seek to post online is perforce immune" is misleading and is quoted out of context. (MTD pg.11). Specifically, the quotation was lifted from the court's discussion of *Batzel*, an earlier case that involved a newsletter distributor's decision to publish or not publish third party content. *Fair Housing*, 521 F.3d at 1170-71 (discussing *Batzel v. Smith*, 333 F.3d 1018, 1033 (9th Cir. 2003)). Consequently, as the court makes clear in the very next sentence, if a publisher engages in independently illegal conduct then it is not entitled to CDA immunity. *Id*. at 1171.

Vimeo's deletion of Plaintiffs' account occurred because of Vimeo's discriminatory and unlawful conduct. The CDA "was not meant to create a lawless no-man's-land on the Internet," where conduct that is illegal offline is now legal online. *Fair Housing*, 521 F.3d at 1164, 1167. "If such screening is prohibited when practiced in person or by telephone, we see no reason why Congress would have wanted to make it lawful to profit from it online." *Id*. Vimeo cannot lawfully discriminate against people offline and the CDA does not immunize Vimeo from the same actions in an online platform.

Finally, none of the cases relied on by Vimeo support Vimeo's assertion that Plaintiffs seeks to impose liability on Vimeo as a publisher of Plaintiffs' videos. In *Barnes v. Yahoo!,* 570 F.3d 1096 (9th Cir. 2009), cited by the Vimeo, a provider took neutral steps to "de-publish" offensive or fake profiles and the provider obtained immunity because the theory of liability was premised on a violation of a duty that "derive[d] from the defendant's status as a publisher or speaker" of third party content. *Id*. at 1101-02. Unlike *Barnes*, *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc*., 144 F. Supp. 3d 1088 (N.D. Cal. 2015), and *Lancaster v. Alphabet Inc*., 2016 U.S. Dist. LEXIS 88908 (N.D. Cal. July 8, 2016), Vimeo is not a

1  publisher or speaker, and none of Plaintiffs content violates Vimeo's standards.

2  Rather, this present case addresses the denial of a business service based on

3  discriminatory animus toward James Domen's sexual orientation and Plaintiffs'

4  religious beliefs about sexual orientation.

5           **2. Vimeo is Not Entitled to Immunity Under 230(c)(2)**

6           Vimeo's other contention that subdivision (c)(2)(B) applies to this case

7  because Plaintiffs' videos contain objectionable sexual orientation change effort

8  content does not comport with the immunity requirements of that provision. Section

9  230(c)(2)(B) immunity extends only to claims arising from restricting access to

10 material that "is obscene, lewd, lascivious, filthy, excessively violent, harassing, or

11 otherwise objectionable." Vimeo provides no examples of content in Plaintiffs'

12 videos which Vimeo finds "objectionable." Indeed, Vimeo cannot provide examples

13 because their issues boil down to Plaintiff James' Domen sexual orientation identity

14 and Plaintiffs' religious beliefs about sexual orientation.

15          As Plaintiffs make clear in their FAC, the restricted videos at issue do not

16 contain any so-called "sexual orientation change efforts." (FAC ¶¶ 38-43).

17 Consequently, this case stands in sharp contrast to cases involving

18 nondiscriminatory tools designed to protect viewers from malware, spyware and

19 other objectively verifiable harmful material because it concerns an unpopular

20 sexual orientation and the conveyance of an unpopular sincerely held religious

21 belief.

22          In the case cited by Vimeo, *Zango, Inc. v. Kaspersky Lab, Inc*., 568 F.3d 1169

23 (9th Cir. 2009), a company sued a security company for blocking plaintiff's program

24 as malicious software ("malware" or "spyware"). The court found that the blocked

25 malware in question threatened to expose the user to objectively verifiable harm,

26 including pornography or security risks. *Id*. at 1174. *Zango* also found that if a

27 consumer were unhappy with its security program, she could uninstall it and buy

28

1   blocking software elsewhere. *Id*. That was possible because the end user could

2   disable the filtering or blocking technology. *Id.* at 1177.

3         In contrast to *Zango*, Plaintiffs here had approximately eighty nine (89)

4   videos removed and were permanently prevented from continuing to use their

5   account. They could not disable the deletion of their videos or any filtering. More

6   importantly, Vimeo has not shown the videos expose viewers to objectively

7   verifiable harm. This decision shows why subdivision (c)(2)(B) does not apply to

8   this case as it did in *Zango*.

9         The Section 230(c)(2)(B) immunity is not available to restrict appropriate

10  content simply because the provider has a motive to unreasonably designate that

11  material "otherwise objectionable" for purely discriminatory goals. As many courts

12  have explained, the term "otherwise objectionable" does not mean "anything that

13  Vimeo finds objectionable," but refers to offensive material similar to material that

14  is found to be obscene, lewd, lascivious, filthy, excessively violent, or harassing. *See*

15  *Song fi Inc. v. Google, Inc*., 108 F. Supp.3d 876, 883–84 (N.D. Cal. 2015) (limiting

16  catchall language to prevent restricting content because it might pose a "problem"

17  for YouTube); *Sherman*, 997 F.Supp.2d at 1138 (declining to "broadly interpret

18  'otherwise objectionable' material to include any or all information or content");

19  *Goddard*, 2008 WL 5245490, at *6 (finding that information "relat[ing] to business

20  norms of fair play and transparency are . . . beyond the scope of § 230(c)(2)").

21        Plaintiffs are not promoters of conversion therapy banned in cases such as

22  *Pickup v. Brown*, 740 F.3d 1208, 1232 (9th Cir. 2014) which prohibits licensed

23  mental health providers from administering conversion therapies to minors that the

24  legislature has deemed harmful. "Conversion therapy" is explained in *Pickup* as

25  encompassing the following:

26            In the past, aversive treatments included inducing nausea, vomiting, or
          paralysis; providing electric shocks; or having an individual snap an

27            elastic band around the wrist when aroused by same-sex erotic images

28            or thoughts. Even more drastic methods, such as castration, have been

---

14

used. Today, some non-aversive treatments use assertiveness and
affection training with physical and social reinforcement to increase
other-sex sexual behaviors. Other non-aversive treatments attempt to
change gay men's and lesbians' thought patterns by reframing desires,
redirecting thoughts, or using hypnosis, with the goal of changing
sexual arousal, behavior, and orientation.

*Id.* at 1048-1049. Here, Plaintiffs' videos primarily discuss James Domen's decision
to identify as a former homosexual based on his religious views. (FAC ¶¶ 39-43.)
Vimeo provides no examples of content in Plaintiffs' videos which Vimeo finds
"objectionable."  Vimeo's attempt to characterize Plaintiffs as essentially supporters
of electroshock therapy is a gross mischaracterization of the facts.

Consequently, Section (c)(2) does not immunize Vimeo in this matter as
Plaintiffs' videos do not contain objectionable content, as defined by statute and
case law, and the content of the videos was not obscene, lewd, lascivious, filthy,
excessively violent, or harassing. The videos in question merely provide content on
sexual identity as it relates to legitimately held religious beliefs.

## C.   The First Amendment Does Not Shield Vimeo from Liability for
Unlawful Conduct

Vimeo does "not have a First Amendment right to engage in discriminatory
conduct," and statutes such as the Unruh Act "prohibiting discrimination in public
accommodation do not violate the First Amendment because they are not aimed at the
suppression of speech." *Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1058
(N.D. Cal. 2007). Vimeo erroneously argues that Plaintiffs infringe on Vimeo's free
First Amendment free speech rights because they seek to force Vimeo to publish, host,
and stream videos containing ideological messages with which Vimeo disagrees. Yet
Vimeo has not identified a single specific message in Plaintiffs' videos with which it
disagrees. The Unruh Act does not require defendants to espouse or denounce any
particular viewpoint, but rather to refrain from discriminatory conduct.

In *Butler v. Adoption Media, LLC*, 486 F.Supp. 2d 1022, 1054 (N.D. Cal. 2007),
the plaintiffs alleged that an adoption website's refusal to offer same-sex domestic

partners their adoption-related services on the same terms and conditions offered married couples violated the Unruh Act. The defendant, like Vimeo, argued that "compelling them to post plaintiffs' profiles on their 'web publication' ParentProfiles.com" would interfere with their constitutional right to freedom of speech. *Id*. at 1058. The court found that the defendant's argument was without merit because the defendant was selling adoption-related services, rather than engaging in its own speech. *Id*.  The court explained the following:

> Plaintiffs are not seeking to place any restrictions on what defendants are permitted to say or to compel them to say anything. It is the discriminatory conduct that is at issue here -- defendants' refusal to do business with plaintiffs, based on their sexual orientation and/or marital status. The key component of defendants' business is the selling of adoption-related services to the public, and the fact that there may be some speech involved in that business does not entitle them to First Amendment protection.

*Id*. at 1059. Therefore, the defendant was subject to the Unruh Act and liable for their unlawful discrimination.

Here, Vimeo, like the adoption website in *Butler*, provides a forum for others to post their content. Vimeo is a passive business receptacle and paid conduit for content creators' individual expressions, the commentary of the public, and advertising.  In fact, this distinction is further supported by Vimeo's self-description in their "About" section on their website, which states that Vimeo was "created by a group of filmmakers who wanted an easy and beautiful way to share videos with their friends.  Word started to spread, and an insanely supportive community of creators began to blossom." (Vimeo.com/about.)  By its own admission, Vimeo does not seek to convey or otherwise express a message through the content hosted on its website by independent content creators.  The website exists to provide an avenue for content creator's ideas, rather than to speak itself. Plaintiffs are seeking to hold Vimeo liable for its conduct of discriminating against them based on sexual orientation and religion. Any speech or expression from Vimeo itself that is "incidentally affected by

OPPOSITION TO DEFENDANT'S MOTION TO

application of the Unruh Act is commercial speech at best, and note that commercial speech does not receive the same level of constitutional protection as other types of protected speech." *Butler*, 486 F.Supp at 1059.

Vimeo does not have a First Amendment right under the related cases, *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.* 547 U.S. 47 (2006) and *Pruneyard Shopping Center v. Robins*, 477 U.S. 74 (1980). In *Pruneyard Shopping Center v. Robins* the U.S. Supreme Court expressly considered and rejected Vimeo's claim that the First Amendment prevented a plaintiff from compelling a private California business to allow otherwise protected speech to occur on the owner's premises. *Id*. In that case, the owner of the shopping center challenged, under the First and Fifth Amendments, the California Supreme Court's ruling that members of the public had a free speech right on private property operated as a public forum. *Id*. In affirming the California Supreme Court's free speech ruling, the United States Supreme Court stated that the property owner's "First Amendment right not to be forced by the State to use his property as a forum for the speech of others," or to compel "recitation of a message containing an affirmation of belief," was unpersuasive because the property owners were not "being compelled to affirm their belief in any governmentally prescribed position or view, and they are free to publicly dissociate themselves from the views of the speakers." *Id*. at 88.

This case is no different. Vimeo operates it's website as a public forum for freedom of expression. Consequently, their discriminatory restriction and censorship of third party speech is subject to judicial scrutiny. Any corresponding speech rights that may arise from Vimeo's ownership of the property do not preclude the relief sought by Plaintiffs because competing speech rights of the property owner are vindicated through the owner's ability to disassociate itself from the speech, not through censorship of speech. That is particularly true in this case because Vimeo has the ability to expressly disassociate itself from Plaintiffs' speech.

In *Rumsfield*, the Court distinguished both *Tornillo* and *Hurley* because parades and newspapers are expressive, and the third party speech at issue interfered with the parade and newspaper's ability to express themselves.  *Rumsfeld,* 547 U.S. at 64.) Similar to *Rumsfeld*, providing a video hosting website for others to share their creations does not interfere with Vimeo's ability to communicate its own messages regarding its beliefs.  Moreover, in *Rumsfeld*, where the court held that the act of military recruiting did not suggest that the law schools agree with the speech of the recruiters, hosting a video does not suggest that Vimeo agrees with any of the speech of Plaintiffs.

Significantly, the Court in *Rumsfeld* noted, referencing both *Tornello* and *Hurley*, that "[t]he compelled-speech violation in each of our prior cases, however, resulted from the fact that the complaining speaker's own message was affected by the speech it was forced to accommodate."  *Id.* at 64.   The Court noted that the expressive nature of the parade in *Hurley* was essential to their holding, and that the compelled speech in *Tornillo* also involved the states interference with the speaker's right to express a desired message.  *Id.* The Court in *Rumsfeld* ultimately held that, unlike a parade and newspaper, a law school's act of accommodating a military recruiter's message did not affect the school's speech because the school was not engaging in speech by hosting an interview and recruiting reception.  *Id.*

Similar to *Rumsfeld*, the Supreme Court also rejected arguments under *Tornillo* in its holding in *Pruneyard Shopping Ctr. V. Robins,* 447 U.S. 74 (1980).  Vimeo's Motion correctly states that the Court in *Pruneyard* held that the pamphleteers were permitted in the common area of a large shopping mall because the mall was not being compelled to affirm a belief and could freely "dissociate themselves from the views of the speakers or handbillers." *Id.* at 88.  Vimeo attempts to sidestep this significant holding by asserting that Plaintiffs, rather than the Government, are forcing "Vimeo to carry, in perpetuity, a message on its property that it finds anathema."  (MTD at 8.) However, Vimeo, like the law school in *Rumsfeld*, is not engaging in speech by

OPPOSITION TO DEFENDANT'S MOTION TO

hosting thousands of videos for content creators worldwide.  Vimeo, at any point in time, can disavow any video on its platform, can create its own expression, and may even dissociate itself from messages it disagrees with.  Vimeo is free to issue press statements, fashion an avenue on its website establishing its beliefs, communicate its beliefs to anyone, or even host a video on its own website disavowing Plaintiffs' beliefs.

Vimeo seeks to avoid complying with state anti-discrimination laws by errantly expanding the applicability of cases involving newspaper publications to its video hosting website.  In *Miami Herald Pub. Co., Div of Knight Newspaper, Inc. v. Tornillo,* where a state sought to compel a newspaper to publish responses from political candidates, the Supreme Court held that the First Amendment precluded the state from enforcing its right of access law as government's regulation of the editorial process was inconsistent with the First Amendment.  (418 U.S. 241, 258 (1974).)  Notably, the court in *Tornillo* rationalized its holding by stating "[a] newspaper is more than a passive receptacle or conduit for news, comment, and advertising." (*Id.* at 258.)

In a related case, *Hurley v. Irish-American Gay*, the Supreme Court extended the holding of *Tornillo* to invalidate a Massachusetts law requiring parade organizers to include a group of individuals advocating a message that the organizers did not agree with or wish to convey.  (515 U.S. 557 (1995).)  Similar to *Tornillo*, the court focused on the speaker's autonomy to choose the content of its message, reasoning that the law violated a "fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message". (*Id.* at 573.)

The instant matter is distinguishable from *Tornillo* and *Hurley* as Vimeo is not a newspaper that exercises editorial discretion in interpreting and selecting facts for purposes of publication, nor is it a parade organizer.  It is intellectually dishonest to classify Vimeo as a newspaper when Vimeo, by its own description, seeks to act as a

1  receptacle for content creators to utilize in order to receive public commentary
2  regarding their creative expressions.

3        Accordingly, it may also be distinguished from *Hurley* as the court in *Hurley*
4  was focused on the parade organizers right to tailor their speech. *Id.* at 573-578. In
5  contrast, Vimeo is a website designed to host the speech and expression of other
6  people and to avail such expression to the public for purposes of commentary. In fact,
7  Vimeo charges a monthly fee to speakers who desire to use its service with a "Pro
8  Account." It does not exist for the purpose of expressing its own message. Thus,
9  contrary to Vimeo's assertions, *Tornillo*, *Hurley*, and related cases should not govern
10 this matter. *Tornillo* and the related cases govern matters where there is an exercise
11 of discretion relating to a particular entity's expression.

12       Accordingly, the governing law in this matter should be *Butler, Rumsfeld* and
13 *Pruneyard* rather than the *Tornillo* and *Hurley* because Vimeo is not engaged in an
14 active expression of its desired message when it provides a video hosting website for
15 content creators to share their creations with the public.

16 **V.**
17 **CONCLUSION**

18       Plaintiffs respectfully request that this Court deny Vimeo's Motion to Dismiss
19 in its entirety. Plaintiffs have sufficiently pled a cause of action under the Unruh Act
20 and the California Constitution. Neither the Communications Decency Act nor the
21 First Amendment excuses Vimeo's discriminatory conduct. Dismissal of this matter
22 would inhibit Plaintiffs' ability to vindicate and enforce their right to be free from
23 sexual orientation and religious discrimination.
24 ///
25 ///
26 ///
27 ///
28 ///

1    Plaintiffs' FAC sets forth serious, compelling allegations, and Plaintiffs'

2  should have a full and fair opportunity to engage in discovery and seek full relief

3  from the Court.  Should any additional allegations be required to cure any pleading

4  defects, Plaintiffs' should be granted leave to amend their FAC.

5

6  DATED:  November 1, 2019          TYLER & BURSCH, LLP

7

8                                    By: /s/ Nada N. Higuera
                                         _____
9                                        Nada N. Higuera, Esq.
                                         Attorney for James Domen and Church
10                                        United

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28