UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JAMES DOMEN, an individual, and
CHURCH UNITED, a California not-for-profit corporation,

    Plaintiffs,

  v.

VIMEO, INC., a Delaware corporation, and DOES 1-25,

    Defendants.

No. 19 Civ. 8418 (SDA)
ECF Case

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT VIMEO, INC.'s MOTION TO DISMISS**

Michael A. Cheah
General Counsel
VIMEO, INC.
555 West 18th Street
New York, New York 10011
(212) 314-7457
michael@vimeo.com

*Counsel for Vimeo, Inc.*

*Of counsel:*

Jean-Paul Jassy (*pro hac vice*)
Kevin Vick (*pro hac vice*)
Elizabeth Baldridge (*pro hac vice*)
JASSY VICK CAROLAN LLP
800 Wilshire Boulevard, Suite 800
Los Angeles, California 90017

November 15, 2019

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................1

I.      Plaintiffs' Claims Are Barred by the First Amendment .......................................................1

II.     Plaintiffs' Claims Are Barred by the Communications Decency Act .................................4

        A.     Vimeo Is Entitled to "Publisher" Immunity under Section 230(c)(1) .......................4

        B.     Vimeo Is Entitled to "Removal" Immunity under Section 230(c)(2) ........................8

III.    Plaintiffs Fail to Properly Plead Their Claims ....................................................................9

        A.     Plaintiffs' State-Law Discrimination Claims Should Be Dismissed .........................9

        B.     Plaintiffs' California Constitution Claim Fails for Lack of State Action ..................9

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*1256 Hertel Ave. Assocs., LLC v. Calloway*,
    761 F.3d 252 (2d Cir. 2014) ................................................................................................10

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ............................................................................................6, 7

*Butler v. Adoption Media, LLC*,
    486 F. Supp. 2d 1022 (N.D. Cal. 2007) ..................................................................................3

*City of Los Angeles v. Preferred Comm'ns, Inc.*,
    476 U.S. 488 (1986) ................................................................................................................2

*Davison v. Randall*,
    912 F.3d 666 (4th Cir. 2019) ..................................................................................................2

*Doe No. 1 v. Backpage.com*,
    817 F.3d 12 (1st Cir. 2016) ....................................................................................................5

*e-Ventures Worldwide, LLC v. Google, Inc.*,
    No. 2:14-cv-646, 2017 WL 2210029 (M.D. Fla. Feb. 8, 2017) ..........................................4, 5

*Ebeid v. Facebook, Inc.*,
    No. 18-CV-07030-PJH, 2019 WL 2059662 (N.D. Cal. May 9, 2019) .....................5, 7, 8, 9

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
    938 F.3d 1026 (9th Cir. 2019) ................................................................................................8

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ................................................................................................7

*Force v. Facebook*,
    934 F.3d 53 (2d Cir. 2019) .....................................................................................................5

*HiQ Labs Inc. v. LinkedIn Corp.*,
    273 F. Supp. 3d 1099 (N.D. Cal. 2017) ..................................................................................9

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
    515 U.S. 557 (1995) .............................................................................................................2, 4

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ..............................................................................................5

*Lamie v. United States Trustee*,
    540 U.S. 526 (2004) ................................................................................................................7

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*,
    138 S. Ct. 1719 (2018) ............................................................................................................4

*Miami Herald Pub. Co. v. Tornillo*,
    418 U.S. 241 (1974) ................................................................................................................2

*People v. Engram*,
    240 P.3d 237 (Cal. 2014) ..................................................................................................10

*Pruneyard Shopping Center v. Robins*,
    447 U.S. 74 (1980) ................................................................................................... 3, 4, 10

*Robins v. Pruneyard Shopping Center*,
    592 P.2d 341 (Cal. 1979) ....................................................................................................9

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ......................................................................................................... 3, 4

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
    697 F. App'x 526 (9th Cir. 2017) .......................................................................................8

*Telescope Media Grp. v. Lucero*,
    936 F.3d 740 (8th Cir. 2019) ..............................................................................................4

*In re Walter Energy, Inc.*,
    911 F.3d 1121 (11th Cir. 2018) ..........................................................................................6

*Zeran v. America Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ..............................................................................................7

*Zhang v. Baidu.com*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014) ..................................................................................4

**UNITED STATES CONSTITUTION**

U.S. Const., amend. I .........................................................................................1, 2, 3, 4, 10

**STATUTES**

47 U.S.C. § 230 ..................................................................................................... 1, 4, 7, 8

47 U.S.C. § 230(c)(1) ............................................................................................ 4, 5, 6, 7

47 U.S.C. § 230(c)(2) ................................................................................................. 6, 8, 9

47 U.S.C. §§ 230(c)(2)(A), (B) ...............................................................................................6

47 U.S.C. § 230(e) ..................................................................................................................8

Cal. Civ. Code § 51 (Unruh Act) ....................................................................................... 3, 7

**OTHER AUTHORITIES**

Kavanaugh, Brett, *The Courts and the Administrative State*, 64 CASE WES. L. REV. 711 (2014) ..7

Klonick, Kate, *The New Governors: The People, Rules and Processes Governing Online
    Speech*, 131 HARV. L. REV. 1598 (2018) ...........................................................................2

Samples, John, "Why the Government Should Not Regulate Content Moderation of Social
    Media," *Policy Analysis* No. 865, at pp. 1-2 (Cato Inst. Apr. 9, 2019)
    https://www.cato.org/sites/cato.org/files/pubs/pdf/pa_865.pdf ..........................................2

# INTRODUCTION

Online platform operators like Vimeo speak through the content restrictions they publish and the content moderation decisions they make. These editorial decisions convey important messages to their users and the public about their values and the content they find acceptable. Plaintiffs' opposition brief gives short shrift to Vimeo's autonomy as a speaker, relegating Vimeo to a "passive . . . conduit" (Opp. 4) for others to speak as they see fit. But this case shows that Vimeo is anything but. In removing Plaintiffs' videos, Vimeo exercised its constitutionally-protected editorial judgment in deciding what content to host.

Vimeo's decision cannot be assailed for Plaintiffs themselves admit that the videos concern their efforts to forestall further regulation of sexual orientation change efforts (SOCE) (FAC ¶ 41) in contravention of Vimeo's restriction on content espousing SOCE. Plaintiffs' videos show that pro-SOCE content invariably demeans LGBTQ individuals as it is premised upon the notion that being LGBTQ is an unnatural and harmful choice. In one video, Plaintiff James Domen describes the "homosexual lifestyle" in grim terms: "It'll ruin your life. It's devastating. It'll destroy your life." *See infra* at p. 9. This is exactly the sort of message that Vimeo should not be required to carry.

Vimeo's editorial decisions are protected by both the First Amendment and Section 230 of the Communications Decency Act. The Court should dismiss the FAC with prejudice.

# ARGUMENT

**I.      Plaintiffs' Claims Are Barred by the First Amendment.**

Plaintiffs are wrong in insisting that Vimeo is merely a "passive . . . conduit" (Opp. 4) for speech and not a speaker itself with an identifiable message. We would not be here if that were true. Instead, as Vimeo's actions demonstrate, and Plaintiffs' allegations reinforce, Vimeo is far from passive; it is an active publisher, and its decisions about what content to allow or disallow,

through its Terms of Service and moderation decisions, "constitute the exercise of editorial control and judgment." *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (First Amendment precludes interference with newspaper's editorial judgment). A lawsuit seeking to overrule this judgment necessarily limits Vimeo's "autonomy to choose the content of [its] own message." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573 (1995) (applying *Tornillo* beyond newspaper context).

The policy choices that Vimeo and other platform operators make—including how to define "hateful and discriminatory speech"[1]—implicate matters of public concern and often draw spirited public debate about the role online platforms should play in policing user speech.[2] These policy judgments, whether fair or unfair, communicate Vimeo's values to its users and the world at large.[3] If users disagree with—or do not abide by—Vimeo's policies, they can find another platform. And that is precisely what Plaintiffs did here. *See* Plaintiffs' Request for Judicial Notice (Dkt. No. 46), ¶¶ A-E (videos hosted on Wistia.com).

The fact that Vimeo publishes the speech of others does not make it any less deserving of First Amendment protection. By inviting content on many topics subject to its Terms of Service, Vimeo is exercising free speech rights. *See City of Los Angeles v. Preferred Comm'ns, Inc.*, 476 U.S. 488, 494 (1986) ("through original programming or by exercising editorial discretion over which stations or programs to include in its repertoire, respondent [a cable operator] seeks to

---

[1] Though protected by the First Amendment, social media platforms generally "have policies forbidding hate speech[.]" *Davison v. Randall*, 912 F.3d 666, 693 (4th Cir. 2019) (concurring opinion).

[2] *See* Samples, John, "Why the Government Should Not Regulate Content Moderation of Social Media," *Policy Analysis* No. 865, at pp. 1-2 (Cato Inst. Apr. 9, 2019) (describing criticism of platforms' moderation decisions), available at https://www.cato.org/sites/cato.org/files/pubs/pdf/pa_865.pdf.

[3] *See* Klonick, Kate, *The New Governors: The People, Rules, and Processes Governing Online Speech*, 131 HARV. L. REV. 1598, 1625 (2018) ("Platforms create rules and systems to curate speech out of a sense of corporate social responsibility, but also, more importantly, because their economic viability depends on meeting users' speech and community norms.").

communicate messages on a wide variety of topics and in a wide variety of formats"). And when it makes decisions about what content it does *not* wish to carry, it is exercising its free speech right to remain silent. *See* Mot. at 13-14 (citing cases).

The cases cited by Plaintiffs do not disturb these principles for they deal with non-expressive conduct, not speech. In *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 55 (2006) (cited at Opp. 17), a group of private law schools challenged the Solomon Amendment, a federal law requiring colleges receiving federal funding to allow military recruiters access to on-campus recruiting fairs. The Court dismissed the challenge because "[t]he Solomon Amendment *neither limits what law schools may say nor requires them to say anything*." *Id*. at 60 (emphasis added). Because a law school's decision to allow a particular employer on campus "is not inherently expressive," *id*. at 64, such a decision is not akin to publishing a "newsletter" or an "editorial page of a newspaper," *id*.[4]

Plaintiffs make the same category error when citing *Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1058 (N.D. Cal. 2007) (Opp. 15), where the court concluded that a for-profit online adoption business violated the Unruh Act by refusing to allow same-sex couples to post a profile seeking an adoption. The court found that the First Amendment did not apply because (1) the business's website was transactional in nature and, therefore, not inherently expressive; and (2) the relevant regulation, as applied, governed *conduct*, not speech. *See id*.

In contrast, the instant case concerns pure speech, not mere conduct. Vimeo is a publisher of speech and Plaintiffs' videos constitute speech. What is more, Vimeo has decided not to host Plaintiffs' speech because of the messages they convey—a fact that Plaintiffs

---

[4] And as discussed previously, *Pruneyard Shopping Center v. Robins*, 447 U.S. 74 (1980), is inapposite because no messages were placed on any mall property and the mall owner took no position regarding the actual message of the students. *See* Mot. at 8.

3

themselves admit (Opp. 5; FAC, ¶¶ 41, 47).  Requiring Vimeo to publish Plaintiffs' videos against its wishes strikes at the heart of Vimeo's exercise of editorial judgment and negates Vimeo's attempt to express a message on what content it finds unacceptable.  *See Telescope Media Grp. v. Lucero*, 936 F.3d 740, 757-58 (8th Cir. 2019) (when speaker autonomy is threatened, *Hurley* applies, and cases like *Rumsfeld* and *Pruneyard* do not).

The proper way to analyze an online platform's First Amendment rights is outlined in *Zhang v. Baidu.com*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014), where Judge Furman reviewed the relevant Supreme Court case law and concluded that a search engine exercises protected free speech when it decides what websites to exclude from indexing.  Tellingly, Plaintiffs provide no response to that decision whatsoever, nor do they mention that *e-Ventures Worldwide*, *LLC v. Google, Inc.*, No. 2:14-cv-646, 2017 WL 2210029, at *4 (M.D. Fla. Feb. 8, 2017), a case they rely on heavily elsewhere, adopted Judge Furman's conclusion that search engines' "judgments about what to publish and what not to publish are absolutely protected by the First Amendment."

Finally, the Court should reject Plaintiffs' suggestion that Vimeo can dissociate itself from Plaintiffs' content (Opp. 17, 19) through its own messaging.  The Supreme Court has time and again rejected this argument as it "would justify any law compelling speech." *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1745 (2018) (Kagan, J. concurring) (citing cases).  Moreover, publishing some anodyne disclaimer about user content not reflecting Vimeo's views does not carry the same weight as removing that content outright.

The Court should dismiss Plaintiffs' claims as abridging Vimeo's free speech rights.

**II.     Plaintiffs' Claims Are Barred by the Communications Decency Act.**

    **A.     Vimeo Is Entitled to "Publisher" Immunity under Section 230(c)(1).**

Plaintiffs do not dispute that Vimeo qualifies as an "information content service" or that Vimeo did not develop the content at issue (Plaintiffs' videos), *see* Opp. 10-12, thereby

conceding the first two elements of Section 230(c)(1). We focus, then, on Plaintiffs' arguments regarding the third element of which the Second Circuit recently observed: "The courts' generally broad construction of Section 230(c)(1) in favor of immunity 'has resulted in a capacious conception of what it means to treat a website operator as the publisher . . . of information provided by a third party.'" *Force v. Facebook*, 934 F.3d 53, 65 (2d Cir. 2019) (quoting *Doe No. 1 v. Backpage.com*, 817 F.3d 12, 19 (1st Cir. 2016)). Plaintiffs ignore this directive and advance cramped and untenable readings of the statute:

1. Plaintiffs assert, without any elaboration, that Section 230(c)(1) ought not to apply because Vimeo is "not a publisher" akin to Facebook or Google. Opp. 12-13. This is absurd. Plaintiffs elsewhere state that Vimeo "provides a forum for others to post their content." *Id*. 16. That formulation describes a publisher to a tee since the ordinary meaning of publisher is "'one that makes public.'" *Force*, 934 F.3d at 65 (quoting *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014)). Publishing also embraces Vimeo's removal of Plaintiffs' videos since "the very essence of publishing is making the decision whether to print or retract a given piece of content[.]" *Klayman*, 753 F.3d at 1359; *see also Force*, 934 F.3d at 65 (publishing covers "decision to host third-party content in the first place").

Because the crux of Plaintiffs' lawsuit is that Vimeo unlawfully removed their videos, their claims irreducibly treat Vimeo as the publisher of their videos. *See Ebeid v. Facebook, Inc.*, No. 18-CV-07030-PJH, 2019 WL 2059662, at *5 (N.D. Cal. May 9, 2019) ("[Facebook's] decision to remove plaintiff's posts undoubtedly falls under 'publisher' conduct"). This Court should follow the many cases applying Section 230(c)(1) to similar claims involving content deletion. *See* Mot. at 13-14.

2.      Swimming against this jurisprudential tide, Plaintiffs cite the lone decision, *e-Ventures Worldwide*, for the proposition that Section 230(c)(1) cannot cover the removal of content for "anticompetitive reasons" because this would (supposedly) render surplus the more specific immunity in Section 230(c)(2). *See* Opp. 11. This decision relies upon the canon counseling against surplusage interpretations, which "does not apply when a statutory provision would remain operative under the interpretation in question in *at least some situations*." *In re Walter Energy, Inc.*, 911 F.3d 1121, 1146 (11th Cir. 2018) (emphasis added). In fact, Section 230(c)(2) applies to numerous cases in which Section 230(c)(1) is partly or wholly unavailable:

- Because Section 230(c)(1) requires that the defendant be treated as the "publisher," it may not apply where the service provider has made a specific promise to keep up the materials at issue, but later changed its mind. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). Section 230(c)(2) would, however, preempt any such claims.

- Section 230(c)(2) allows service providers and users to block or restrict access to third-party content that they themselves may view. Because such an action limits only what a particular user may view, and does not affect the dissemination of the targeted content more broadly, it does not necessarily implicate publisher duties.

- Section 230(c)(1) applies only to publishing decisions made regarding "information content provided by another"—in other words, third-party content. In contrast, Section 230(c)(2) applies to any "materials," regardless of author. Thus, Section 230(c)(2) extends to actions relating to the service provider's own content.

- Section 230(c)(2)(B) provides a distinct immunity to persons who create and distribute tools that allow users and service providers to restrict access to content. The right in Section 230(c)(2)(B) incorporates by reference the right in Section 230(c)(2)(A) and has no parallel in Section 230(c)(1).

Consequently, it cannot be said that applying Section 230(c)(1) to content deletion actions swallows Section 230(c)(2) whole.

Moreover, reading Section 230(c)(1) to *not* cover acts of deletion would (1) do violence to the ordinary meaning of "publishing," which must include the ability to reject content (*see supra* at 5); (2) ignore Congress' intent to overrule a judicial decision finding publisher liability

6

based upon acts of selective deletion (*see* Mot. at 18); and (3) upend more than two decades' worth of decisions holding that Section 230(c)(1) covers "deci[sions] whether to publish, *withdraw*, postpone or alter content." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (emphasis added).[5]

      3.     Nor does *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) (en banc) (*see* Opp. 11-12), assist Plaintiffs. This decision involved the *second* Section 230(c)(1) element, *viz.*, whether the user content at issue was developed "by another." 47 U.S.C. § 230(c)(1). The Ninth Circuit held that to the extent a roommate-finding website *required* users to created profiles that would be used to discriminate (*e.g.*, race, gender, etc.), it "materially contribut[ed]," 521 F.3d at 1168, to the development of discriminatory profile information and therefore became a "co-developer" of that content. *Id.* at 1165-68.

This issue is entirely irrelevant here because Plaintiffs make no allegation that Vimeo developed, in whole or in part, the "information content" at issue (Plaintiffs' videos). Instead, Plaintiffs seek to impose liability based solely on Vimeo's decision to remove that content. But "removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher[.]" *Barnes*, 570 F.3d at 1103. Consequently, the Court should reject any argument that "[Plaintiffs'] content-based-restriction claims allege discrimination and, therefore, do not seek to hold defendant liable as the publisher or speaker of the information at issue." *Ebeid*, 2019 WL 2059662 at *4 (rejecting quoted argument).

---

[5]     The judicial preference "for avoiding surplusage constructions is not absolute", *Lamie v. United States Trustee*, 540 U.S. 526, 536 (2004), and must yield to plain meaning, *id*. at 536. This makes sense because "members of Congress often want to be redundant" to be "doubly sure about things." Kavanaugh, Brett, *The Courts and the Administrative State*, 64 CASE W. RES. L. REV. 711, 718 (2014).

7

4.      Finally, Plaintiffs' statement that Vimeo "fails to cite any authority" applying Section 230 to claims asserting anti-discrimination laws like the Unruh Act (Opp. 10) is flat-out wrong. In both *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 697 F. App'x 526, 526 (9th Cir. 2017), and *Ebeid*, 2019 WL 2059662, at *4-5, the courts dismissed the plaintiffs' claims that Facebook violated the Unruh Act by removing their content.[6]

**B.      Vimeo Is Entitled to "Removal" Immunity under Section 230(c)(2).**

Plaintiffs seek to rewrite Section 230(c)(2)'s catch-all ("otherwise objectionable"), asserting that Vimeo must either show that Plaintiffs' videos fall into one of the enumerated categories or "expose viewers to objectively verifiable harm." Opp. 14; *see also* Opp. 11. But the statute cannot be so cabined. Given that the specifically enumerated categories "vary greatly," "the catchall was more likely intended to encapsulate forms of unwanted online content that Congress could not identify in the 1990s." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 938 F.3d 1026, 1037 (9th Cir. 2019) (expressing doubt about use of *esjudem generis* to limit the catch-all). And if content like "spam, malware and adware," *id.*, can be blocked under the catch-all as analogous to "harassing," then so can content that conveys discriminatory messages about groups of people based upon sexual orientation.

On that front, Plaintiffs now proclaim that they "are not promoters of conversion therapy," Opp. 14, which they try to define as limited to treatments seen in *One Flew Over the Cuckoo's Nest*, *id.*, 14-15. Yet, Vimeo's Guidelines cover content that "espouses" SOCE, without regard to any specific treatment.[7] By their own admission, Plaintiffs' "five (5) videos

---

[6]      There is no logical reason why Section 230 would exclude anti-discrimination statutes (Opp. at 10). The statute enumerates the state and federal laws that are exempt from the immunities. *See* 47 U.S.C. § 230(e). Anti-discrimination laws are not among them. Thus, by negative implication, such laws are covered.

[7]      As explained previously (Mot.at 14-15), the ban on SOCE content is a specific application of the general ban on "hateful *and discriminatory*" content found in the Terms of Service (Cheah Decl. Ex. A)—not an alternative to the latter ground (*see* Opp. 3).

8

involved an effort by Church United to challenge California Assembly Bill 2943 (AB 2943) which aimed to expand California's existing prohibition on SOCE to apply to talk therapy and pastoral counseling." FAC ¶ 41. To say that this content does not "espouse SOCE" is to split hairs. Moreover, the videos show that the underlying message of SOCE is that being LGBTQ is an unnatural and harmful choice. For example, Mr. Domen explains, when discussing the "homosexual lifestyle": "It'll ruin your life. It's devastating. It'll destroy your life."[8] Given this and the great deference afforded to service providers in removing content, there can be little doubt that Vimeo in good faith considered Plaintiffs' content to be "otherwise objectionable" within the meaning of Section 230(c)(2).

**III.     Plaintiffs Fail to Properly Plead Their Claims.**

    **A.     Plaintiffs' State-Law Discrimination Claims Should Be Dismissed.**

Plaintiffs have not provided even "minimal support" for a claim of intentional discrimination based upon any protected status. *See* Mot. at 16-17. That Vimeo has not removed unidentified videos expressing myriad viewpoints relating to sexuality (though none relating to SOCE) says nothing about the reason why Vimeo removed Plaintiffs' videos. On the contrary, Plaintiffs' opposition suggests an alternative reason: "Vimeo disagrees with [their] religiously-based *viewpoint*." Opp. at 5; *see also* FAC ¶¶ 41, 47. Consequently, "the complaint's allegations suggest that, if anything, [Vimeo] denied plaintiff[s] access to its services based on plaintiff[s'] views," *Ebeid*, 2019 WL 2059662 at *5, instead of their identities.

    **B.     Plaintiffs' California Constitution Claim Fails for Lack of State Action.**

Plaintiffs cite no authority showing that California courts are likely to extend *Robins v. Pruneyard Shopping Center*, 592 P.2d 341 (Cal. 1979), to the Internet, and fail to distinguish *hiQ*

---

[8]     *See* Reply Declaration of John Fogleman ¶ 3. In addition, review of the videos shows other grounds for termination. *See id.* at ¶¶ 3-7.

*Labs Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1115-17 (N.D. Cal. 2017), which declined to do so.  Instead, they merely rehash case law concerning the right to distribute pamphlets at shopping mall common areas.  Opp. 8-9.  But a website is not analogous to a physical space that has become a substitute for a traditional town square.  Among other things: (1) Vimeo's content rules demonstrate that its service is the opposite of "unrestricted," Opp. 9; (2) Plaintiffs would have Vimeo permanently carry their content on its property; and (3) Plaintiffs have alternative means to distribute their videos.

For all of these reasons, Plaintiffs' attempt to expand the limited right established in *Pruneyard* charts the California Constitution on a collision course with the First Amendment.  Such an avoidable clash is disfavored by California law, where "a statute must be construed, if reasonably possible, in a manner that avoids a serious constitutional question." *People v. Engram*, 240 P.3d 237, 257 (2010).[9]  The Court should therefore dismiss this claim.

## CONCLUSION

For the reasons set forth above, Vimeo respectfully requests that the Court grant its motion and dismiss the First Amended Complaint in its entirety and with prejudice.

Dated: New York, New York  
      November 15, 2019

Respectfully submitted,

/s/ *Michael A. Cheah*  
Michael A. Cheah  
General Counsel  
VIMEO, INC.  
555 West 18th Street  
New York, New York 10011  
(212) 314-7457  
michael@vimeo.com

*Counsel for Vimeo, Inc.*

---

[9] The Second Circuit has suggested that a federal court look to state-law when deciding whether to apply this canon.  *See 1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 260 n.5 (2d Cir. 2014).

*Of counsel:*

Jean-Paul Jassy (*pro hac vice*)
Kevin Vick (*pro hac vice*)
Elizabeth Baldridge (*pro hac vice*)
JASSY VICK CAROLAN LLP
800 Wilshire Boulevard, Suite 800
Los Angeles, California 90017

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court via ECF, which will send notification of such filing to all registered participants, including counsel of record for Plaintiffs:

Nada N. Higuera, Esq.
TYLER & BURSCH, LLP
25026 Las Brisas Road
Murrieta, California 92562
nhiguera@tylerbursch.com

*Attorneys for Plaintiffs*

                                              /s/ *Michael A. Cheah*
                                                  MICHAEL A. CHEAH