USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___1/15/2020___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

James Domen et al.,

                    **Plaintiffs,**

          -against-

Vimeo, Inc. et al.,

                  **Defendants.**

1:19-cv-08418 (SDA)

<u>**OPINION AND ORDER**</u>

**STEWART D. AARON, United States Magistrate Judge:**

Pending before the Court is a motion by Defendant Vimeo, Inc. ("Defendant" or "Vimeo"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the First Amended Complaint filed by Plaintiffs James Domen ("Domen") and Church United (collectively, the "Plaintiffs"). (10/11/19 Not. of Mot., ECF No. 42.)[1] For the following reasons, Defendant's motion is GRANTED.

## PROCEDURAL HISTORY

This case was commenced by the filing of a Complaint on June 25, 2019 in the U.S. District Court for the Central District of California. (Compl., ECF No. 1.) The case arose out of the termination of Church United's account on Vimeo's video-sharing website, which account displayed (among others) videos of Domen, a "former homosexual" who now "identif[ies] as heterosexual." (*See* Compl. ¶¶ 16, 18, 25, 38.) The account was terminated because certain

---

[1] In deciding this motion, the Court has considered Defendant's Memorandum of Law (Def. Mem., ECF No. 43), the Declaration of Michael A. Cheah, together with its exhibits (Cheah Decl., ECF No. 44), Plaintiffs' Opposition (Pl. Opp., ECF No. 45), the videos hyperlinked to Plaintiffs' Request for Judicial Notice (Jud. Not. Req., ECF No. 46), Defendant's Reply Memorandum (Reply, ECF No. 47) and the Reply Declaration of John Fogleman. (Fogleman Decl., ECF No. 48.)

videos "allegedly violated the following Vimeo guideline: 'Vimeo does not allow videos that harass, incite hatred, or include discriminatory or defamatory speech.'" (*Id*. ¶ 38.) In their Complaint, Plaintiffs asserted "that Defendant violated California law by restraining Plaintiffs' speech and expression in violation of Article One, Section 2 of the California Constitution . . . and by discriminating against Plaintiffs based on religious, sexual orientation, or other discriminatory animus in violation of the *Unruh Civil Rights Act*, section 51, et seq. of the *California Civil Code* (the 'Unruh Act')." (*Id*. at pp. 1-2 (italics in original).) Plaintiffs also asserted a "Free Speech Claim" under the First Amendment to the U.S. Constitution. (*See id*., Second Cause of Action.)

Defendant moved to dismiss this case for improper venue under Fed. R. Civ. P. 12(b)(3) or 28 U.S.C. § 1406(a), or in the alternative to transfer to this Court, pursuant to 28 U.S.C. § 1404(a). (7/19/19 Motion, ECF No. 12.) Defendant argued that Plaintiffs were bound by the forum-selection clause in the Vimeo Terms of Service to which they assented upon creation of their video-sharing account and again upon upgrading their subscription, which called for any action arising out of or relating to "use of the Vimeo Service" to "be commenced in the state or federal courts located in New York County, New York." (*Id*. at 4-13; Terms of Service, ECF No. 12-1, at 30.)

District Judge Wilson granted Defendant's motion to transfer to this Court, and denied the motion to dismiss for improper venue. *Domen v. Vimeo, Inc*., No. 19-CV-01278 (SVW) (AFM), 2019 WL 4998782, at *3 (C.D. Cal. Sept. 4, 2019). Judge Wilson added the following in a footnote to his Order: "Because this Court determined that venue transfer is appropriate under 1404(a), it notes but refrains from analyzing the substantive problems Plaintiffs may encounter in arguing that private actors ought to be liable for First Amendment violations." *Id*. at *1.

Upon transfer to this Court, this case was assigned to District Judge Torres. On October 1, 2019, the parties consented to conducting all proceedings in this case before me. (Consent, ECF No. 31.) On October 4, 2019, Plaintiffs filed a First Amended Complaint ("FAC"). (FAC, ECF No. 35.) Plaintiffs did not assert a First Amendment claim in the FAC, but added a "Sexual Orientation Non-Discrimination Act" claim under New York Executive Law § 296. (FAC, Second Cause of Action.)

On October 11, 2019, Defendant filed the instant motion to dismiss. (10/11/19 Not. of Mot.) Plaintiffs filed their opposition on November 1, 2019 (Pl. Opp.) and Defendant filed its reply on November 15, 2019. (Reply.) Oral argument was held on January 13, 2020.

## RELEVANT FACTS[2]

### I. Parties

Church United, which was founded in 1994, is a "California non-profit Religious Corporation." (FAC ¶¶ 6-7.) "Church United aids pastors in advocating for public policy based on a biblical worldview." (*Id.* ¶ 11.) "Church United and its affiliated pastors desire to positively impact the State of California and the nation with hope and to preserve their individual rights as pastors to exercise their faith without unlawful infringement." (*Id.* ¶ 12.)

Domen, a California resident who is a pastor and has a "masters of divinity degree," is the President and Founder of Church United. (FAC ¶¶ 2, 13.) "For three years, James Domen was a homosexual[; h]owever, because of his desire to pursue his faith in Christianity, he began to

---

[2] For purposes of this motion to dismiss, the Court assumes that the well-pleaded allegations of the FAC are true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (when "well-pleaded factual allegations" are present, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

identify as a former homosexual." (*Id*. ¶ 15.) Domen "is like many others in California who were formerly homosexual but now identify as heterosexual." (*Id*. ¶ 17.)

Vimeo is a Delaware corporation with a principal place of business in New York. (FAC ¶ 21-22.) Vimeo is an online forum that "allows users to upload, view, share, and comment on videos." (*Id*. ¶ 24.)

The FAC also names as Defendants "Does 1 through 25" (FAC ¶ 28), but contains no substantive allegations against them. During oral argument, Plaintiffs explained that Does 1 through 25 were named as place-holders for potential, yet unknown, parties, in accordance with counsel's normal practice in California courts. (1/13/2020 Tr., ECF No. 54, at 23.) Plaintiffs also acknowledged that no additional parties had been identified. (1/13/2020 Tr. 23-24.)

## II.    Plaintiffs' Vimeo Account And Videos

In or about October 2016, Plaintiffs created a Vimeo account "for the purpose of hosting various videos, including videos addressing sexual orientation as it relates to religion." (FAC ¶ 29.) Plaintiffs initially had created their account with a free basic membership, but later "upgraded to a Pro Account." (*Id*. ¶ 31.) Plaintiffs used Vimeo's video hosting service to publish about 89 videos. (*Id*. ¶ 30.)

On November 23, 2018, Vimeo sent an email to Church United (addressed to jim@churchunited.com) stating:

Hello Church United,

A Vimeo moderator marked your account for review for the following reason:

Vimeo does not allow videos that promote Sexual Orientation Change Efforts (SOCE)

You need to take the following action as soon as possible:

4

Please download your videos within the next 24 hours, as this will assure that you will be able to keep them upon closure of your account.

After 24 hours, we will review your account again to make sure this action has been taken. If not, your videos and/or your account may be removed by a Vimeo moderator.

For more information on our content and community policies, please visit https://vimeo.com/help/guidelines

If you have questions or believe you received this warning in error, please respond to this message and a Vimeo Community Manager will get back to you.

(FAC, Ex. A, ECF No. 35-1.)

Plaintiffs allege that the foregoing email "cited five (5) videos 'that espouse this theory,'" presumably referring to SOCE, and that these five videos were "flagged for review." (*See* FAC ¶¶ 33-38.)[3] The five videos, which Plaintiffs allege "involved an effort by Church United to challenge California Assembly Bill 2943 . . ., which aimed to expand California's existing prohibition on SOCE to apply to talk therapy and pastoral counseling" (*id*. ¶ 41), are as follows:

1) Video "wherein [Domen] briefly explained his life story, his preferred sexual orientation, the discrimination he faced, and his religion." (FAC ¶ 34; *see also* Jud. Not. Req. at 2 (containing embedded link to video).)

2) A "promotional video for Freedom March Los Angeles. Freedom March is a nationwide event where individuals like [Domen], who identify as former homosexuals, former lesbians, former transgenders, and former bisexuals, assemble with other likeminded individuals." (FAC ¶ 35 *see also* Jud. Not. Req. at 2 (containing embedded link to video).)

---

[3] The Court notes that the email attached as Exhibit A to the FAC does not reference any particular videos. However, Defendant does not challenge that the five referenced videos were among those at issue. (*See* Def. Mem. at 4.)

3) An "NBC produced documentary segment titled, Left Field, which documented and addressed SOCE." (FAC ¶ 36; *see also* Jud. Not. Req. at 2 (containing embedded link to video entitled, "One Man[']s quest to Ban Conversion Therapy NBC Left Field").)

4) A "press conference with Andrew Comiskey, the founder of Desert Stream, relating to his religion and sexual orientation." (FAC ¶ 37; *see also* Jud. Not. Req. at 2 (containing embedded link to video in which Comiskey "ask[s] that [California Assembly Bill 2943] would be struck down before it comes into law" (6:29-6:33)).)

5) An "interview with Luis Ruiz, a survivor of the horrific attack at the Pulse Nightclub in Florida in March 2018. In the video, Luis Ruiz shares his background as a former homosexual and his experience as a survivor of the attack." (FAC ¶ 38; *see also* Jud. Not. Req. at 2 (containing embedded link to video).)

On December 6, 2018, Vimeo sent an email to Church United advising that Plaintiffs' account had been removed by the Vimeo staff for violating Vimeo's "Guidelines." (FAC, Ex. B, ECF No. 35-2.)[4] The email states as the reason for removal: "Dear Church United, . . . Vimeo does not allow videos that harass, incite hatred, or include discriminatory or defamatory speech." (*Id*.) Although the email does not refer to the five videos above, the FAC alleges that Vimeo found that these videos violated the foregoing "Vimeo guideline." (FAC ¶ 39.) Plaintiffs challenge the decision by Vimeo to remove their account, alleging that "Vimeo restricted and censored Plaintiffs' videos because those videos were based on a viewpoint regarding sexual orientation and religion with which Vimeo disagrees." (FAC ¶ 47.)

---

[4] Paragraph 39 of the FAC alleges that the "Vimeo guideline" is attached to the FAC as Exhibit B. However, Exhibit B is a copy of the December 6, 2018 email referenced above.

## III.    Vimeo's Terms of Service And Guidelines

Vimeo's Terms of Service, which are referenced in the FAC (FAC ¶ 3), prohibit, among other things, content that "[c]ontains hateful, defamatory, or discriminatory content or incites hatred against any individual or group." (Cheah Decl., Ex. A, ECF No. 44-1, ¶ 7.) The terms of service incorporate by reference Vimeo's Guidelines. (*Id*. ("All videos you submit must also comply with the Vimeo Guidelines, which are incorporated into this Agreement.").)

In a section of the Guidelines entitled, "How does Vimeo define hateful, harassing, defamatory, and discriminatory content?," the Guidelines state that Vimeo moderators will "generally remove" videos that:

• Make derogatory or inflammatory statements about individuals or groups of people

• Are intended to harm someone's reputation

• Are malicious

• Include someone's image or voice without their consent (Exception! Public figures and/or political officials are generally fair game.)

We also forbid content that displays a demeaning attitude toward specific groups, including:

• Videos that offer seduction training or teach Pickup Artist (PUA) techniques

• Videos that promote Sexual Orientation Change Efforts (SOCE)

• Videos that use coded or veiled language to attack a particular group like an ethnic or religious minority

(Cheah Decl., Ex. B, ECF No. 44-2, at 5-6.)

<u>**DISCUSSION**</u>

As explained below, the Court finds that Plaintiffs' claims are preempted by Section 230 of the Communications Decency Act ("CDA"). Thus, the Court grants Vimeo's motion to dismiss in its entirety.

## I.      <u>Rule 12(b)(6) Legal Standards</u>

When ruling on a motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in plaintiff's favor. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. If the plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *In re Express Scripts Holding Co. Secs. Litig*., No. 16-CV-03338 (ER), 2018 WL 2324065, *6 (S.D.N.Y. May 22, 2018) (quoting *Twombly*, 550 U.S. at 570).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies

heavily upon its terms and effect,' which renders the document 'integral' to the complaint."

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted).

## II. Preemption Of Plaintiffs' Claims Under Federal Communications Decency Act of 1996

Vimeo argues that Plaintiffs' claims are preempted by Section 230 of the CDA. (Def. Mem. at 10-18; Reply at 4-9.) As discussed below, the Court agrees.

### A. Legal Standards

There are two types of immunity provided under Section 230 of the CDA—*i.e.*, "publisher" immunity under Section 230(c)(1)[5] and immunity to "police content" under Section 230(c)(2).[6] The Court finds that Plaintiffs' claims are preempted under both (c)(1) and (c)(2). The Second Circuit[7] recently described the purpose behind Section 230 of the CDA, as follows:

> The primary purpose of the proposed legislation that ultimately resulted in the [CDA] "was to protect children from sexually explicit internet content." *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (citing 141 Cong. Rec. S1953 (daily ed. Feb. 1, 1995) (statement of Sen. Exon)). Section 230, though—added as an amendment to the CDA bill, *id.*—was enacted "to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum," *Ricci* [*v. Teamsters Union Local 456*], 781 F.3d [25,] 28 [(2d Cir. 2015)] (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). Indeed, Congress stated in Section 230 that "[i]t is the policy of the United

---

[5] Section 230(c)(1) "provides immunity to [a defendant] as a publisher or speaker of information originating from another information content provider." *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003).

[6] Section 230(c)(2) "expressly provides [interactive computer services] with immunity" to "police content." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014).

[7] Since the CDA is a federal statute, "the decisions of the Second Circuit are controlling." *Cohen v. KIND L.L.C.*, 207 F. Supp. 3d 269, 271 (S.D.N.Y. 2016) (citing *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir.1993) ("[A] transferee federal court should apply its interpretations of federal law, not the constructions of the transferor circuit.")). However, case law from other Circuits may provide persuasive authority. *See Thypin Steel Co. v. Certain Bills of Lading Issues For A Cargo of 3017 Metric Tons, More Or Less, Of Hot Rolled Steel Plate Laden On Bd. The M/V GEROI PANFILOVSKY, in rem.*, 96-CV-02166 (RPP); *see also Lang v. Elm City Const. Co.*, 217 F. Supp. 873, 877 (D. Conn. 1963) ("While the decision of the Third Circuit in *Corabi* is not controlling on this Court, it is persuasive and will be followed, absent a decision on the question by the Supreme Court or the Second Circuit.").

States—(1) to promote the continued development of the Internet and other interactive computer services and other interactive media; [and] (2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. § 230(b)(1)-(2).

. . .

The addition of Section 230 to the proposed CDA also "assuaged Congressional concern regarding the outcome of two inconsistent judicial decisions," *Cubby, Inc. v. CompuServe, Inc*., 776 F. Supp. 135 (S.D.N.Y. 1991) and *Stratton Oakmont, Inc. v. Prodigy Servs. Co*., No. 31063/94, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995), both of which "appl[ied] traditional defamation law to internet providers," *LeadClick*, 838 F.3d at 173. As we noted in *LeadClick*, "[t]he first [decision] held that an interactive computer service provider could not be liable for a third party's defamatory statement . . . but the second imposed liability where a service provider filtered its content in an effort to block obscene material." *Id*. (citations omitted) (citing 141 Cong. Rec. H8469-70 (daily ed. Aug. 4, 1995 (statement of Rep. Cox))).

To "overrule *Stratton*," *id*., and to accomplish its other objectives, Section 230(c)(1) provides that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."[] 47 U.S.C. § 230(c)(1).

. . .

Section 230(c)(2), which, like Section 230(c)(1), is contained under the subheading "Protection for 'Good Samaritan' Blocking and Screening of Offensive Material," 47 U.S.C. § 230(c), responds to *Stratton* even more directly. It provides that "[n]o provider or user of an interactive computer service shall be held liable on account of—(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in [Section 230(c)(1)]." *Id*. § 230(c)(2).

*Force v. Facebook, Inc*., 934 F.3d 53, 64 & n.16 (2d Cir. 2019), *petition for cert. pending*, No. 19-859 (filed Jan. 9, 2020).

**B. Application**

    **1. Immunities Under Section 230 Of The CDA**

The Court first considers "publisher" immunity under Section 230(c)(1) and then considers immunity to "police content" under Section 230(c)(2). For the reasons set forth below, the Court finds that Vimeo is entitled to immunity under either (c)(1) or (c)(2).

    **a. "Publisher" Immunity Under Section 230(c)(1)**

"In light of Congress's objectives, the Circuits are in general agreement that the text of Section 230(c)(1) should be construed broadly in favor of immunity." *Force*, 934 F.3d at 64. Section 230(c)(1) provides that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Thus, the CDA's grant of immunity under Section 230(c)(1) applies to a defendant if the defendant "(1) is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat [the defendant] as the publisher or speaker of that information." *LeadClick Media, LLC*, 838 F.3d at 173 (citations and internal quotation marks omitted). Plaintiffs do not dispute the first two prongs, *i.e.*, that Vimeo is an interactive computer service[8] and that the information was from another content provider (*i.e.*, Plaintiffs). (*See* Pl. Opp. at 11-12.) However, as to the third prong, Plaintiffs contend that they are not seeking "to impose liability on Vimeo as a publisher of Plaintiffs' videos." (*Id*. at 12.) Plaintiffs allege that Vimeo deleted Plaintiffs' account "because of Vimeo's discriminatory and unlawful conduct." (*Id*.) Despite

---

[8] "The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ." 47 U.S.C.A. § 230(f)(2).

Plaintiffs' characterization of their allegations, Plaintiffs' claims are based upon the deletion of their content.

In this case, Vimeo plainly was acting as a "publisher" when it deleted (or, in other words, withdrew) Plaintiffs' content on the Vimeo website. As the Second Circuit explained in *LeadClick*, Section 230 "bars lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, **withdraw**, postpone or alter **content**." *LeadClick Media, LLC*, 838 F.3d at 174 (emphasis supplied; citations and internal quotation marks omitted); *see also Force*, 934 F.3d at 67 (publishing covers "the decision to host third-party content in the first place"). And, as the Ninth Circuit explained in *Barnes v. Yahoo!, Inc*., 570 F.3d 1096 (9th Cir. 2019), "publication involves reviewing, editing, and deciding whether to publish or to **withdraw from publication third-party content**." *Id*. at 1102 (emphasis supplied); *see also Ebeid v. Facebook, Inc*., No. 18-CV-07030 (PJH), 2019 WL 2059662, at *5 (N.D. Cal. May 9, 2019) ("defendant's decision to remove plaintiff's posts undoubtedly falls under 'publisher' conduct").

The parties do not cite, and the Court has been unable to locate, any cases in the Second Circuit construing Section 230(c)(1) in the same factual context as the present case. In the typical case, plaintiffs seek to hold the interactive computer service liable for publishing the content of a third party (or failing to delete content of that party), and immunity from liability under (c)(1) is found in that context. *See*, *e.g*., *Force*, 934 F.3d at 65 (plaintiffs' claims implicated Facebook as a "publisher" of information from third party Hamas). In the present case, Plaintiffs are seeking to hold Vimeo liable for removing Plaintiffs' own content. There are cases from other Circuits, however, that arise in a similar factual context which the Court finds persuasive.

For example, in *Riggs v. MySpace, Inc.*, 444 F. App'x 986 (9th Cir. 2011), the Ninth Circuit found that Section 230(c)(1) immunity applied where the interactive computer service (*i.e.*, MySpace) decided "to delete [plaintiff's] user profiles on its social networking website yet not delete other profiles [plaintiff] alleged were created by celebrity imposters." *Id*. at 987. Moreover, in *Ebeid*, the Northern District of California applied (c)(1) immunity to Facebook's "decision to remove plaintiff's posts" and "Facebook's on-and-off again restriction of plaintiff's use of and ability to post on the Facebook platform." *Ebeid*, 2019 WL 2059662, at *5. So, too, in *Lancaster v. Alphabet Inc.*, No. 15-CV-05299 (HSG), 2016 WL 3648608 (N.D. Cal. July 8, 2016), the Northern District of California applied (c)(1) immunity to the decision by YouTube, LLC, to remove plaintiff's YouTube videos. *Id*. at *3. *See also Mezey v. Twitter, Inc.*, No. 18-CV-21069 (KMM), 2018 WL 5306769, at *2 (S.D. Fla. July 19, 2018) (dismissing lawsuit claiming that Twitter "unlawfully suspended [Plaintiff's] Twitter account" on grounds of Section 230(c)(1) immunity).

The Court is cognizant of the decision in *e-ventures Worldwide, LLC v. Google, Inc.*, No. 14-CV-00646 (PAM) (CM), 2017 WL 2210029 (M.D. Fla. Feb. 8, 2017), which declined to apply Section 230(c)(1) to a publisher's action in removing content since, according to that court, "interpreting the CDA this way results in the general immunity in (c)(1) swallowing the more specific immunity in (c)(2), [which] immunizes only an interactive computer service's 'actions taken in good faith,'" and as such "the good-faith requirement [would be rendered] superfluous." *Id*. at *3. The Court does not find *e-ventures* persuasive since Section 230(c)(2)'s grant of immunity, while "overlapping" with that of Section 230(c)(1), *see Force*, 934 F.3d at 79 (Katzmann, C.J., concurring), also applies to situations not covered by Section 230(c)(1). Thus,

there are situations where (c)(2)'s good faith requirement applies, such that the requirement is not surplusage.

For example, as the Ninth Circuit explained in *Barnes*:

Subsection (c)(1), by itself, shields from liability all publication decisions, whether to edit, to remove, or to post, with respect to content generated entirely by third parties. Subsection (c)(2), for its part, provides an additional shield from liability, but only for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider . . . considers to be obscene . . . or otherwise objectionable." § 230(c)(2)(A). Crucially, the persons who can take advantage of this liability shield are not merely those whom subsection (c)(1) already protects, but *any* provider of an interactive computer service. See § 230(c)(2). Thus, even those who cannot take advantage of subsection (c)(1), perhaps because they developed, even in part, the content at issue . . . can take advantage of subsection (c)(2) if they act to restrict access to the content because they consider it obscene or otherwise objectionable.

*Barnes*, 570 F.3d at 1105 (emphasis in original).

The Court finds that Plaintiffs are seeking to hold Vimeo liable for actions it took as a "publisher," and therefore that Vimeo is entitled to immunity under Section 230(c)(1) of the CDA. Even assuming, *arguendo*, that (c)(1) immunity did not apply, the Court finds that Vimeo is entitled to immunity under (c)(2), as discussed below.

### b. Immunity To "Police Content" Under Section 230(c)(2)

Section 230(c)(2) provides in relevant part that "[n]o provider . . . of an interactive computer service shall be held liable on account of . . . any action voluntarily taken in good faith to restrict access to or availability of material that the provider . . . considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable . . .." 47 U.S.C. § 230(c)(2)(A). This statute applies to this case. Here, Plaintiffs are seeking to hold Vimeo liable for the actions voluntarily taken by Vimeo to restrict access to Plaintiffs' materials that Vimeo finds to be objectionable. *See Dipp-Paz v. Facebook*, No. 18-CV-09037 (LLS), 2019 WL 3205842, at *3

(S.D.N.Y. July 12, 2019) ("Defendant's actions to which Plaintiff objects [*i.e.*, blocking Plaintiff's Facebook account] fall squarely within [ ] CDA [Section 230(c)(2)(A)]'s exclusion from liability.").

Section 230(c)(2) is focused upon the provider's subjective intent of what is "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." 47 U.S.C. § 230(c)(2). That section "does not require that the material actually be objectionable; rather, it affords protection for blocking material 'that the provider or user considers to be' objectionable." *Zango, Inc. v. Kaspersky Lab, Inc.*, No. 07-CV-00807 (JCC), 2007 WL 5189857, at *4 (W.D. Wash. Aug. 28, 2007), *aff'd*, 568 F.3d 1169 (9th Cir. 2009). Vimeo's subjective intent is apparent based upon the allegations in the FAC and the documents incorporated by reference therein. Vimeo's Guidelines state under a section entitled "How does Vimeo define hateful, harassing, defamatory, and discriminatory content?" that "[v]ideos that promote Sexual Orientation Change Efforts (SOCE)" are forbidden. (*See* Cheah Decl., Ex. B, at 5-6.) The email that Vimeo sent to Plaintiffs regarding the subject videos warned them that "Vimeo does not allow videos that promote [SOCE]." (FAC, Ex. A.)

Based upon the allegations in the FAC, it is plain that Plaintiffs' videos in fact promoted SOCE. Plaintiffs themselves allege that "the videos involved an effort by [Plaintiff] Church United to challenge California Assembly Bill 2943 . . ., which aimed to expand California's existing prohibition on SOCE to apply to talk therapy and pastoral counseling." (FAC ¶ 41.) Obviously, challenging a statute that expands a prohibition on SOCE is equivalent to promoting SOCE.

The only remaining question, then, is whether Vimeo acted in "good faith" in removing Plaintiffs' videos, as the statute requires. Plaintiffs allege that Vimeo "failed to act in good faith"

(FAC ¶¶ 53, 61; Pl. Opp. at 11), but set forth no facts to support this allegation.[9] Such a conclusory allegation is not sufficient. *See e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008)). *Accord Manza v. Newhard*, 470 F. App'x 6, 9 (2d Cir. 2012) (upholding dismissal of a 1983 case based in part upon a bad faith "claim [that] cannot be deemed plausible when, as here, conclusory pleadings are unsupported by factual content."). Based upon the allegations of the FAC, what occurred here is that Vimeo applied its Guidelines to remove Plaintiffs' videos, since such videos violated the Guidelines. Plaintiffs do not include sufficient factual allegations regarding Vimeo's alleged bad faith to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Thus, the Court finds that (c)(2) immunity applies here.

### 2. Preemption Under CDA Section 230

Having found that immunity applies under Section 230, the Court now turns to whether Section 230 preempts Plaintiffs' claims. "Preemption [under Section 230] is express." *Ricci*, 781 F.3d at 27. "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). Although "[p]reemption under the Communications Decency Act is an affirmative defense, . . . it can still support a motion

---

[9] During oral argument, in support of Plaintiffs' allegations regarding Vimeo's lack of good faith, Plaintiffs' counsel pointed to the fact that, although Vimeo removed Plaintiffs' videos, Vimeo did not remove other videos (examples of which are set forth in paragraph 45 of the FAC) "relating to [individuals'] sexual orientation." (1/13/2020 Tr. at 41-42.) These allegations cannot plausibly establish a lack of good faith on the part of Vimeo since the purpose of Section 230 was to insulate interactive computer services from liability for removing some content, but not other content. *See Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007) ("Deciding whether or not to remove content or deciding when to remove content falls squarely within [Defendant's] exercise of a publisher's traditional role and is therefore subject to the CDA's broad immunity."). There simply are no substantive allegations to support the notion that Vimeo somehow was targeting Domen because he is a "former homosexual," as Plaintiffs posit. (*See* 1/13/2020 Tr. at 43.)

to dismiss if the statute's barrier to suit is evident from the face of the complaint." *Ricci*, 781 F.3d at 28 (citing *Klayman*, 753 F.3d at 1357).

### a. Preemption Of State Statutory Claims

In Plaintiffs' First and Second Causes of Action, Plaintiffs assert that Vimeo discriminated against them pursuant to the California Unruh Act, Cal. Civil Code § 51, *et seq.*[10] and the New York State Human Rights Law, N.Y. Executive Law § 269, *et seq.*[11] (FAC ¶¶ 49-63.) Specifically, Plaintiffs allege that Vimeo deleted their account and censored their speech due to discrimination based upon Plaintiffs' sexual orientation and religion. (FAC ¶¶ 50, 51, 58, 59.)

The issue here is whether the California Unruh Act or the New York State Human Rights Law are "inconsistent" with the CDA such that the CDA may immunize Defendant for the state statutory claims asserted herein. *See* 47 U.S.C. § 230(e)(3). Section 230(e) of the CDA enumerates specific claims which cannot be preempted by the CDA, namely, criminal law, intellectual property law, communications privacy law, sex trafficking laws or state laws that are consistent with the CDA. 47 U.C.S. § 230(e). State antidiscrimination laws, however, are not exempted from the reach of the CDA. *See Nat'l Ass'n of the Deaf v. Harvard Univ.*, 377 F. Supp. 3d 49, 66 (D. Mass. 2019) ("The CDA exempts certain laws from its reach. Federal and state antidiscrimination

---

[10] The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

[11] The New York State Human Rights Law provides that "(a) It shall be an unlawful discriminatory practice for . . . any place of public accommodation, . . . because of the race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . ." N.Y. Exec. Law § 296(2)(a).

statutes are not exempted."); *Ebeid*, at *5 (applying CDA immunity and dismissing state law discrimination claims). Thus, First and Second Causes of Action are preempted by CDA Section 230.

### b.  Preemption Of California Constitution Claim

In Plaintiffs' Third Cause of Action, they allege a Free Speech Claim under the California Constitution. (FAC ¶¶ 64-80.) As Plaintiffs concede, if Section 230 immunity is found, then their claim under the California Constitution must be dismissed. (*See* 1/13/20 Tr. at 32-33.) This is because federal law preempts conflicting State Constitutions under the Supremacy Clause, which provides, as follows: "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U. S. Const., Art. VI, cl. 2. *See Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 716 (1984) (Oklahoma Constitution's ban on advertising alcoholic beverages preempted by federal regulations implementing Communications Act); *Parkridge 6 LLC v. U.S. Dep't of Transp.*, No. 09-CV-01312 (LMB) (IDD), 2010 WL 1404421, at *6 (E.D. Va. Apr. 6, 2010) ("[A]ny Virginia law or provision of the Virginia Constitution that conflicts with [the] authority [of a federal airport construction project] is preempted under the Supremacy Clause of the United States Constitution."). Plaintiffs allege that Vimeo's "deletion of Plaintiffs' Vimeo account amounts to a violation of Plaintiffs' rights to free speech under the California Constitution." (FAC ¶ 77.) If Plaintiff are correct (which they are not, *see* Discussion Section IV, *infra*), then there is a direct conflict between the California Constitution and the federally enacted CDA, which as discussed above permitted the deletion of Plaintiffs' content. Thus, the Third Cause of Action also is preempted by CDA Section 230.

### III. In the Alternative, Plaintiffs Have Not Stated A Claim Under the California Unruh Act Or The New York State Human Rights Law (First and Second Causes Of Action)

Even assuming, *arguendo*, that the CDA does not preempt the First and Second Causes of Action, they would be dismissed. Plaintiffs' First and Second Causes of Action allege that Vimeo discriminated against Domen because of his sexual orientation and religion. (*See* FAC ¶¶ 44, 50-53, 58-61.) Both the California Unruh Act and the New York Human Rights Law require that Plaintiffs show discriminatory intent. *See Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014); *Smith v. City of New York*, 385 F. Supp. 3d 323, 332 (S.D.N.Y. 2019). Here, Plaintiffs have not plausibly alleged that Vimeo's conduct was animated by discriminatory intent against Domen. Vimeo's emails that are attached to the FAC (FAC, Exs. A & B) reflect that Vimeo removed Plaintiffs' account because of the content of Plaintiffs' videos, not based upon Domen's sexuality or religion. Thus, the First and Second Causes of Action are subject to dismissal on this ground as well.

### IV. In The Alternative, Plaintiffs Have Not Stated A Free Speech Claim Under The California Constitution (Third Cause Of Action)

Even assuming, *arguendo*, that the CDA does not preempt the Third Cause of Action, it also would be dismissed. Plaintiffs allege that Vimeo is a "public forum" or "the equivalent of a public forum," such that it is "akin to a state actor[]" for purposes of the California Constitution. (*See* FAC¶¶ 66, 72.) Article I, section 2, subdivision (a) of the California Constitution provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal. Const. Art. I, § 2(a). This provision of the California Constitution grants broader rights to free expression than the First Amendment to the U.S. Constitution, and applies beyond state

actors to private actors in certain limited circumstances.[12] *See Robins v. Pruneyard Shopping Ctr.*, 23 Cal. 3d 899, 910 (1979), *aff'd*, 447 U.S. 74 (1980). In *Pruneyard*, the California Supreme Court held that the California Constitution "protect[s] speech and petitioning, reasonably exercised, in shopping centers even when the centers are privately owned," due to the similarity of such centers to traditional town squares or business districts. *Id*. The California Supreme Court in a 2001 plurality decision narrowly construed *Pruneyard*, finding: "the actions of a private property owner constitute state action for purposes of California's free speech clause only if the property is freely and openly accessible to the public." *Golden Gateway Ctr. v. Golden Gateway Tenants Assn.*, 26 Cal. 4th 1013, 1033 (2001).

Plaintiffs seek to have this Court plow new ground and hold that *Pruneyard* extends beyond California real property owners to website owners like Vimeo. However, "[n]o court has expressly extended *Pruneyard* to the Internet generally." *hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1116 (N.D. Cal. 2017), *aff'd and remanded on other grounds*, 938 F.3d 985 (9th Cir. 2019). Like the court in *hiQ Labs, Inc.*, this Court "has doubts about whether *Pruneyard* may be extended wholesale into the digital realm of the Internet," given the "reach and potentially sweeping consequences of such a holding," *id*. at 1116, and in particular the differences between the U.S. and California Constitutions regarding their treatment of private actors in the free speech context.

---

[12] Private actors cannot be liable for First Amendment violations. *See Lloyd Corp. v. Tanner*, 407 U.S. 551, 569 (1972). This presumably is why Plaintiffs dropped their First Amendment claim when they filed their FAC. However, California has the authority "to exercise its police power or its sovereign right to adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution." *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 81 (1980) (citation omitted).

The Court finds that Vimeo, a private video-sharing service operator, is not a state actor such that its actions implicate the California's free speech clause. The Vimeo website is not the equivalent of a California-based shopping center where "large groups of citizens congregate." *Pruneyard Shopping Ctr.*, 23 Cal. 3d at 910. Rather, it is one of many alternative fora where citizens of many different states can choose to post their videos, so long as they abide by Vimeo's Terms of Service. There are adequate alternative avenues of communication that Plaintiffs may use and in fact are using to exercise their free speech rights. Thus, Plaintiffs do not state a claim under the California Constitution.[13]

## V.    Leave To Amend

Plaintiffs request leave to amend "to cure any pleading defects." (Pl. Opp. at 21.) Rule 15's liberal standard instructs that leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend should be denied where, as here, it would be "futile" and where the "plaintiff cannot cure the deficiencies in his pleadings to allege facts sufficient to support his claim." *Onibokun v. Chandler*, 749 F. App'x 65, 67 (2d Cir. 2019). Because there is no way for Plaintiffs to reformulate their claims in a way that is not preempted, any attempt at re-pleading would be futile. *See Myrieckes v. Woods*, No. 08-CV-04297, 2009 WL

---

[13] Vimeo also argues that Plaintiffs' claims are barred by the First Amendment. (Def. Mem. at 6-9; Reply at 1-4.) Specifically, Vimeo asserts that Plaintiffs' claims infringe on Vimeo's free speech rights "because they seek to force Vimeo to publish, host, and stream videos containing ideological messages 'with which Vimeo disagrees.'" (Def. Mem. at 6 (citing FAC ¶ 47).) The Court does not need to reach this constitutional issue since, as set forth above, it is dismissing all three causes of action contained in the FAC on other grounds. It is well settled that courts "avoid reaching constitutional questions when they are unnecessary to the disposition of a case." *Anobile v. Pelligrino*, 303 F.3d 107, 123 (2d Cir. 2002); *see also Hutchinson v. Proxmire*, 443 U.S. 111, 122 (1979) ("Our practice is to avoid reaching constitutional questions if a dispositive nonconstitutional ground is available.").

884561 at *7 (S.D.N.Y. Mar. 31, 2009) (denying leave to amend because re-pleading preempted claim is futile). Thus, Plaintiffs are denied leave to amend.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and this case is dismissed with prejudice. The Clerk of Court is directed to enter judgment and close this case.

**SO ORDERED**.

Dated: New York, New York
      January 14, 2020

_____

**STEWART D. AARON**
**United States Magistrate Judge**