MANDATE

20-616
*Domen v. Vimeo, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>November 23, 2021</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of September, two thousand twenty-one.

PRESENT:
　　　　ROSEMARY S. POOLER,
　　　　RICHARD C. WESLEY,
　　　　SUSAN L. CARNEY,
　　　　　　*Circuit Judges.*

_____

JAMES DOMEN, AN INDIVIDUAL, CHURCH UNITED, A CALIFORNIA NOT-FOR-PROFIT CORPORATION,

　　　*Plaintiffs-Appellants,*

　　　　　　v.　　　　　　　　　　　　No. 20-616-cv

VIMEO, INC., A DELAWARE FOR-PROFIT CORPORATION,

　　　*Defendant-Appellee.*

_____

FOR APPELLANTS:　　　　　　　NADA N. HIGUERA, Tyler & Bursch, LLP (Robert H. Tyler, *on the brief*), Murrieta, CA.

FOR APPELLEE:　　　　　　　　MICHAEL A. CHEAH, General Counsel, Vimeo, Inc., New York, NY (Jean-Paul

MANDATE ISSUED ON 11/23/2021

Jassy, Kevin L. Vick, Elizabeth H. Baldridge, Jassy Vick Carolan LLP, Los Angeles, CA, *on the brief*).

Samuel C. Leifer, Patrick J. Carome, Ari Holtzblatt, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, and Washington, DC, for The Internet Association, *Amicus Curiae in support of Defendant-Appellee*.

Appeal from a judgment of the United States District Court for the Southern District of New York (Stewart D. Aaron, *M.J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on January 17, 2020, is **AFFIRMED**.

Plaintiffs-Appellants James Domen and Church United allege that Vimeo, Inc., discriminated against them on the basis of their religion and sexual orientation by deleting Church United's account from Vimeo's online video hosting platform. The district court granted Vimeo's motion to dismiss on the grounds that Section 230 of the Communications Decency Act ("CDA") protects Vimeo from this suit and that Appellants failed to state a claim. The district court concluded that Vimeo deleted Church United's account because of Church United's violation of Vimeo's published content policy barring the promotion of sexual orientation change efforts ("SOCE") on its platform. Vimeo's enforcement of this policy, in turn, fell within the confines of the publisher immunity provided by Section 230(c)(1) and the immunity to police content created by Section 230(c)(2). The district court also found that Appellants failed to state a claim on any of the counts listed in the amended complaint. We previously affirmed the judgment of the district court in opinions dated March 11, 2021 and July 21, 2021. Having vacated those decisions, we issue this summary order in their place.

Appellants argue that Vimeo discriminated against them based on their religion and sexual orientation, which they term "former" homosexuality: by deleting Church United's

entire account, as opposed to only the videos at issue, and by permitting other videos with titles referring to homosexuality to remain on the website. However, Appellants' conclusory allegations are insufficient to raise a plausible inference of discrimination and they have failed to state a claim under either the New York Sexual Orientation Non-Discrimination Act or the California Unruh Act.[1] Therefore, we AFFIRM the judgment of the district court.

## BACKGROUND

These facts are taken from Plaintiffs' amended complaint and are assumed to be true for the purposes of this appeal.

James Domen is the president and founder of the non-profit organization Church United.[2] Domen alleges that he "was a homosexual" for three years but then, "because of his desire to pursue his faith in Christianity, he began to identify as a former homosexual." App'x at 47. Domen shares his story through Church United to connect with others in California who have had similar experiences. Church United was founded in 1994 and is a California non-profit religious corporation. It seeks to "equip pastors to positively impact the political and moral culture in their communities," and it has over 750 affiliated pastors. App'x at 47. The organization claims to "focus on the spiritual heritage of the United States" by attempting to connect with "nationally-known speakers, including elected officials . . . who vote to support a biblical worldview." App'x at 47.

Vimeo is a Delaware for-profit corporation headquartered in New York. Founded in 2004, it provides an online forum that allows users to upload, view, and comment on videos. Videos hosted on Vimeo include music videos, documentaries, live streams, and others.

---

[1] We do not reach the district court's conclusions regarding Section 230(c).

[2] Because Domen is the president and founder of Church United and his claims are co-extensive with those of Church United, we generally refer to Domen and Church United together as "Church United," "Appellants," or "Plaintiffs."

Vimeo's Terms of Service expressly prohibit content supportive of SOCE. They proscribe content which "[c]ontains hateful, defamatory, or discriminatory content or incites hatred against any individual or group." *Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 599 (S.D.N.Y. 2020). They also incorporate Vimeo's Guidelines. *See id.* (quoting the Terms of Service: "[a]ll videos you submit must also comply with the Vimeo Guidelines, which are incorporated into this Agreement."). The Guidelines include a section entitled, "How does Vimeo define hateful, harassing, defamatory, and discriminatory content?," which states that Vimeo will "generally remove" several categories of videos, including those that "promote Sexual Orientation Change Efforts (SOCE)." *Id.* To upload a video to Vimeo's platform, all users must accept Vimeo's Terms of Service agreement. *See Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 84 (2d Cir. 2016) ("All Vimeo users must accept its Terms of Service."). Appellants agreed to the Terms of Services and Guidelines by creating an account and uploading videos to the website. *Domen v. Vimeo, Inc.*, No. 8:19-cv-01278-SVW-AFM, 2019 WL 4998782, at *2-3 (C.D. Cal. Sept. 4, 2019) (applying the Terms of Service agreement's forum selection clause to Appellants' claims).

In October 2016, Church United created a Vimeo account to upload videos promoting the organization, including "videos addressing sexual orientation as it relates to religion." App'x at 49. Church United allegedly uploaded 89 videos over the following two years. At some point, Church United upgraded to a professional account, which requires a monthly fee in exchange for access to more features and bandwidth.

On November 23, 2018, Vimeo e-mailed Domen, informing him that a moderator had marked the Church United account for review. The e-mail explained, "Vimeo does not allow videos that promote [SOCE]." App'x at 58. Vimeo instructed Church United to remove the videos and warned that if Church United did not do so within 24 hours, Vimeo might remove the videos or the entire account. It also instructed Church United to download the videos as soon as possible to ensure that the organization could keep them in case Vimeo deleted the account. Church United claims that five of its videos were flagged as violating Vimeo's policies:

- Video One: a two-minute video where Domen explained "his life story, his preferred sexual orientation, the discrimination he faced, and his religion." App'x at 49.

- Video Two: a promotion video for "Freedom March Los Angeles," allegedly an event where "former homosexuals" gather. App'x at 50.

- Video Three: an NBC-produced documentary segment about SOCE. App'x at 50.

- Video Four: a press conference with "the founder of Desert Stream" relating to his religion and sexuality. App'x at 50.

- Video Five: an interview with a survivor of the attack on Pulse Nightclub in Florida in March 2018 and his background as a "former homosexual." App'x at 50.

Appellants state that the videos were part of an effort by Church United to challenge a California Assembly bill proposing to expand the state's ban on SOCE to talk therapy and pastoral counseling.

On December 6, 2018, Vimeo deleted Church United's account, explaining: "Vimeo does not allow videos that harass, incite hatred, or include discriminatory or defamatory speech." App'x at 60. Appellants allege that Vimeo's action constitutes "censorship," App'x at 52, insofar as it barred Domen from speaking about his preferred sexual orientation and religious beliefs. They also allege that Vimeo allows similar videos to remain on its website with titles such as "Gay to Straight," "Homosexuality is NOT ALLOWED in the QURAN," "The Gay Dad," and "Happy Pride! LGBTQ Pride Month 2016." App'x at 51.

Based on these allegations, Appellants claim that Vimeo violated the Unruh Act, a California law barring businesses from intentionally discriminating on the basis of, inter alia, sexual orientation and religion; New York's Sexual Orientation Non-Discrimination Act; and Article 1, Section 2 of the California Constitution, which "mandates viewpoint neutral regulation of speech in public and quasi-public fora." App'x at 54. Appellants do not challenge the Guidelines' prohibition on pro-SOCE content as facially discriminatory against

homosexuals under the civil rights laws, focusing only on Vimeo's application of the Guidelines to Appellants' content and account.[3]

The district court granted Vimeo's motion to dismiss pursuant to Federal Rule 12(b)(6). *See Domen*, 433 F. Supp. 3d at 607-08. In doing so, the court concluded that all of Appellants' claims were preempted by subsections (c)(1) and (c)(2) of Section 230 of the CDA. The district court first concluded that Vimeo was acting as a "publisher" rather than a speaker, triggering protection from suit under subsection (c)(1). *Id.* at 601-03. The district court acknowledged that the Second Circuit had not ruled on precisely this situation—where plaintiffs sought to hold a defendant liable for removing content as opposed to permitting content to exist on its platform—but used the reasoning of other courts to conclude that this did not change the outcome. *Id.* at 602. The district court also concluded subsection (c)(2) required dismissal. *Id.* at 604. It reasoned that the videos promoted SOCE, violating Vimeo's content policy against SOCE, and Appellants' allegations suggesting Vimeo acted in bad faith were too conclusory to "nudge their claims across the line from conceivable to plausible." *Id.* at 604 (alteration omitted). The district court further decided that because Section 230 preempts state statutory claims and the California state constitutional claim, the entire case was statutorily barred. *Id.* at 604-06.

The district court also concluded that, even if the CDA did not bar all of Appellants' claims, Appellants failed to state a claim. *Id.* at 606-07. As for the discrimination claims, there were no plausible allegations supporting the claim that Vimeo intentionally discriminated against Appellants on the basis of their sexuality or religion, a necessary element of a claim under both state statutes. *Id.* at 606. The district court also concluded that Vimeo was not a state actor, so its actions did not implicate Appellants' free speech rights, requiring dismissal of the California constitutional claim. *Id.* at 606-07. Lastly, the district court denied leave to amend as futile. *Id.* at 607.

---

[3] Appellants also do not contend that Vimeo's actions constituted a breach of the Terms of Service or that Vimeo breached its agreement with them as to when and how content may be removed from Vimeo's website.

On appeal, Appellants argue that Section 230 of the CDA does not protect Vimeo's actions from suit and that they stated a claim under state statutory discrimination law. Because Appellants' complaint fails to plausibly plead a claim for discrimination under the state statutes there is no need to consider Vimeo's defense that such claims are pre-empted under Section 230. Appellants' claims fail because they have not plausibly pled that Vimeo's acts were done with discriminatory intent or purpose. Furthermore, Appellants do not make any arguments regarding their state constitutional free speech claim in their opening brief and have therefore waived the ability to challenge its dismissal in this appeal. *See Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009).

## DISCUSSION

We review a district court's grant of a motion to dismiss de novo, *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019), and denials of leave to amend for abuse of discretion, *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hernandez*, 939 F.3d at 198 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Appellants' complaint fails to state a claim on which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The district court found that Plaintiffs failed to state a claim under both the New York Human Rights Law (incorporating the Sexual Orientation Non-Discrimination Act) and the California Unruh Act, because they did not "plausibly allege[] that Vimeo's conduct was animated by discriminatory intent against Domen." *Domen*, 433 F. Supp. 3d at 606. In order to state a discrimination claim under either statute, a plaintiff must allege facts sufficient to create an inference of discriminatory intent on account of the plaintiff's membership in a protected class. *See Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) ("[T]he Unruh Act contemplates willful, affirmative misconduct on the part of those who violate the Act . . . ." (internal quotation omitted)); *Smith v. City of New York*, 385 F. Supp. 3d 323, 332 (S.D.N.Y. 2019) (stating that one element of a claim under the New York Human Rights Law is that the "adverse

employment action occurred under circumstances giving rise to an inference of discriminatory intent").

Appellants have not met that standard. Instead, they simply allege that their content was removed for espousing pro-SOCE views and because of Domen's sexual orientation and religion. *See* App'x at 51, 52, 55 (Amended Complaint). They make only conclusory allegations suggesting that Vimeo removed their content for reasons other than violation of the Terms of Service. *Smith*, 385 F. Supp. 3d 323 at 332 ("[B]are-bones, conclusory allegations of supposedly 'similarly situated' comparators . . . fail to raise an inference of discriminatory intent.").

On appeal, Appellants argue that the amended complaint sufficiently alleged discriminatory intent by identifying "similar videos about sexual orientation and religion posted by other users that were not deleted." Appellants' Br. at 25. They further argue, without pointing to any factual basis, that "[b]y permanently banning Church United and Domen from its platform, as opposed to censoring the five videos, it is evident that Vimeo discriminated not merely against a message, but against Church United and Domen based on sexual orientation and religion." *Id.*

An inference of discriminatory intent may be shown through a comparison to similarly situated persons not sharing a plaintiff's protected characteristic who were treated preferentially. *See, e.g., Stucky v. Wal-Mart Stores, Inc.*, No. 02-CV-6613 CJS(P), 2005 WL 2008493, at *6 (W.D.N.Y. Aug. 22, 2005). However, the allegations about these "similar videos" in the amended complaint are vanishingly thin and lack the substance required to support an inference of discriminatory intent. *See* Appellants' Br. at 25. The amended complaint merely alleges, on information and belief, that other videos containing references to LGBTQ sexual orientations and gender identities were permitted to remain on the site. *See* App'x at 51. That is not enough. *See, e.g., Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (aside from allegations that comparators and plaintiff had the same hair color, the complaint "fail[ed] to describe who these people are, what their responsibilities were, how their workplace conduct compared to [plaintiff's], or how they were treated," and therefore failed to state a claim for discrimination); *Morris v. Yale Univ. Sch.*

*of Med.*, 477 F. Supp. 2d 450, 460 n.2 (D. Conn. 2007) ("To be 'similarly situated,' the individuals with whom plaintiff attempts to compare himself must be similarly situated in all material respects." (citation and alterations omitted)); *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) ("[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases . . . ."). Furthermore, we have difficulty understanding what inference in support of their claim can reasonably be drawn from Plaintiffs' allegation that Vimeo continued to host a video entitled "The Gay Dad," or "LGBTQ barber in NYC." App'x at 51. They highlight, apparently as evidence of discriminatory intent, that "Vimeo did not provide Plaintiffs with an explanation for the distinction between Plaintiffs' videos relating to sexual orientation, testimonials, events relating to sexual orientation, and the thousands of similar videos related to LGBTQ and sexual orientation." App'x at 51. But Vimeo cited its terms of service to Plaintiffs when it closed the account; the absence of an additional explanation from the platform provider does not save Plaintiffs' complaint.

Appellants' claims must be dismissed because they fail to state a claim for religious or sexual orientation-based discrimination. Although the parties raised additional arguments, we do not reach them here.

## CONCLUSION

We conclude that Appellants have failed to state a claim for discrimination, and that the district court properly dismissed Appellants' claims. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit